**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann, Esq. (SBN 229832)
cja@ackermanntilajef.com
Avi Kreitenberg, Esq. (SBN 266571)
ak@ackermanntilajef.com
Brian Denlinger, Esq. (admitted *pro hac vice*)
bd@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:     (310) 277-0614
Facsimile:     (310) 277-0635

**JOSHUA KLUGMAN, ESQ.**
Joshua Klugman, Esq. (SBN 236905)
esquirejosh@yahoo.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:     (424) 248-5148

*Attorneys for Plaintiff David Williams and the Putative Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID WILLIAMS, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>v.<br><br>AMAZON.COM SERVICES, LLC et al.,<br><br>               Defendants. | CASE NO.: 3:22-CV-01892-VC<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: February 9, 2023<br>Hearing Time: 9:30 a.m.<br>Hearing Place: Courtroom 4<br>Judge: Hon. Vince Chhabria |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 9, 2022 at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Vince Chhabria in Courtroom 4 of the United States District Court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff David Williams will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying Plaintiff's proposed Class as to Plaintiff's Labor Code Section 2802 claim for home office monthly home internet expense reimbursements.

Plaintiff's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Craig J. Ackermann, Joshua Klugman, David Williams, Laura Steiner, and exhibits thereto, the depositions of David Williams, Katie Hughes, and Jessica McCray, and exhibits thereto, and any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

DATED: November 9, 2022                    **ACKERMANN & TILAJEF, P.C.**
                                           **JOSHUA KLUGMAN, ESQ.**

                                            */s/Craig J. Ackermann*
                                           Craig J. Ackermann, Esq.
                                           Joshua Klugman, Esq.
                                           *Attorneys for Plaintiff and the Putative Class*

# Table of Contents

I.    INTRODUCTION AND SUMMARY ......................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ........................................................ 2

III.  FACTUAL BACKGROUND ..................................................................................... 2

A.    General Background to Parties and Plaintiff's Claims ......................................... 2

B.    Amazon's Corporate-Advised Work From Home Guidance During the Pandemic .................. 3

C.    Plaintiff and Class Members Needed Home Internet Access to Perform Their Jobs Remotely for Amazon During the Class Period ......................................................... 6

D.    Amazon's Uniform Written Reimbursement Policy During its Corporate-Advised WFH Period *Did Not* Authorize Employees to Seek Reimbursement of Home Internet Expenses Unless Employees Incurred Extra Costs ............................................................................ 7

E.    Plaintiff and the Class Members Each Incurred Roughly $50 to $70 Per Month in Home Internet Expenses ........................................................................................... 10

IV.   RELEVANT SUBSTANTIVE LAW APPLICABLE TO PLAINTIFF'S SECTION 2802 REIMBURSEMENT CLAIM ................................................................................... 12

V.    THE COURT SHOULD CERTIFY PLAINTIFF'S SECTION 2802 CLAIM UNDER RULE 23 .... 14

A.    The Putative Class Is Ascertainable and Numerous .......................................... 14

B.    The Commonality Element is Satisfied Because Liability Hinges on a Challenged Company-Wide Reimbursement Policy Applicable to all Class Members ......................... 15

C.    The Named Plaintiff Is Typical of the Class ...................................................... 18

D.    Plaintiff and his Counsel are Adequate Class Representatives ........................... 18

E.    The Class Also Satisfies the Requirements of Rule 23(b)(3) ............................. 19
      1.    Questions of Law and Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Class Members ................................................. 19
      2.    A Class Action is the Superior Method for Adjudication Here .................... 22

VI.   CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Aberin v. Am. Honda Motor Co.*, 2021 U.S. Dist. LEXIS 71680 (N.D. Cal. Mar. 23, 2021)……..……......25

*Aguilar v. Zep, Inc.,* 2014 U.S. Dist. LEXIS 120315  (N.D. Cal. Aug. 27, 2014)………..……….13, 20, 25

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)……………………………………….…..……..19

*Arroyo v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 32069 (N.D. Cal. Feb. 24, 2020)…..…….…..……..12

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)……………………….…..……..22

*Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014)………………….………..*passim*

*Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937 (2008)………………………………...…..……..12

*Fleming v. Matco Tools Corp.*, 2021 U.S. Dist. LEXIS 33513  (N.D. Cal. Feb. 21, 2021)………....…..23

*Gattuso v. Harte-Hanks Shoppers, Inc.,* 42 Cal. 4th 554 (2007)……………………...…….……..13

*Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147 (1982)……………………………………...19

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007)…………………………………………...……..23

*Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501 (N.D. Cal. 2011)………...…………..……..14

*Greko v. Diesel USA, Inc.*, 277 F.R.D. 419 (N.D. Cal. 2011)………………….………..….……..14

*Hanlon v. Chrysler*, 150 F.3d 1011 (9th Cir. 1998)………………...………….…..…….15, 18, 19, 23

*Herrera v. Zumiez, Inc.*, 953 F.3d 1063 (9th Cir. 2020)…………………………………....……..14

*Hopkins v. Stryker Sales Corp.*, 2012 U.S. Dist. LEXIS 67101 (N.D. Cal. May 14, 2012)……...17, 21, 24

*Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007)…..……..18, 23, 24

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017)…………………………...……..24

*Marr v. Bank of Am.*, 2011 U.S. Dist. LEXIS 24868 (N.D. Cal. Mar. 8, 2011)…………….…..…..13

*Mendez v. C-Two Grp., Inc.*, 2015 U.S. Dist. LEXIS 165780 (N.D. Cal. Dec. 10, 2015)………...…..15

*Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094 (2007)……………………….……..23

*Nash v. Horizon Freight Systems*, 2020 U.S. Dist. LEXIS 242001 (N.D. Cal. Dec. 23, 2020)..1, 17, 20, 23

*Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009)……………………….....…..19

*Richie v. Blue Shield of Cal.*, 2014 U.S. Dist. LEXIS 170446 (N.D. Cal. Dec. 9, 2014)………...18, 20, 23

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)…………………….……..23

*Schulz v. QualxServ, LLC*, 2012 U.S. Dist. LEXIS 58561 (S.D. Cal. Apr. 26, 2012)……....17, 21, 23, 24

*Staton v. Boeing Company,* 327 F.3d 938 (9th Cir. 2003)…………………………….…..……..18

*Stuart v. Radioshack Corp.*, 2009 U.S. Dist. LEXIS 12337 (N.D. Cal. Feb. 5, 2009)…………..…..*passim*

*Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009)………………….………..…….…..13

*Swamy v. Title Source, Inc.*, 2018 U.S. Dist. LEXIS 57048 (N.D. Cal. Apr. 2, 2018)…………...21, 24, 25

*Tan v. Grubhub, Inc.*, 171 F. Supp. 3d 998 (N.D. Cal. 2016)……………………………….…….…...12

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)……………………………..…...……...15

## Statutes and Court Rules

Cal. Labor Code § 2699…..……………….…...……………………………..……………………....3

Cal. Labor Code § 2802…..……………...…….…...……………….……………………...*passim*

Cal. Labor Code § 2804…..………………...…….…...…………….……………………....12, 17

Fed. R. Civ. P. 23………..…...……………...………………………………..………….…*passim*

## I.    <u>INTRODUCTION AND SUMMARY</u>

Plaintiff David Williams ("Plaintiff"), individually and on behalf of a putative class of all California residents who are or were employed by Amazon.com Services, LLC ("Amazon"), based at one of Amazon's nine office locations,[1] who worked remotely for at least one pay period during the Class Period from March 15, 2020 through July 1, 2022 (the "Class Period"), and who were assigned a registered USB security key and a Midway Pin by Amazon to facilitate their ability to connect to Amazon's network and servers while working remotely for Amazon during the Class Period (hereinafter, the "Class Members" or "Class"), files this motion seeking class certification of Plaintiff's claim on behalf of the putative Class under Labor Code Section 2802 for reimbursement of their home internet expenses incurred while working remotely for Amazon during the Class Period.

Specifically, Plaintiff challenges Amazon's uniform written reimbursement policy stating that Amazon only authorized reimbursement of Class Members' home internet expenses incurred while working from home if there was an incremental increase in monthly home internet expenses due to working from home. Plaintiff's challenge to Amazon's uniform reimbursement policy as violating Section 2802 is certifiable under Fed. R. Civ. P. 23. *See Nash v. Horizon Freight Systems*, 2020 U.S. Dist. LEXIS 242001, at *9, n.3 (N.D. Cal. Dec. 23, 2020) ("…[C]laims for reimbursement are suitable for class treatment when there is a 'uniform policy as [to] what is reimbursed and what is not'"). In addition, there are certifiable issues of law and fact here as to whether Amazon "knew or should have known" about its employees' recurring monthly home internet expenses, and whether such knowledge or constructive knowledge triggered a reimbursement obligation. Finally, whether Amazon's "waiver" defense is legally viable also presents predominating class-wide issues. Accordingly, the Court should certify the proposed Class as to Plaintiff's Section 2802 claim.

---

[1] Amazon's nine California office locations with remote workers are located at the following addresses: 10201 Torre Avenue, Cupertino, California 95014; 1900 University Avenue, East Palo Alto, California 94303; 475 Sansome Avenue, San Francisco, California 94111; 188 Spear Street, San Francisco, California 94105; 110 Cooper Street, Santa Cruz, California 95060; 1007 Monterey Street, San Luis Obispo, California 93401; 1620 26th Street, Santa Monica, California 90404; 1100 Enterprise Way, Sunnyvale, California 94089; and 40 Pacifica Avenue, Irvine, California 92618. See the Declaration of Craig J. Ackermann ("Ackermann Decl."), **Exhibit A** (Defendant Amazon.com Services LLC's Amended Responses and Objections to Plaintiff's Second Set of Interrogatories [In Lieu of 30(b)(6) Testimony]), Response and Amended Response to Interrogatory No. 14. Attached to the Ackermann Decl. are **Exhibits A-O**, which, in order to prevent confusion, includes documents that were annexed to Defendant's Rule 30(b)(6) corporate designees' deposition transcripts using numerical exhibit titles.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Should the Court certify the proposed Class where Amazon's uniform written home internet reimbursement policy and practices during the Class Period give rise to common and predominating issues as to whether Amazon failed to reimburse Class Members for home internet expenses, and where the matter can be manageably adjudicated in one action on behalf of the Class?

2.    Should the Court designate Plaintiff as the representative of the putative Class, and Plaintiff's counsel as Class Counsel?

## III.    FACTUAL BACKGROUND

### A.    General Background to Parties and Plaintiff's Claims

Amazon is a global technology company focused on e-commerce, logistics, cloud computing, digital streaming, and artificial intelligence. Ackermann Decl., **Exhibit B** (Fortune.com company profile), at 1. During the Class Period, Amazon maintained nine office locations in California, and there were approximately 6,934 Class Members who were assigned to at least one of Amazon's California office locations for at least one pay period and who were also assigned a registered USB security key and a Midway Pin and held a position capable of being performed remotely. Ackermann Decl., **Exhibit A**, Amended Response to Interrogatory No. 14. During the Class Period, the Class Members collectively worked a total of approximately 130,882 months, including a total of 7,492 months worked by the Class Members between March 15, 2020 to April 24, 2020. *Id.* at Amended Response to Interrogatory No. 15.[2]

In March 2020, Amazon hired Plaintiff, a machine learning developer, to work as the lead engineer on an Artificial Intelligence healthcare tool for remote caregiving by Amazon's "Alexa" cloud-based voice service. Deposition of Plaintiff David George Williams ("Williams Depo."), at 19:25-20:2, 23:11-16, 62:13-20, and 145:11-22, the cited portions of which are attached as **Exhibit C** to the Ackermann Decl. At the time of his hire, Plaintiff lived in Aptos, California, and he remained there until December 2020. *Id.* at 20:3-8, 20:20-25, 21:1-6, 42:18-22. Throughout 2020, Plaintiff never worked in Amazon's Santa Cruz

---

[2] While Amazon has represented the Class collectively worked approximately 130,882 months during the Class Period, as discussed in Section III.B, *infra*, the actual number of months where Class Members worked from home is slightly less since the aggregate total number of months during the Class Period where any Class Member physically accessed one or more of Amazon's California office locations on 15 or more separate/unique days within any given month equals 1,047. Declaration of David Williams ("Williams Decl."), ¶ 9, Ex. A. Accordingly, the total number of months at issue within the Class Period is approximately 129,835. *Id.* If the Class is certified, Plaintiff will not seek monetary relief or penalties for those 1,047 months, which only affects 347 of the 6,934 Class Members.

office, but instead worked from home. *Id.* at 38:10-19 ("I've never worked in the Amazon office. . . ."). Plaintiff was never told he could come into Amazon's offices if he wanted to. *Id.* at 74:16-24 ("I was never told that. . . . We were told to stay at home."). Since Amazon's badging department was closed, Plaintiff never even received a badge to enter Amazon's office. *Id.* at 76:1-10. Moreover, Plaintiff did not hear of any of his Amazon co-workers going into the office. *Id.* at 81:15-22, 82:1-5, 170:13-171:9 ("Every single person that I ever worked with was on Zoom from home."). Instead, Plaintiff was repeatedly told to work from home. *Id.* at 130:12-15, 170:20-24.

Plaintiff seeks to represent the putative Class Members, as that term is defined in Section I, *supra*. Plaintiff's operative Third Amended Class and PAGA Representative Action Complaint ("TAC") alleges two causes of action: (1) failure to reimburse business expenses in violation of Labor Code Section 2802 (the "2802 Claim"); and (2) penalties based on the foregoing pursuant to the Labor Code Private Attorneys General Act of 2004, Labor Code section 2699, *et seq.* (the "PAGA Claim").

**B. Amazon's Corporate-Advised Work From Home Guidance During the Pandemic**

At the start of the COVID-19 pandemic, Amazon began to publish an online "Amazon COVID-19 Blog" to update employees with its guidance regarding working remotely (hereinafter "WFH") and, eventually, returning to the office (hereinafter "RTO"). Rule 30(b)(6) Deposition of Defendant with testimony by Director of Global Environmental Health and Safety for Corporate Employees and Offices, Katie Hughes ("Hughes Depo."), at 41:10-42:7, the cited portions of which are attached as **Exhibit D** to the Ackermann Decl.; Ackermann Decl., **Exhibit E** (a true and correct copy of the Amazon COVID-19 Blog). Amazon's COVID-19 Blog contains 148 pages, there is a vetting process by Amazon for material to appear on its Blog, Amazon would not intentionally put incorrect information on its Blog, and the information on its Blog is accurate. Hughes Depo., at 42:13-43:13. In an entry on March 6, 2020 titled "Amazon employees recommended to work from home," it states, "[i]n light of ongoing international COVID-19 developments, we now recommend all employees who can work from home to do so. . . ." Ackermann Decl., **Exhibit E**, at 145.[3] This decision was made by Amazon's Senior leadership. Hughes

---

[3] Amazon's Rule 30(b)(6) corporate designee admitted "there was a recommendation that employees who were able to work from home were recommended to do so at the beginning in March [2020]." Hughes Depo., at 30:2-7. Amazon also admittedly issued later "guidance" or "guidelines" to continue working from home well after government stay-at-home orders ended. *Id.* at 31:18-32:3, 38:10-22. However, some of Amazon's jobs, including laboratory jobs, certain R&D work, and U.S. government contract work had to be done in its physical offices. *Id.* at 39:15-40:2. Amazon admitted that its corporate office

Depo., at 45:2-24. Plaintiff himself was told that, due to the shelter in place orders, he and his team were all going to be working from home. Williams Depo., at 72:19-73:3.

In an April 1, 2020 entry, Amazon's COVID-19 Blog states, "[o]n April 1, we recommended that corporate office employees who work in a role that can be done from home should do so through April 24. . . ." Ackermann Decl., **Exhibit E**, at 125. The April 1, 2020 entry also adds that, at a future date, "Amazon will provide teams with options to gradually return to their office or to continue working from home." *Id.* at 126. In fact, as shown below, throughout 2020, 2021, and into 2022, Amazon continued with its WFH guidance to the Class Members, and RTO plans were repeatedly delayed.

On April 30, [2020], the Amazon COVID-19 Blog contains an entry titled "Updated work-from-home-guidance", stating, "[w]e continue to prioritize the health of our employees and follow local government guidance. Amazon employees who work in a role that can be done effectively from home are welcome to do so until at least October 2. . . ." *Id.* at 75. On July 15, 2020, the Amazon COVID-19 Blog contains an entry titled "Amazon updates work-from-home guidance" stating, "[a]s the COVID-19 pandemic continues, we are extending the time frame for those who can do their job effectively from home to January 8, 2021." *Id.* at 31. On October 21, 2020, Amazon again "[u]pdated [its] work-from-home guidance", stating that, "[i]t will be some time before things return to normal. Accordingly, work that can effectively be done from home can continue to be done from home through June 30, 2021." *Id.* at 25. Similarly, on March 30, 2021, the Amazon COVID-19 Blog states, ". . . we expect our return to the office to be gradual. . . . In the U.S., as vaccines become broadly available in the next few months, we expect more people will start coming to the office through the summer, with most back in the office by early fall. . . . As a reminder, Amazon offices remain open and about 10% of our corporate population currently works from an office each day. . . . As we transition back to the office, please continue to follow health authority guidelines and local government guidelines. . . ." *Id.* at 13-14.

Indeed, Amazon concedes that, as of March 30, 2021, only about 10% of Amazon's corporate office employees were working in its physical offices. Hughes Depo., at 55:19-56:1. However, Amazon has available, and has produced to Plaintiff, badge swipe data for the Class, so the parties can determine which Class Members swiped into and physically worked from Amazon's offices on any given day during

employees work from home unless their work required them to be in its physical offices. *Id.* at 46:1-7.

the Class Period, all the way back to March 2020. *Id.* at 75:7-18. *See also* Williams Decl., ¶ 9, Ex. A (stating that Plaintiff's counsel received badge swipe data from Amazon that is inclusive of the Class Period, that the data shows which Class Members physically accessed any of Amazon's California office locations on 15 or more separate/unique days in any given month (i.e., for at least half of the workdays of any given month) during the Class Period, that 347 total Class Members (i.e., only 5% of the Class) physically accessed one or more of Amazon's California office locations on 15 or more separate/unique days during at least one month within the Class Period, and that the aggregate total number of months during the Class Period where any Class Member physically accessed one or more of Amazon's California office locations on 15 or more separate/unique days within any given month equals 1,047).

Although Amazon indicated that RTO was anticipated in the Fall of 2021, this did not happen due to new COVID-19 waves, and the corporate advised WFH period continued into 2022. On June 10, 2021, the Amazon COVID-19 Blog is titled, "Amazon updates return-to-office guidance", and notes, ". . . we've adjusted our guidance on our plans for returning to the office and added more clarity." Ackermann Decl., **Exhibit E**, at 7; Ackermann Decl., **Exhibit F** (Amazon webpage document entitled "Amazon updates return-to-office guidance"), at 1 (adding to the June 10, 2021 Amazon COVID-19 Blog entry that "[g]oing forward, we've decided to offer Amazonians a mix of working between the office and home.").

As of June 10, 2021, there had not been any widespread RTO of Amazon's corporate office employees. Hughes Depo., at 58:2-9. On October 11, 2021, recognizing that the earlier-proposed RTO—WFH mix had not yet materialized, CEO Andy Jassy published an Amazon webpage entry titled "Ongoing company updates regarding COVID-19 (2019 Novel Coronavirus)," in which he noted, "As we start to think about the future, we've all been asking questions like, "When are we really going back to the office . . . ?" Ackermann Decl., **Exhibit G**, at 1-2. Mr. Jassy continued, "[f]or our corporate roles, instead of specifying that people work a baseline of three days a week in the office, we're going to leave this decision up to individual teams." *Id.* at 2. Finally, Mr. Jassy concluded that Amazon's team leaders would clarify work location plans "before January 3[, 2022,] which is the date we set previously for people to start returning to the office at least three days a week." *Id.*

Except for certain teams and locations, Amazon concedes that January 3, 2022 was the initial date that Amazon had set for employees to RTO. Hughes Depo., at 69:25-70:8. However, as to the 90-95% of Amazon's corporate workforce who were working from home since March 2020, there was no significant

RTO until at least July 1, 2022. *See* Ackermann Decl., **Exhibit H** (CNBC Article titled "Amazon CEO Andy Jassy says he has no plan to force workers to return to the office") (quoting Amazon CEO Andy Jassy at the Code Conference in Los Angeles on September 7, 2022, when he discussed Amazon's plan to order corporate employees to return to the office, saying: "We don't have a plan to require people to come back."); *cf.* footnote 4 (citing testimony from one of Amazon's Rule 30(b)(6) corporate designees that the corporate advised WFH period ended before August 5, 2022). Based on the foregoing, the Class Period (i.e., March 15, 2020 to July 1, 2022) overlaps with the time period during which Amazon recommended that Class Members WFH and/or provided guidance to Class Members regarding its WFH and RTO plans.

## C. Plaintiff and Class Members Needed Home Internet Access to Perform Their Jobs Remotely for Amazon During the Class Period

It is obvious that the Class Members, consisting of Amazon's corporate employees in California, many of whom (like Plaintiff) performed programming or other IT functions, **all** were expected to use the internet while working remotely for Amazon during the pandemic to, *inter alia*, send and receive work emails, use their electronic work calendars, and to access Amazon's servers and networks to perform their programming and other work and to save their work product. *See* Williams Decl., ¶ 6. Aware of this fact, Amazon advised Plaintiff and the Class Members that, to access Amazon's servers and network while working from home, they would need a USB security key and Midway Pin. Hughes Depo., at 34:18-36:7; Ackermann Decl., **Exhibit I** (Amazon document titled "Information regarding the 2019 Novel Coronavirus global"), at 2 ("Q10: How do I connect to the network while working remotely? You need two things to connect to the Amazon network *from home*: A registered USB security key and a Midway PIN. Learn More in the 'Connect to VPN' and 'Working Remotely' articles on it.amazon.com.") (emphasis added).

Amazon also issued instructions to the Class Members about various security protocols that they were advised to adopt in order to safely and securely access Amazon's network while they were all working from home. Hughes Depo., at 32:16-22. For his part, Plaintiff was an on-call software engineer who needed access to his home internet services on a 24/7 basis. Williams Depo., at 94:21-95:23. Since Plaintiff had a separate internet connection for work, he estimated that his work-related usage, at least during the regular workweek, was "close to a hundred percent" of the total usage of his AT&T home internet connection. *Id.* at 96:23-97:4, 97:10-12.

///

**D. Amazon's Uniform Written Reimbursement Policy During its Corporate-Advised WFH Period _Did Not_ Authorize Employees to Seek Reimbursement of Home Internet Expenses Unless Employees Incurred Extra Costs**

To provide Amazonians with guidance and direction as it relates to the most common expense reimbursement questions that they may have during the COVID-19 pandemic, Amazon promulgated written frequently asked questions ("FAQs"), entitled "Most Common Expense Reimbursement Questions regarding COVID-19." Rule 30(b)(6) Deposition of Defendant with testimony by Principal Program Manager for Global Expense, Jessica McCray ("McCray Depo."), at 12:2-5 and 16:4-25, the cited portions of which are attached as **Exhibit J** to the Ackermann Decl.; Ackermann Decl., **Exhibit K**. These FAQs were posted on Amazon's internal wiki page and appeared as a tab within Amazon's Concur reimbursement software tool, and they were considered to be applicable guidance for all Amazon employees, including those working from home in California during the Class Period. McCray Depo., at 18:18-19:18, 20:20-21:3, 21:19-23, 38:23-39:4 (the FAQ document "was intended for all global Amazon employees."). Notably, Amazon's written FAQs remained on Amazon's internal website through at least August 5, 2022, and as of that date, were still in use to provide Amazon's employees with guidance regarding the company's reimbursement policies. _Id._ at 23:17-24:1.

As the second "Q and A" listed in the FAQs document, Amazon asks and answers the following question on behalf of, and for, its employees:

Q. I incurred **_incremental internet_** or extra mobile phone **_costs as a result of working from home, will Amazon reimburse for these costs_**?

A. **_Employees are allowed to temporarily claim reimbursement of these costs if manager has preapproved_**. Please discuss with your manager if the cost for these items are needed and can be reimbursed. **_These temporary internet and mobile phone claims are only applicable during the corporate advised WFH period_**.

Please use the expense type "**_WFH – Monthly Incremental Internet_**" or "WFH – Monthly Incremental Mobile Phone" when submitting these transaction(s) in Concur. . . .

Ackermann Decl., **Exhibit K**, at 1 (emphasis added); McCray Depo., at 24:2-25:1.

The phrase "corporate advised WFH period" in the FAQs includes the word "corporate," which refers to Amazon. McCray Depo., at 27:16-22. The word "advised" there means "recommended." _Id._ at 27:23-28:3. The letters "WFH" mean "work from home." _Id._ at 28:8-10. Finally, the word "period" means a certain amount of time. _Id._ at 28:11-15. Despite these admissions, Amazon's Rule 30(b)(6) corporate

designee on the topic of the content and meaning of Amazon's COVID-19 Blog and its "Information Regarding the 2019 Novel Coronavirus" document could not—or would not—identify the period of time that constituted Amazon's recommended work from home period of time for its California office employees and instead testified, strangely, and at odds with the plain text of the FAQs, that there was no corporate advised WFH period.[4]

Significantly, for purposes of this case, Amazon admits that the words "incremental" and "extra" in its FAQs are interchangeable, because the phrase, "extra mobile phone costs" refers to "additional costs beyond an employee's normal monthly cell phone bill" (McCray Depo., at 28:16-29:6), and the FAQs specify that, as to those "*extra* costs", the proper reimbursement code to enter in Amazon's Concur system is "WFH-monthly *incremental* mobile phone." *Id.* at 29:7-30:4, 31:25-32:5 ("My understanding of the two terms [is that], yes, I would use them interchangeably."). Thus, "incremental internet," for purposes of the FAQs, must also necessarily mean only "extra" monthly internet costs are reimbursable. Notably, when asked whether, when submitting for internet or mobile phone expenses in Concur, Amazon employees "submit for monthly incremental Internet or monthly incremental mobile phone costs," Amazon's Rule 30(b)(6) designee on its reimbursement policies answered, "Yes, that is correct." *Id.* at 38:8-18.

Accordingly, the plain language of Amazon's uniform written policy as set forth in the FAQs applicable from May 2020 to at least August 2022 advised Amazon's employees working from home that if and only if they incurred extra or additional home internet expenses during the pandemic, they were authorized to seek reimbursement for those extra home internet expenses, provided they also obtained manager approval. *Id.* at 45:2-10 (testifying that Amazon's FAQs were changed to add the word "incremental" to the second question around May 2020); Ackermann Decl., **Exhibit K.**

---

[4] Specifically, when asked if the "corporate-advised work-from-home period," is co-extensive with the period "from March 15, 2020 to [August 5, 2022]", Amazon's corporate designee on the content and meaning of Amazon's COVID-19 Blog and its "Information Regarding the 2019 Novel Coronavirus" document testified, "I believe there's no corporate-advised work-from-home period" (Hughes Depo., at 24:11-17), and added that she was not aware of what that phrase referred to. *Id.* at 25:2-7. On the other hand, Amazon's Rule 30(b)(6) corporate designee on its reimbursement policies repeatedly used the phrase "work-from-home corporate-advised period" when answering questions. *See e.g.*, McCray Depo., at 35:1-9 ("A: Again, this document was intended to provide recommendation to employees, if they had questions or concerns, they could discuss with their manager to determine if the costs were needed and necessary for their job function now that they are in a work-from-home corporate-advised period."). Indeed, Amazon's Rule 30(b)(6) corporate designee on its reimbursement policies specifically noted that, as of the date of her August 5, 2022 deposition, "California is *no longer* under a corporate work-from-home-advised period. . . ." *Id.* at 64:6-21 (emphasis added).

Amazon's Rule 30(b)(6) corporate designee testified that an earlier version of Amazon's FAQs, issued in March 2020, did not contain the words "extra" or "incremental," and thus may have authorized Amazon's employees to seek reimbursement for existing home internet expenses. McCray Depo., at 39:23-40:19, 42:2-9, 44:11-15; Ackermann Decl., **Exhibit L** (a prior version of Amazon's FAQs with "incremental" and "extra" omitted). That version was in effect only until May 2020. McCray Depo., at 49:5-8. However, the next iteration of the FAQs, in May 2020 (i.e., **Exhibit K**), added the words "incremental" or "extra" (*id.* at 45:2-10), and a version of the FAQs with the "extra" and "incremental" language has remained on Amazon's wiki page from May 2020 until at least August 2022. Ackermann Decl., **Exhibit M** (post-May 2020 version of Amazon FAQs, which includes the "incremental" and "extra" language); McCray Depo., at 55:14-57:2, 60:16-19 ("Q: And does the current version of this FAQs on the wiki page for Amazon contain the 'incremental internet' language? A: Yes, it does").

Notably, as to incremental increases in monthly home internet expenses, those extra costs were only reimbursable with prior manager approval. *Id.* at 62:15-63:12. When Plaintiff asked his manager, Bhushan, about home internet reimbursements in or around May 2020, Bhushan told him that he was not eligible for those reimbursements and that "Amazon doesn't have a policy for that right now." Williams Depo., at 67:3-17, 68:21-69:11, 69:25-70:17. Plaintiff testified that his experience of using home internet but not being able to get reimbursed for those expenses was reflective of the experiences of the Class more broadly. *Id.* at 209:1-210:5.

Another version of the FAQs—see Ackermann Decl., **Exhibit N**—which was also on Amazon's wiki page (McCray Depo., at 67:8-12), makes it explicit that, with prior manager approval, employees can submit for reimbursement "based on one of the following conditions: 1) employees never had home internet before and have gotten it only due to WFH[, or] 2) In home data plans had to be increased to manager WFH volume or data. These[] conditions need to be supported with bills before and after WFH." *Id.* at 68:11-69:12; Ackermann Decl., **Exhibit N**. Amazon's Rule 30(b)(6) deponent testified that this was just a rogue manager in charge of one business unit, the eCommerce Foundation ("ECF") unit,[5] offering his views and clarifying what he thought the FAQs meant, but she added, despite the document being produced by counsel for Amazon with an "Amazon confidential designation" on it: "I cannot state that this

---

[5] Amazon's ECF unit has over 1,000 open jobs and does not appear to be a small business unit. See https://www.amazon.jobs/en/business_categories/ecommerce-platform (last accessed Nov. 1, 2022).

is an official Amazon document." McCray Depo., at 71:2-24. Amazon's Rule 30(b)(6) designee would not admit that all of Amazon's FAQs should be interpreted in accordance with the language in **Exhibit N**, instead testifying that managers made their own decisions as to what was reimbursable. *Id.* at 73:8-74:4.

In sum, Amazon's various FAQs demonstrate that Amazon's employees working remotely in California during the Class Period, in particular after May 2020, were ***not even authorized to seek reimbursement for their pre-existing, existing, and continuing*** monthly home internet expenses even after they began using their home internet services for work on a daily basis; rather, they could only submit reimbursement requests for "extra" or "incremental increases" for their home internet expenses, such as internet upgrades or installation of new home internet.[6] See Ackermann Decl., **Exhibits K-N**.[7] Tellingly, Amazon considered a flat monthly stipend for all California employees working from home during the pandemic, but it was rejected apparently for tax reasons: without reimbursement submissions and bills being submitted, such payments would allegedly have to be treated as W-2 income to Class Members. McCray Depo., at 95:11-97:10.

**E. Plaintiff and the Class Members Each Incurred Roughly $50 to $70 Per Month in Home Internet Expenses**

Concerning the issue of how much Class Members incurred in monthly home internet expenses,

---

[6] Notably, as to virtual or Phonetool designated virtual employees who were working from home even before the pandemic, Amazon's FAQs state unequivocally that, ". . . Amazon does not reimburse for . . . monthly internet expenses for virtual or Phonetool designated virtual employees through Concur." Ackermann Decl., **Exhibit K**, at 1; McCray Depo., at 49:23-51:22. However, Amazon's Rule 30(b)(6) deponent clarified that, in practice, during the Class Period, those virtual employees were, in fact, given a fixed monthly stipend of $50 per month by Amazon to cover their home internet expenses during the pandemic. McCray Depo., at 54:3-9 ("A: Yes, so in working with HR, we were advised to provide virtually designated Phonetool California employees a fixed monthly internet reimbursement amount. Q. And how much was that amount? A: 50 USD per month for their business needs."). When asked why Amazon reimbursed its virtual Phonetool employees working from home in California with a fixed $50 monthly amount, but not all of its California office employees working from home, Amazon's Rule 30(b)(6) corporate designee responded, ". . . You would have to discuss with HR the decisions they made." *Id.* at 54:18-55:4. This significantly undermines Amazon's potential "defense" that it could not know how much to reimburse employees unless they submitted reimbursement requests with bills.

[7] Amazon's Rule 30(b)(6) deponent tried to run away from Amazon's flawed written policies in its FAQs by testifying that, for most groups of Amazon's employees who, pre-pandemic, were not entitled to seek any reimbursement for monthly home internet expenses, all of their ***new*** reimbursement requests for home internet reimbursements during the pandemic would qualify as "incremental" or "extra" and thus as reimbursable. McCray Depo., at 47:12-48:9. But this makes little sense, since the adjectives "incremental" or "extra" in Amazon's FAQs apply to whether there were "extra" or "incremental" costs incurred, and not to whether there was a change in the status of whether or not they were reimbursable before and after the onset of the pandemic, and, in any event, Amazon never advised the Class of this tortured and unconvincing explanation of its written FAQs.

Plaintiff has several data points to consider. First, Plaintiff testified that, from March 2020 to November 20, 2020, he worked for Amazon from his residence located in Aptos, California; he had home internet before he took the job with Amazon;[8] he needed to use the internet to access Amazon's network and servers to do his job; and, during that time, he incurred home internet expenses amounting to $69.95 per month for the basic plan with Xfinity (Comcast), plus another $19.95 per month for the high-speed internet upgrade. Williams Depo., at 40:17-23, 48:7-15, 64:14-25, 186:7-187:17. Plaintiff's monthly bill for his AT&T home internet account was $50.00. *Id.* at 228:1-6. Plaintiff primarily used his AT&T home internet to access the internet for work, but he also used Comcast Xfinity internet around 10% of the time for work-related purposes. *Id.* at 229:5-9.

Second, during the Class Period, Amazon reimbursed 619 individuals who sought home internet reimbursements (out of the putative Class of 6,934) at the average rate of $66.49 per month. Ackermann Decl., **Exhibit A**, Amended Response to Interrogatory No. 17 (Amazon paid out a total of $480,636.44 to the 619 Class Members who sought reimbursement for internet-related expenses during the Class Period).[9]

Third, as noted, Amazon paid $50 per month as a fixed stipend to virtually designated Phonetool California employees before and during the pandemic. See footnote 6, *supra*. *See also* Defendant Amazon.com Services LLC's Responses and Objections to Plaintiff's Third Set of Interrogatories, Response to Interrogatory No. 23, attached as **Exhibit O** to the Ackermann Decl. ("Amazon identifies that virtually-designated California employees have been eligible for monthly Internet-related expense reimbursements since at least September 2019.").

Finally, Plaintiff's counsel hired a third-party survey expert, Laura Steiner—the Vice President of Employment Research Corporation—to conduct a survey of the putative Class Members, including survey questions about the amount of Class Members' monthly home internet expenses while working from home during the Class Period. Although the survey responses to this question varied, of the 157 Class Members who completed survey interviews, the median monthly home internet cost was between $61 to $70, and the average monthly home internet cost was $69.51. See Steiner Decl., ¶¶ 1-3, Ex. 1 thereto at pp. 9-11, 14.

---

[8] Plaintiff had home internet through Comcast before he joined Amazon; when he set up an office in his garage, he added another internet line from AT&T. Williams Depo., at 48:12-50:10.
[9] If the Class is certified and we proceed to dispositive motions and trial, Plaintiff would not seek monetary relief or penalties for any months for which Class Members sought and received such home internet reimbursements, whether due to incremental cost increases, new home internet plans, or otherwise.

Ms. Steiner conducted a preliminary survey of 157 survey interviews, and she is providing testimony regarding these preliminary findings and regarding how she would go about conducting a final survey for trial—if the Court finds that one is needed—which increases the response rate, increases the precision of her estimates, and validates the preliminary survey results. *Id.* at pp. 1, 14. At this time, Plaintiff is not seeking to admit Ms. Steiner's findings, but merely showing the Court how Plaintiff could establish damages if, legally, Defendant's practices or general information regarding what such home internet plans cost in California are not sufficient in the Court's view.

## IV.  RELEVANT SUBSTANTIVE LAW APPLICABLE TO PLAINTIFF'S SECTION 2802 REIMBURSEMENT CLAIM

The applicable standard used to establish a reimbursement claim under California law is established by the Labor Code and case law. Section 2802(a) provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Section 2802(c) defines "necessary expenditures" to include "all reasonable costs". Courts have found that expenditures are reasonable and necessary pursuant to Section 2802 even when not officially required by a company. *Arroyo v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 32069, at *49-50 (N.D. Cal. Feb. 24, 2020) ("[T]he 'argument that there is a bright-line rule that only expenses that are officially required can be considered "necessary" does not square with the case law.").[10] Notably, Section 2802 is also subject to an anti-waiver provision. Labor Code § 2804; *Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 951-52 (2008).

The elements of Plaintiff's claim under Section 2802 are: (1) that Plaintiff and the putative Class incurred home internet expenses while working from home for Amazon; (ii) that these expenditures were

---

[10] Here, the Class' home internet expenses were required by Amazon by way of its advisement to Class Members that "[y]ou need two things to connect to the Amazon network from home: A registered USB security key, and a Midway PIN." Ackermann Decl., **Exhibit I**, at 2. Moreover, the Class's expenditures are reasonable and necessary because they are reasonably inferable, since Amazon had reason to know its corporate office employees were working from home and Amazon knew or should have known they would need home internet to do so, as previously recognized by this Court. *See Williams v. Amazon.com Services, LLC*, No. 3:22-cv-01892-VC, Order Granting in Part and Denying in Part Motion to Dismiss, ECF No. 25 (June 1, 2022), at p. 2 ("Amazon, a major tech company, surely knew—or at the very least, had reason to know—that its software development engineers who worked from home during the pandemic were incurring basic costs related to that work."); *Tan v. Grubhub, Inc.*, 171 F. Supp. 3d 998, 1005-06 (N.D. Cal. 2016) (holding it is plausible to infer Grubhub was aware class members incurred vehicle, parking, and phone expenses "from the nature of their business—an app-based food delivery service. . . ."). To the extent this is disputed by Amazon, the matter is ripe for class resolution.

incurred in direct consequence of the discharge of their job duties or obedience to Amazon's directions; and (iii) the home internet expenses were reasonable and necessary. *See Marr v. Bank of Am.*, 2011 U.S. Dist. LEXIS 24868, at *3 (N.D. Cal. Mar. 8, 2011) (stating the elements of a Section 2802 claim and *citing Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007)).

Moreover, Plaintiff must show that that Amazon "kn[e]w or ha[d] reason to know" that its employees working from home incurred work-related home internet expenses for purposes of Section 2802, which is a fourth element. *Id.* (*citing Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009)) ("The Court concludes that a fair interpretation of §§ 2802 and 2804 which produces 'practical and workable results,' . . . consistent with the public policy underlying those sections, focuses not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense. If it does, it must exercise due diligence to ensure that each employee is reimbursed.").

Where, as here, employees in California are expected to use their internet at home for work, courts have held that they incurred expenses in "direct consequence of the discharge of his or her duties" and were entitled to reimbursement, **even if they would have incurred the same expenses without their work-related usage**. *See Aguilar v. Zep, Inc.,* 2014 U.S. Dist. LEXIS 120315, at *55-56 (N.D. Cal. Aug. 27, 2014) (where outside sales representatives maintained a home office and used home internet for work— and admitted that they would have incurred the same expenses without work duties—the court nevertheless held that the employer was obligated to reimburse some reasonable portion of these expenses). "Given that Zep required the Plaintiffs to use . . . internet, and the expenses were a foreseeable and clearly anticipated cost of doing business, Zep must reimburse these expenses." *Id.* at *56.

Indeed, under Labor Code Section 2802, employers must reimburse employees for all necessary and reasonable work-related expenses, **regardless of whether (or not) employees incurred any additional or "extra" out-of-pocket expenses from work-related use**. *See Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014) ("We hold that when employees must use their personal cell phones for work-related calls, Labor Code section 2802 requires the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills."). The Ninth Circuit Court of Appeals has also suggested, as held by the district court in *Aguilar*, that *Cochran*'s logic would apply

equally to monthly home internet expenses, not just monthly cell phone expenses. *See Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1078, n.10 (9th Cir. 2020).

**V.      THE COURT SHOULD CERTIFY PLAINTIFF'S SECTION 2802 CLAIM UNDER RULE 23**

Class certification of Plaintiff's Section 2802 claim is governed by Fed. R. Civ. P. 23. As a threshold matter, before reaching the requirements of Rule 23, the party seeking class certification must demonstrate that an ascertainable class exists. *Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011). Under Rule 23(a), Plaintiff must establish "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a). Also, Plaintiff must establish one of the three prongs of Rule 23(b). To certify a class under Rule 23(b)(3), the court must find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the predominant, certifiable question under Rule 23(b)(3) is whether Amazon's written expense reimbursement policy in its FAQs (i.e., **Exhibits K-O** to the CJA Decl.)—including the illegal provision that Amazon would only allow employees to seek reimbursement for incremental increases in home internet costs, which was in force as of May 2020—violated Section 2802 of the Labor Code. A related certifiable question is whether Amazon "knew or should have known" that its employees were incurring home internet expenses while working for Amazon from home throughout the Class Period, such that an obligation to reimburse arose under Section 2802.

**A.  The Putative Class Is Ascertainable and Numerous**

The putative Class is both ascertainable and numerous, because it includes approximately 6,934 individuals who are or were assigned to at least one of Amazon's nine California office locations for at least one pay period during the Class Period, and who were also assigned a registered USB security key and a Midway Pin by Amazon to facilitate their ability to connect to Amazon's network and servers while working remotely for Amazon during the Class Period. See Ackermann Decl., **Exhibit A**, Amended Response to Interrogatory No. 14; *Greko v. Diesel USA, Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011) ("as a general matter, a class greater than forty often satisfies the [numerosity] requirement. . . .").

"A class is ascertainable if it is defined by 'objective criteria' and if it is 'administratively feasible' to determine whether a particular individual is a member of the class." *Mendez v. C-Two Grp., Inc.*, 2015 U.S. Dist. LEXIS 165780, at *11 (N.D. Cal. Dec. 10, 2015) (citation omitted). Here, membership in the Class is clearly defined by objective criteria: (1) an employment assignment to a California office location by Amazon during the Class Period; and (2) assignment of a USB security key and Midway Pin by Amazon to facilitate remote work from home. The Class is thus easily ascertained, and any months worked in Amazon's offices can be easily removed from damage calculations via use of badge swipe data.

**B. The Commonality Element is Satisfied Because Liability Hinges on a Challenged Company-Wide Reimbursement Policy Applicable to all Class Members**

Rule 23(a)(2) requires that there are "questions of law or fact common to the class", although "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("Indeed, Rule 23(a)(2) has been construed permissively."). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As noted in *Dukes*, the key consideration is "not the raising of common 'questions' . . . but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

Here, several common legal and factual issues satisfy the commonality requirement. First, Plaintiff contends that Amazon's written expense reimbursement policy in its FAQs (**Exhibits K-O to the CJA Decl.**) of excluding existing and continuing work-related internet expenses from eligibility for reimbursement unless there were incremental increases in such costs violated Labor Code Section 2802's requirement that *all* necessary and reasonable business expenses—including a reasonable portion of expenses associated with home internet even if Class Members have unlimited personal plans—be reimbursed. *See Cochran*, 228 Cal. App. 4th at 1140 ("Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills."). Whether Amazon's policy, allowing reimbursement only for incremental increases in home internet expenses, violates Labor Code Section 2802 is a legal challenge to a uniform reimbursement policy that can generate a common answer for the Class.

Second, whether Amazon's practice of not automatically reimbursing Class Members' monthly internet expenses when it "knew or should have known" that its employees were using home internet services to perform their jobs—based on: (a) its own recommendations and WFH guidance that its corporate office employees should continue working from home throughout the Class Period, as evidenced by Amazon's COVID-19 Blog publications and its regular WFH guidance updates that repeatedly delayed RTO plans;[11] and (b) the fact Amazon's corporate employees in California were all expected to use the internet for work purposes during the COVID-19 pandemic, and Amazon accordingly advised the Class that they would need a USB security key and Midway Pin to access its network and servers while working remotely from home[12]—violates Labor Code section 2802's requirement that all necessary business expenses be reimbursed is an issue of law and fact that is common to the Class and can generate a common answer to drive the resolution of this action. In *Stuart v. Radioshack Corp.*, 2009 U.S. Dist. LEXIS 12337, at *52-53 (N.D. Cal. Feb. 5, 2009), the court certified a class of assistant managers with respect to claims that Radioshack should have reimbursed them for gas mileage expenses incurred while driving products between stores in their personal cars as part of inter-store transfers that were tracked, and noted:

> Most of the relevant facts (the terms of the reimbursement policy, its general interpretation by management, whether it was publicized companywide, etc.) are common. While there might be some individualized inquiries as to whether actions of individual store or district managers might have taken steps to fulfill the employer's obligation under the California Labor Code (*e.g.*, by actively encouraging employees to submit reimbursement claims), the common questions are likely to predominate."
> *Id.* at *53.

Moreover, that Amazon reimbursed certain virtually designated Phonetool employees working from home in California with $50 per month stipends to cover their home internet expenses, but not the rest of its California workforce working from home, supports this certification theory. See footnote 6, *supra*; Ackermann Decl., **Exhibit O**, Response to Interrogatory No. 23.

Third, whether Amazon's affirmative defense—that Plaintiff and the Class somehow waived or failed to exhaust their right to reimbursements by not submitting for them (*see* Defendant's Answer to

---

[11] See Ackermann Decl., **Exhibits E-H**. See also Section III.B, *supra*.

[12] *See* Ackermann Decl., **Exhibit I**, at 2 (Amazon "Information regarding the 2019 Novel Coronavirus global" document, which states, "[y]ou will need two things to connect to the Amazon network **from home**. . . .") (emphasis added). See also Section III.C, *supra*. Moreover, as Plaintiff noted during his deposition, everyone working from home was using their home internet for work. Williams Depo., at 54:3-12. Finally, Plaintiff's survey expert's preliminary survey showed that 96% of the Class Members were required to maintain and use their home internet in order to perform their job duties at home in California, and those results are at a 95% confidence level. Steiner Decl., ¶ 3, Ex. 1 at pp. 7-8.

Plaintiff's TAC, Dkt. No. 39, Defendant's Fifth, Eighth, and Ninth Affirmative Defenses), despite Amazon's written expense reimbursement policy in its FAQs (CJA Decl., **Exhibits K-O**) that did not authorize such submissions without a corresponding incremental increase in home internet expenses—fails as a matter of law because of Labor Code section 2804's non-waiver provision is another common legal issue that is amenable to resolution on a class-wide basis. In *Stuart*, as here, the company defended itself by arguing that, notwithstanding its computer database records of inter-store transfers, from which mileage expenses for class members could be identified, employees did not, for the most part, submit reimbursement requests for their gas mileage expenses incurred while doing inter-store transfers. The company claimed, as here, that this insulated it from liability. The district court held, however, that what it called Radioshack's "exhaustion defense" also raised predominating common issues because (a) it was likely that many employees did not submit formal reimbursement requests, (b) the variation for those who did submit such requests would be contained in straight-forward documentation and would not vitiate predominance, and (c) there were predominating common issues as to whether the defense was legally viable. *See Stuart*, 2009 U.S. Dist. LEXIS 12337 at *21-25, 47-48. Accordingly, Amazon's potential "exhaustion / waiver" defense also gives rise to a predominating class-wide legal issue.

District courts throughout California have found that commonality is met where, as here, the proposed Class asserts that an employer adopted a uniform policy of not reimbursing employees' particularized business-related expenses in violation of Section 2802. *See, e.g.*, *Nash v. Horizon Freight Sys.*, 2020 U.S. Dist. LEXIS 242001, at *9, n.3 (N. D. Cal. Dec. 23, 2020) (". . . claims for reimbursement are suitable for class treatment when there is a 'uniform policy as [to] what is reimbursed and what is not.'") (citations omitted); *Schulz v. QualxServ, LLC*, 2012 U.S. Dist. LEXIS 58561, at *11, 15 (S.D. Cal. Apr. 26, 2012) (certifying the class because plaintiffs "challenge uniform policies and systemic practices that apply to this class of employees" and "whether the Defendants' policies and practices comply with California's specific requirements is the type of question that can be answered on a classwide basis[,]" and noting that, as to the plaintiffs' Labor Code section 2802 claim, "[h]ow an individual employee dealt with his expenses . . . is irrelevant to the question of whether the *employer* should have reimbursed the [class members] in the first place.") (emphasis in original); *Hopkins v. Stryker Sales Corp.*, 2012 U.S. Dist. LEXIS 67101, at *16-17 (N.D. Cal. May 14, 2012) (finding it a "fact that the *central question* in this case is whether [defendant's] business expense reimbursement policy violated Cal. Labor Code § 2802[,]" and

noting that "[d]istrict courts throughout this circuit have found that commonality is met when, as here the proposed class of plaintiffs asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses. . . .") (emphasis in original); *Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224, at *17 (N.D. Cal. Aug. 29, 2007) ("the existence of a formal, company-wide policy . . . that is allegedly applicable and applied to all employees is sufficient to raise common issues of law and fact."); *Richie v. Blue Shield of Cal.*, 2014 U.S. Dist. LEXIS 170446, at *52-55 (N.D. Cal. Dec. 9, 2014) (certifying class of telecommuting claims processors with section 2802 reimbursement claims for landline reimbursements, where employer required class members to maintain a phone line in their home, after finding "there are both questions of fact (what, precisely, Blue Shield's reimbursement policy covered and did not cover) and questions of law (whether that policy complies with California law) common to the class and subject to class-wide proof."); *Stuart*, 2009 U.S. Dist. LEXIS 12337 at *44-46 ("the fact that managers may have some discretion to determine what [inter-company store transfers were reimbursable] does not change the fact that the central issue in this case is whether there was a failure to reimburse, which would constitute a violation of the California Labor Code. That is, the issue is not *why* employees were not reimbursed but *whether* they were.") (emphasis in original).

## C.  The Named Plaintiff Is Typical of the Class

The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists if a named plaintiff's claims are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Typicality "does not mean that the claims of class representative[s] must be identical or substantially identical to those of the absent class members." *Staton v. Boeing Company,* 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted). Plaintiff's claims are typical here because he, like his fellow employees, claims that he and they were not reimbursed for a reasonable percentage of his and their home internet expenses during the Class Period. Williams Decl., ¶ 10. In addition, Plaintiff and other employees were subject to Amazon's uniform FAQs policy denying home internet reimbursements except for incremental increases in home internet expenses, and they were all provided with USB security keys and Midway Pins from Amazon to access its network and servers while working from home during the Class Period. *Id.*

## D.  Plaintiff and his Counsel are Adequate Class Representatives

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and

adequately protect the interests of the class." *Hanlon*, 150 F.3d at 1020. This requires: (i) that the named plaintiffs and their counsel do not have conflicts of interest with the proposed class; and (ii) that the named plaintiffs and their counsel "prosecute the action vigorously on behalf of the class." *Id.* (citation omitted). Here, because the claims of Plaintiff and the Class Members are co-extensive, and Plaintiff will look out for the best interests of the Class, there is no legally cognizable conflict. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157-58, n.13 (1982); Williams Depo., at 209:1-210:5; Williams Decl., ¶ 11. Plaintiff also has unique skills such as being able to assist with large-scale data analysis of the badge swipe data, which also has benefited the Class in meaningful ways. Williams Decl., ¶ 9. Additionally, Plaintiff's Counsel are adequate to serve as Class Counsel. *See* Ackermann Decl., ¶¶ 18-27; Klugman Decl., ¶¶ 1-6.

**E.  The Class Also Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires plaintiffs to meet two standards: (1) "questions of law or fact common to class members predominate over any questions affecting only individual class members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, there are predominating class-wide issues as to, *inter alia*, (a) whether Amazon's written expense reimbursement policy as of May 2022 only allowing reimbursement of incremental increases in home internet expenses violates Section 2802's requirement that all reasonable and necessary business expenses be reimbursed; (b) whether Amazon knew or should have known throughout the Class Period that Plaintiff and the Class Members were incurring monthly home internet expenses to perform their jobs, and whether Amazon should have thus automatically reimbursed their monthly home internet expenses; and (c) whether Amazon's "exhaustion / waiver" affirmative defense fails as a matter of law.

**1.  Questions of Law and Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Class Members**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). For common questions of law and fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof . . . [should] predominate over those issues that are subject only to individualized proof." *Ortega v. J.B. Hunt Transp., Inc.,* 258 F.R.D. 361, 366-67 (C.D. Cal. 2009) (citation omitted). Furthermore, "Courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Id.*

at 367 (citation omitted).

Here, the legal and factual issues raised by Plaintiff's Section 2802 Claim predominate over individual issues as a result of Amazon's company-wide home internet reimbursement policy that applied uniformly to the Class. First, whether Amazon's policy violated Section 2802, as interpreted by *Cochran*,[13] is a legal issue amenable to resolution on a class-wide basis that raises predominating common legal issues. *See Nash*, 2020 U.S. Dist. LEXIS 242001 at *5-9 (certifying the plaintiff's section 2802 claims, dismissing the defendant's predominance arguments, and noting that "plaintiffs need only show that common questions 'predominate' over individual questions, not that common questions exist to the complete exclusion of individual questions."); *Aguilar,* 2014 U.S. Dist. LEXIS 120315 at *55-56 (employer obligated to reimburse a reasonable portion of home internet expenses for work performed by outside sales representatives based in home offices); *Richie*, 2014 U.S. Dist. LEXIS 170446 at *66-69 (certifying class of home office claims processors with section 2802 reimbursement claims for landline reimbursements, where employer required class members to have landlines, after finding "factual and legal questions underlying liability . . . are likely to dominate any challenge to [defendant's] reimbursement practices[,]" including "the question of whether [defendant] acted with 'due diligence' to ensure that its claim processors were reimbursed for their phone expenses consistent with the California Court of Appeal's decision in *Cochran*. . . ."); *Stuart*, 2009 U.S. Dist. LEXIS 12337 at *44-46 (finding that the legal issue of whether Radioshack failed to reimburse employees predominates and is the central issue in the case, and dismissing Radioshack's argument that class certification is not appropriate because reimbursement decisions were made by many different store or district managers: "[T]he only fact that informs liability under the California Labor Code . . . is the objective fact whether the employee was reimbursed. . . . [T]he reason why reimbursement was not made is not relevant.").

The employees' challenge to Radioshack's policy and practice of non-reimbursement for inter-store transfers in *Stuart* is analogous to Plaintiff's challenge to Amazon's policy here—that is, whether Amazon, consistent with Section 2802, can legally exclude existing home internet expenses from reimbursement where Class Members are working from home and regularly using their home internet to perform their

---

[13] *See Cochran*, 228 Cal. App. 4th at 1145 ("To show liability under section 2802, an employee need only show that he or she was required to use a personal phone to make work-related calls, and he or she was not reimbursed.").

work duties for Amazon. As in *Stuart*, this is a legal issue that is amenable to resolution on a class basis, since all Class Members were subject to Amazon's written reimbursement policy. *See also Swamy v. Title Source, Inc.*, 2018 U.S. Dist. LEXIS 57048, at *7-9 (N.D. Cal. Apr. 2, 2018) (finding "commonality and predominance are met" as to plaintiff's claim for home internet expense reimbursement where company policy required class members to use their home internet for work, and noting that "[w]ether [defendant] provided expense reimbursements or indemnification in connection with . . . internet . . . costs consistent with Section 2802 is a question common to all members of the proposed class."); *Hopkins*, 2012 U.S. Dist. LEXIS 67101 at *28-31 ("common questions predominate in the inquiry as to whether Stryker's business expense reimbursement policy violated [] 2802. The central question to be resolved will be determined based on evidence common to the class—namely Defendants' documents and testimony[ and] it appears that resolution of Stryker's potential liability under [] 2802 may be determined on a class-wide basis, based upon common, though factually disputed, proof.");[14] *Schulz*, 2012 U.S. Dist. LEXIS 58561 at *18-19 ("The Court is not persuaded by Defendants' objections because their arguments related to the amount of damages incurred by an individual technician. . . . The common question of whether Defendants' uniform reimbursement policy . . . complies with *Gattuso* can be answered on a classwide basis.").

A second predominating common issue is whether Amazon knew or should have known that its employees were incurring monthly home internet expenses while working from home during the Class Period pursuant to Amazon's WFH recommendations and guidance. In *Stuart*, Radioshack maintained records of its employees' reimbursements and of inter-company store transfers, which the plaintiff alleged caused him and the class to incur unreimbursed business expenses, and the court recognized that "[d]etermining who in fact was reimbursed and who was not will be a straightforward factual question that informs the remedy, and will likely be resolved by documents." *Stuart*, 2009 U.S. Dist. LEXIS 12337 at *44-45. Similarly, Amazon's documents and testimony—including but not limited to its COVID-19 Blog WFH recommendations and guidance, its guidance regarding and issuance of USB security keys and Midway Pins for Class Members to access its server and networks, its actual reimbursement of certain virtually designated Phonetool employees working from home in California with $50 per month stipends to

---

[14] "[W]here there is a commonly applicable expense reimbursement policy, common duties among putative class members, and expenses common to the class — whether a particular business expense was necessary 'is a common question that is better addressed on a motion for summary judgment or at trial than at class certification.'" *Hopkins*, 2012 U.S. Dist. LEXIS 67101 at *30-31 (citation omitted).

cover home internet expenses, its actual reimbursement of 619 Class Members' home internet expenses pursuant to their requests (averaging $66.49 per month), and its badge swipe records for the Class Members, which identify which employees physically accessed Amazon's offices throughout the Class Period—will demonstrate that it had actual or constructive knowledge that Plaintiff and the Class Members were incurring monthly home internet expenses giving rise to an obligation on the part of Amazon to take any and all reasonable steps to ensure that employees were paid for their home internet expenses. There is a predominating factual issue of whether Amazon knew or should have known that its employees were incurring home internet expenses while working remotely, and this issue is susceptible to adjudication on a class-wide basis through common proof.

Finally, Amazon's potential "exhaustion/waiver" affirmative defense, as the court determined in *Stuart*, raises common questions and gives rise to a predominating class-wide legal issue, because: (a) many Class Members did not submit formal reimbursement requests, especially in light of Amazon's "incremental increase" reimbursement policy; (b) the variation for those who did submit such requests would be contained in straight-forward documentation and would not vitiate predominance; and (c) there are predominating common issues as to whether the defense is legally viable. *Stuart*, 2009 U.S. Dist. LEXIS 12337 at *47-48.[15]

## 2. A Class Action is the Superior Method for Adjudication Here

The second component of Fed. R. Civ. P. 23(b)(3) requires the Court to find, "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In making the superiority determination, courts consider: "(a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against the class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular form; and (d) the likely difficulties in managing a class action." *Id. See also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017).

Here, given the small amounts at issue for each Class Member, which are estimated to be less than

---

[15] Plaintiff anticipates Amazon will assert that it is not liable to the Class for home internet expenses beginning a few months into the Class Period because it purportedly became optional, rather than recommended, for Class Members to work from home. Regardless, for purposes of this Motion, there are predominating common issues as to whether this anticipated defense is legally viable. Moreover, it remained reasonable for corporate employees to work from home until the RTO orders.

$2,500 each (excluding PAGA penalties)[16], it would be impracticable and inefficient for approximately 6,934 current and former employees to file individual cases given the predominance of common legal and factual questions. Certification of this case as a class action will allow Class Members to litigate their claims in the manner most efficient for the parties and the judicial system. Furthermore, a class action will provide Class Members with a method of obtaining redress for their modest individual damages relative to the costs and burdens of litigation. *See Hanlon,* 150 F.3d at 1023 (class treatment was superior to litigation of numerous individual cases because "litigation costs would dwarf potential recovery" and therefore deter individuals from bringing individual suits); *Schulz*, 2012 U.S. Dist. LEXIS 58561 at *28.[17]

Finally, no management difficulties preclude this action from being maintained as a class action; where there is a uniform policy as to what is and is not reimbursed—as there is here through Amazon's written policy only allowing reimbursement for incremental increases in home internet costs—any potential individual questions regarding damages "do not justify denying class certification and courts have rejected this argument with regard to Section 2802 reimbursement claims." *Fleming v. Matco Tools Corp.*, 2021 U.S. Dist. LEXIS 33513, *41-42 (N.D. Cal. Feb. 21, 2021).

As stated by this Court in *Kurihara*, "[a]s to the individualized issue of damages, courts have developed numerous efficient means to resolve such issues, including questionnaires, surveys, representative testimony, and other aggregate analysis. [citation]. The court finds that this type of approach is superior given the alleged existence of a company-wide policy, the size of the class, and the relatively small amount of each individual claim." 2007 U.S. Dist. LEXIS 64224 at *31-32. *See also Nash*, 2020 U.S. Dist. LEXIS 242001 at *8, n.3 ("claims for reimbursement are suitable for class treatment when there is a 'uniform policy as what is reimbursed and what is not.'") (citations omitted); *Richie*, 2014 U.S. Dist. LEXIS 170446 at *69-70 (noting that questions of individualized damage determinations, including the

---

[16] i.e., $50 - $100 per month times the relevant number of months worked by all Class Members in the Class Period from March 15, 2020 to July 1, 2022.

[17] Certification will also effectuate California's strong public policy of protecting employees from deprivation or offsetting of compensation earned in their employment. *See Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004) ("Considerations of sound public policy buttress our conclusion" approving class certification; California "has a public policy which encourages the use of the class action device"; class actions avoid "repetitious litigation" and "provide[] small claimants with a method of obtaining redress which would otherwise be too small to warrant individual litigation."); *Gentry v. Superior Court*, 42 Cal. 4th 443, 461-62 (2007) (class actions effective in securing enforcement of statutory policies that focus on the workplace); *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1103 (2007) ("[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees.").

"'necessity' of the amount of any given expense incurred by a class member[,]" are "present in almost every § 2802 action and have been found to not defeat class certification. Accordingly, insofar as [defendant's] liability can be established through common proof, the Court concludes that common questions predominate over the relatively routine individualized damage determinations that may be necessary."); *Schulz*, 2012 U.S. Dist. LEXIS 58561 at *19-20 (rejecting the defendant's predominance arguments relating to the amount of damages incurred by class members, and finding the "common question of whether Defendants' uniform reimbursement policy . . . complies with *Gattuso* can be answered on a classwide basis."); *Hopkins*, 2012 U.S. Dist. LEXIS 67101 at *34-35 (where plaintiffs showed "certain types of business expenses . . . were common across class members[,]" the court found that "[i]f and when liability is established, calculating damages could likely be administered by using Defendant's records. . . ."); *Swamy*, 2018 U.S. Dist. LEXIS 57048 at *9-10 (finding defendant's objections to plaintiff's home internet reimbursement damages model—which provided for damages equal to the lowest cost home internet plan identified by plaintiff's expert—does not defeat predominance, because the plaintiff "need not prove his damages with exact proof at the class certification stage.") (citing *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017)); *Stuart,* 2009 U.S. Dist. LEXIS 12337 at *54 (should individualized determinations as to damages be needed, "those determinations may be bifurcated from liability and certification amended.").

As discussed in Section III.E, *supra*, here, Plaintiff has several potential methods or data points that could be used to determine Class Members' damages for unreimbursed monthly home internet expenses, including: (a) using the average monthly amount that Amazon actually reimbursed to 619 individuals who sought home internet reimbursement during the Class Period (i.e., $66.49 per month); (b) using the fixed $50 per month stipend amount that Amazon actually paid to virtually designated Phonetool California employees before and during the Class Period; or (c) using the average amount of monthly home internet expenses, $69.51, as reflected in the survey answers from 157 Class Members. *See* Steiner Decl., ¶¶ 1-3, Ex. 1 thereto at pp. 9-11, 14. *See also Cochran*, 228 Cal. App. 4th at 1142-43 ("When sufficient common questions predominate, 'it may be possible to manage individual issues through the use of surveys and statistical sampling.'"); *Kurihara*, 2007 U.S. Dist. LEXIS 64224 at *32.

Alternatively, home internet reimbursement damages could be calculated based on Amazon's cost to provide the same services to employees, such as what it would have cost Amazon to provide the Class

with the ability to work remotely to its satisfaction (i.e., Amazon would bear all home internet expenses up to a given floor, which is the least expensive home internet plan sufficient to satisfy Amazon's work demands for Class Members.). *See Aguilar,* 2014 U.S. Dist. LEXIS 120315 at *56 (N.D. Cal. Aug. 27, 2014) ("Given that Zep required the plaintiffs to use . . . internet, and the expenses were a foreseeable and clearly anticipated cost of doing business, Zep must reimburse these expenses. The precise amounts allocable to personal and business use may be determined at a later stage in this case."). Finally, if the Court deems it appropriate, Plaintiff could proffer a stream-lined damages model using the lowest cost home internet plan in California during the Class Period, similar to that which was considered sufficient by this Court to satisfy the predominance requirement when granting class certification in *Swamy*. 2018 U.S. Dist. LEXIS 57048 at *9-10. Under any of the above approaches, adjudication of the issues presented can fairly and efficiently be accomplished through class adjudication, and it is clear that a trial plan "is not necessary at this stage to establish the manageability" of this class action since there are no "choice of law" questions to be resolved. *See Aberin v. Am. Honda Motor Co.*, 2021 U.S. Dist. LEXIS 71680, at *51-52 (N.D. Cal. Mar. 23, 2021) (The Ninth Circuit and district courts within the Ninth Circuit "have consistently rejected the need for trial plans in class actions, except where . . . significant choice of law questions must be resolved as to individual class members.") (citation omitted).

Nevertheless, Plaintiff here proposes a manageable two-phased class adjudication and/or trial plan—bifurcating liability and damages—with the factual and legal common liability issues to be adjudicated in Phase 1, through cross-motions for summary adjudication. Liability on Plaintiff's PAGA claim, and the viability of Defendant's waiver / exhaustion defense, would also be adjudicated at Phase 1. If Plaintiff prevails, the Class's damages and PAGA penalties would be adjudicated in Phase 2, either through Court rulings based on competing written submissions on damages and/or through a bench trial, depending on the Court's decision as to the appropriate method of proof, among the options listed above.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion to Certify the Class should be granted.

DATED: November 9, 2022                **ACKERMANN & TILAJEF, P.C.**

                                         */s/Craig J. Ackermann*
                                        Craig J. Ackermann, Esq.
                                        Joshua Klugman, Esq.
                                        Counsel for Plaintiff and the putative Class