**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann, Esq. (SBN 229832)
cja@ackermanntilajef.com
Avi Kreitenberg, Esq. (SBN 266571)
ak@ackermanntilajef.com
Brian Denlinger, Esq. (admitted *pro hac vice*)
bd@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:     (310) 277-0614
Facsimile:      (310) 277-0635

**JOSHUA KLUGMAN, ESQ.**
Joshua Klugman, Esq. (SBN 236905)
esquirejosh@yahoo.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:     (424) 248-5148

*Attorneys for Plaintiff David Williams and the Putative Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID WILLIAMS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>AMAZON. COM SERVICES, LLC et al.,<br><br>                    Defendants. | CASE NO.: 3:22-CV-01892-VC<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: February 9, 2023<br>Hearing Time: 1:00 p.m.<br>Hearing Place: Courtroom 4<br>Judge: Hon. Vince Chhabria |

# Table of Contents

A. Introduction .................................................................................................................. 1

B. Amazon's Opposition Fails To Undermine Plaintiff's Rationale For Class Certification As To Plaintiff's Challenge To Amazon's COVID-19 Reimbursement Policy As Violating § 2802 .............. 2

C. There Are Also Predominating Factual And Legal Issues Supporting Class Certification As To Plaintiff's Alternative Certification Theory ....................................................................... 5

   1.   Amazon's Recommendations To WFH, Along With Class-Wide Evidence Of Its Corporate Advised WFH Period, Raise Predominating Common Class-Wide Factual and Legal Issues ................. 5

   2.   Amazon's Legal Authorities Against Certification Are Unpersuasive ......................................... 10

   3.   Plaintiff Satisfies The Typicality And Adequacy Elements of Rule 23(a) .................................... 12

D. Amazon's Expert Declaration and Report From Dr. Ward Supports, Rather Than Undermines, Plaintiff's Motion for Class Certification ........................................................... 12

E. Amazon's Rebuttal Survey Expert Report From Dr. Backor Does Not Undermine Plaintiff's Arguments In Support Of Certification ................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Zep, Inc.,* 2014 U.S. Dist. LEXIS 120315 (N.D. Cal. Aug. 27, 2014)……..……..……..*passim*

*Arroyo v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 32069 (N.D. Cal. Feb. 24, 2020)…..……..……..5

*Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014)…………………..*passim*

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)……………..……………………..…....………3

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)……………………………...…..……...12

*Fleming v. Matco Tools Corp.*, 2021 U.S. Dist. LEXIS 33513 (N.D. Cal. Feb. 21, 2021)……..………......9

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025 (9th Cir. 2010).....15

*Garcia v. Lift*, 2021 U.S. Dist. LEXIS 68195 (E.D. Cal. Apr. 6, 2021)…………………………….…..14

*Gonzalez v. OfficeMax N. Am.,* 2012 WL 5473764 (C.D. Cal. Nov, 5, 2012)……..………..……...4

*Guifi Li v. A Perfect Day Franchise, Inc.*, 2012 U.S. Dist. LEXIS 83677 (N.D. Cal. June 15, 2012)…...15

*Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007)……..…..……..10

*Morgan v. Wet Seal, Inc.*, 210 Cal. App. 4th 1341 (2012)……………………………..………...5

*Nash v. Horizon Freight Systems*, 2020 U.S. Dist. LEXIS 242001 (N.D. Cal. Dec. 23, 2020)………....5

*Novak v. Boeing Co.*, 2011 WL 9160940 (C.D. Cal. July 20, 2011)……………...………...10, 11, 12

*Richie v. Blue Shield of Cal.*, 2014 U.S. Dist. LEXIS 170446 (N.D. Cal. Dec. 9, 2014)………...10, 11, 12

*Stuart v. Radioshack Corp.*, 2009 U.S. Dist. LEXIS 12337 (N.D. Cal. Feb. 5, 2009)……….……..*passim*

*Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009)……………………..……….....1

*Williams v. J.B. Hunt Transp., Inc.*, 2022 U.S. Dist. LEXIS 46719 (C.D. Cal. Mar. 9, 2022)………....11

*Wilson v. Kiewit Pac.,* 2010 U.S. Dist. LEXIS 133304 (N.D. Cal. Dec. 6, 2010)…………..……….9

**Statutes and Court Rules**

Cal. Labor Code § 2802…....………………..………...……………..……………………...*passim*

Fed. R. Civ. P. 23………..………………………………………………………..……………1, 11, 13

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 3:22-CV-1892-VC

**A. Introduction**

Pursuant to Rule 23, Plaintiff's Motion ("Mtn.")[1] seeks certification of a Class of 6,934 Amazon employees who were based at one of Amazon's nine California office locations, who worked remotely for at least one pay period from March 15, 2020 to July 1, 2022 (the "Class Period"), and who were assigned a registered USB security key and a Midway Pin to facilitate their connecting remotely from home to Amazon's network and servers for work (the "Class"). Mtn. at 1, 14. Specifically, Plaintiff seeks certification to challenge: (1) Amazon's FAQ Expense Reimbursement policy (**Ex. K**) (the "COVID-19 Reimbursement Policy" or "Reimbursement Policy") that only authorized the Class to seek reimbursement for "incremental internet" costs, i.e., additional home internet expenses, but not a reasonable portion of existing, continuing monthly home internet expenses, in violation of Labor Code Section 2802, as interpreted by *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014) and *Aguilar v. Zep, Inc.*, 2014 U.S. Dist. LEXIS 120315 (N.D. Cal. Aug. 27, 2014). *Id.* at 1, 14-15 ("Plaintiff's initial certification theory"); and (2) Amazon's failure to reimburse the Class for a reasonable portion of monthly home internet expenses, despite class-wide evidence of Amazon's actual or constructive knowledge the Class was incurring such expenses in violation of Section 2802, as interpreted by *Stuart v. RadioShack, Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009). *Id.* at 1, 16 ("Plaintiff's alternative certification theory").[2]

Amazon waits until page 15 of its Opp. to make its merits-based arguments against Plaintiff's initial certification theory, alleging that Amazon's Policy means something other than what it says, applies to "incremental" groups of employees, not expenses, and does not preclude reimbursement for existing home internet services. Amazon merely demonstrates that there are now *both* predominating *factual* and *legal* disputes pertaining to the *meaning* of, and *legality* of, its COVID-19 Reimbursement Policy that are ripe for class adjudication, but does not raise individualized issues that defeat predominance or certification.

Most of Amazon's Opp. argues that individualized issues will arise in connection with Plaintiff's alternative certification theory as to: (a) whether home internet expenses were "necessary" and "reasonable," since Amazon's offices were open (Opp. at 10-12); (b) whether employees incurred home internet expenses during the work from home period (*Id.* at 12-13); and (c) whether employees worked

---

[1] Citations to "**Ex. _**" herein are references to Exhibits attached to the Ackermann Decl. (Dkt. No. 40-6), and citations to "Opp.: Ex. _" are references to Exhibits attached to the Blas Decl. (Dkt. No. 41-1).
[2] Amazon has clarified that it has waived and abandoned its "exhaustion" affirmative defense. Opp. at n.11.

predominantly in California. *Id.* at 13-15. However, these issues do not vitiate the predominance of common issues since there is class-wide proof that home internet expenses were reasonably incurred through Amazon policies advising Class Members about how to access Amazon's network while working from home, through Amazon's written policies discussing its "corporate advised WFH" period, and through reasonable inferences that can be drawn on a class-wide basis from Amazon's recommendations to the Class to work from home and the nature of the Class's job duties. In any event, these issues only arise on the margins; according to Dr. Ward, Amazon's economics expert, less than 10% of all Class Member workdays during the Class Period were worked in Amazon's physical offices (Ward Depo. at 61:17-62:4), and finally, they can all be managed at the damages phase through the exclusion of those months where individuals worked regularly in Amazon's offices (using badge swipe data), the exclusion of those few months when Class Members worked outside of California (through survey data), and the exclusion of those months where employees were reimbursed for home internet (through Amazon's reimbursement data). Amazon exaggerates the extent to which these issues are "unmanageable," and its arguments about Plaintiff's lack of typicality are perfunctory and meritless. Thus, class certification here is warranted.

**B. Amazon's Opposition Fails To Undermine Plaintiff's Rationale For Class Certification As To Plaintiff's Challenge To Amazon's COVID-19 Reimbursement Policy As Violating § 2802**

In response to Plaintiff's initial certification theory, Amazon raises three main counter-arguments: (1) Amazon's *initial* Policy, issued in March 2020 (**Ex. L**), allowed reimbursement for employees' home internet expenses, but lacked the "incremental internet . . . costs" language, which was only added in May 2020 (Opp. at 15-16);[3] (2) the term "incremental" does not limit the types of home internet expenses for which Amazon employees could seek reimbursement, but instead was intended to convey that COVID-19-related internet expenses were now reimbursable in addition to other previously-authorized home internet expenses, such as those for remote workers (*Id.* at 16); and (3) Amazon, in practice, did not scrutinize whether or not an expense was "incremental" in connection with the 619 Class Members (out of 6,934) who sought and received home internet expense reimbursements during the Class Period. *Id.* at 17.

None of these arguments support denial of class certification. To begin, the fact that Amazon's Policy was modified to include the "incremental internet . . . costs" language in May 2020 suggests, at most, that

---

[3] Dr. Ward's analysis of Amazon's reimbursement data showed that **_all_** reimbursement requests by Class Members for home internet costs during the Class Period were submitted solely under the "WFH-monthly *incremental* internet" category created by Amazon's May 2020 COVID-19 Reimbursement Policy. *See* CJA Reply Decl., Ex. A ("Ward Depo.") at 16:19-17:4, 39:11-40:2, 41:12-17 (emphasis added).

Plaintiff's initial certification theory challenge to Amazon's Policy should be certified for the period from May 2020 to July 2022, when it was indisputably in effect. See Mtn. at 9, and evidence cited there.

Amazon's next argument—that the language in its Policy, specifying that "incremental internet … costs as a result of working from home" are reimbursable, was included to clarify that its Policy allowed for *additional employees* beyond those who worked remotely prior to the pandemic to seek home internet expense reimbursements, but that the language did not exclude existing and continuing home internet expenses from being reimbursable via the new word, "incremental"—is a (weak) merits-based argument about the meaning of the Policy, that does not undercut Plaintiff's arguments for certification.

Since Plaintiff has advanced an alternative interpretation, that "incremental internet … costs" means that only new or "extra" internet costs, such as the cost of installing new internet services or high-speed upgrades, are reimbursable,[4] the Court can adjudicate on a class-basis which of the two interpretations is more reasonable. Indeed, the meaning of Amazon's Policy, that was applicable to the entire Class from May 2020 to July 2022, is itself a common factual issue in dispute that can be adjudicated on a class basis based on: (a) the document itself, (b) Amazon's 30(b)(6) deponent's testimony about the same, including her admission that "incremental" and "extra" are synonymous in the Policy (Mtn. at 8), and (c) common sense.[5] Even Amazon seems to recognize that "incremental" must modify the word "costs" when it states that this "incremental" group of fully remote employees could now seek "reimbursement of 'incremental' internet expenses incurred due to the pandemic (*e.g.*, to increase internet bandwidth). . . ." Opp. at 16. Amazon's interpretation—that "incremental" has a double meaning, simultaneously modifying both a new group of employees and extra internet expenses—is bizarre, but does not pose an impediment to certification. Courts routinely certify challenges to written reimbursement policies that are applicable to all employees and are alleged to be illegal. Mtn. at 17-18. That is precisely the situation here.

Although not relevant to certification, which is a procedural, not a merits-based analysis,[6] Amazon's strained interpretation of its Policy makes little sense. The language challenged by Plaintiff is obviously speaking about extra costs that employees may incur with their need to install, or upgrade, home internet

---

[4] See **Ex. N** at 4, where one Amazon business unit understood its reimbursement Policy in exactly this way.
[5] Amazon's expert, Dr. Ward, testified that, as a matter of labor economics and common sense, "incremental" means "extra" or "something over and above" a base. Ward Depo. at 22:2-25, 34:10-36:25.
[6] For class certification purposes, a Court must consider whether Plaintiff's legal theory provides common questions capable of class-wide resolution. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) ("[T]he question is not whether the … plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met").

services, and is clearly *not* speaking about some incremental *additional group of workers* who can now seek reimbursement. As the Policy makes clear, "Q. I incurred incremental internet . . . costs as a result of working from home, will Amazon reimburse for these costs? A. Employees are allowed to temporarily claim reimbursements *for these cost*s . . . during the corporate advised WFH period." **Ex. K** at 1 (emphasis added). There is no ambiguity that would support, or allow for, Amazon's weird interpretation.[7]

Furthermore, remote workers are discussed in a separate FAQ in the same Policy, which contradicts Amazon's strained interpretation, as follows: "Q. I am a virtual employee who will remain virtual after the COVID-advised WFH ends. Can I expense my WFH set up?  A. Amazon does not reimburse for … monthly internet expenses for virtual or phonetool designated employees …" *Id.* In short, Amazon's far-fetched interpretation of its facially illegal Policy will ultimately prove to be unavailing.

Amazon's third argument, that it did not use its own written Policy to "scrutinize" and reject reimbursement requests when 619 Class Members submitted for some, or all, of their home internet costs (Opp. at 17), also does not constitute a reason to deny certification. Whether, and the extent to which, Amazon already reimbursed some months of home internet expenses despite its Policy is relevant only as a potential offset to damages and the amount of PAGA penalties; the Court can still adjudicate on a class basis whether Amazon's written Policy, applicable to all employees (see **Ex. J**, McCray Depo., at 18:18-19:18, 20:20-21:3, 38:23-39:4), violated Labor Code Section 2802 as interpreted by *Cochran* and *Aguilar*.

The fact that less than 9% of the Class (619 of 6,934) submitted some form of home internet reimbursement for certain months under the category of "WFH-Monthly Incremental Internet," and that all such requests were paid out by Amazon, simply means that those months will have to be carved out of any damages model, but does not vitiate predominance, since straight-forward reimbursement data exists. *See Stuart v. Radioshack*, 2009 U.S. Dist. LEXIS 12337, at *47-48 (N.D. Cal. Feb. 5, 2009). Plaintiff's Mtn. already contemplates the likelihood of those months being carved out from damages. Mtn. at n.9.

Finally, the cases cited by Amazon (Opp. at 17-18) as supporting denial of certification are unavailing. *Gonzalez v. OfficeMax N. Am.,* 2012 WL 5473764, *3-4 (C.D. Cal. Nov, 5, 2012), incorrectly cited by Amazon for the proposition that certification was denied because plaintiffs had not met their burden of showing  "a uniform policy of non-reimbursement", was actually a missed meal and rest break

---

[7] Indeed, a number of the survey respondent Class Members who were deposed by Amazon testified they did not submit for home internet reimbursements because only extra internet costs were reimbursable. See Opp.: Ex. Y at 31:1-9; Ex. Q at 51:24-52:20, 53:22-54:4; Ex. X at 56:6-25; and Ex. U at 58:12-59:20.

case, having nothing to do with reimbursement policies, where facially *valid* break policies were in place, and the employer had records showing compliant breaks were taken on the overwhelming majority of days at issue. *Id.* at n.6. In contrast, the instant case involves a facially *invalid* Reimbursement Policy, with evidence that only 8.9% of the Class received reimbursements, while over 90% of the Class's workdays were worked remotely. Likewise, *Morgan v. Wet Seal, Inc.*, 210 Cal. App. 4th 1341, 1358 (2012), while involving reimbursement claims, is distinguishable, because the clothing reimbursement claim there was that certain retail managers advised some salespeople that they needed to wear Wet Seal clothes, while the Policy said that such clothes were optional. Those facts are far afield from this case, which is not based on isolated managerial statements that run contrary to Amazon's written policies. None of the other cases Amazon cited deal with a challenge to the legality of a uniform policy available in the company's (wiki) database throughout the Class Period. *Cf. Nash v. Horizon Freight Sys.*, 2020 U.S. Dist. LEXIS 242001, *9, n.3 (N.D. Cal. Dec. 23, 2020), where this Court held that such challenges to Policies are certifiable.

### C. There Are Also Predominating Factual And Legal Issues Supporting Class Certification As To Plaintiff's Alternative Certification Theory

Amazon opposes Plaintiff's alternative certification theory on the following grounds: (1) that Plaintiff has no class-wide method of proof to show that monthly home internet expenses of the Class were "necessary" or "reasonable", as opposed to a mere "optional convenience" (Opp. at 1-3, 10-12); (2) there are too many individualized issues for the Class to be certified, since some employees worked in Amazon's physical offices (Opp. at 1-3 and 12-13); some employees worked, at times, in cafes or coffee shops (*Id.*); some employees worked, at times, out of state (Opp. at 1-3 and 12-14); and 619 Class Members received reimbursement for monthly home internet expenses (Opp. at 6); and (3) Plaintiff's experiences were not "typical" of other Class Members. Opp. at 1-3, 24-25. As shown below, Amazon's factual and legal defenses are all either red herrings, immaterial to certification, and/or raise issues that are easily managed.

#### 1. Amazon's Recommendations To WFH, Along With Class-Wide Evidence Of Its Corporate Advised WFH Period, Raise Predominating Common Class-Wide Factual and Legal Issues

Amazon's initial denial of a "mandate" to its employees to WFH and use their internet during the Class Period (Opp. at 1-2) is a red herring; Plaintiff has never contended that Amazon "mandated" its employees WFH, nor is such an allegation necessary for Plaintiff to prevail on his § 2802 claim. *Arroyo v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 32069, at *49-50 (N.D. Cal. Feb. 24, 2020) ("[T]he 'argument that there is a bright-line rule that only expenses that are officially required can be considered "necessary" does not square with the case law.'"). Rather, Plaintiff has presented common evidence that Amazon "recommended", "advised", and "guided" its office employees to WFH during the Class Period, including:

Amazon's COVID-19 Blog Entries with its recommendations that were never retracted; its repeated use of the phrase "corporate advised WFH period" in its Reimbursement Policies; one of its Rule 30(b)(6) designee's admissions that Amazon employees were "guided" to WFH unless their specific job duties required their presence in the office; and Amazon's written instructions to employees about how to access its networks *while working from home*. Mtn. at 3-6, 16. This evidence also raises predominating common factual and legal issues as to whether Amazon had constructive knowledge of the Class Members' use of home internet to perform their job duties while working from home, and whether Amazon was thus obligated to provide monthly stipends to the Class to reimburse them for a reasonable portion of their monthly home internet expenses pursuant to Section 2802, as understood by *Cochran*, *Stuart*, and *Aguilar*.

The record here is replete with common evidence that Amazon "recommended", "advised", and "guided" its employees to WFH during and throughout the Class Period. As Amazon itself admits, "in March 2020, Amazon *recommended* that employees who could work remotely do so[.]" Opp. at 3 (emphasis added). Amazon's explicit "recommendation" to WFH continued on its COVID-19 Blog through the end of April 2020 (**Ex. E** at 125), but was never revoked in any future Blog entry, an important fact that Amazon ignores while pinning its hopes on a minor, and seemingly non-substantive "change" in terminology on its COVID-19 Blog entries after May 2020, that it continued to "welcome" its employees to WFH thereafter if their jobs allowed it (Opp. at 4).[8] From Plaintiff's perspective, Amazon's recommendation to employees to WFH implicitly continued throughout the Class Period, as evidenced by Amazon's regular updates to its employees about Amazon's possible "return to office" ("RTO") dates, plans that were not seriously considered for adoption by Amazon according to its COVID-19 Blog entries in late-2021 until, at the earliest, early-2022. See **Ex. E** at 7 (June 10, 2021 Blog entry); **Exs. F-H**.

Amazon continued throughout the Class Period to offer "guidance" to the Class that they could and should continue to WFH during the "corporate advised WFH period" unless their roles required them to work in Amazon's offices. **Ex. D** (Hughes Depo.) at 31:24-32:3, 38:10-22 ("It wasn't a policy [to WFH during the pandemic]. ***It was a guideline only because there are several roles, even in the corporate or office setting, where work can't be done from home***.") (emphasis added), 39:15-40:2 (discussing the

---

[8] Amazon's Opp. tries to bootstrap the Blog entries stating employees were "welcome" to continue to WFH, which followed its initial "recommendations" to employees to WFH, into an argument that its office employees, after May 2020, *voluntarily chose* to WFH thereafter. However, the minor change in language on Amazon's Blog from "recommended" to WFH to "continue to welcome" employees to WFH was ***not*** a change in Amazon's "recommendation" to WFH, but a continuation of Amazon's WFH policy.

particular jobs i.e., lab engineering, hardware jobs, and government work, that needed to be performed in the offices); see also **Exs. E-G**. Since Amazon's Rule 30(b)(6) deponent admitted that all of the information on Amazon's COVID-19 Blog about its employees WFH and their eventual RTO is and was accurate and correct (**Ex. D** at 42:13-43:13), Amazon's Blog contains common class-wide evidence about Amazon's recommendations and guidance to the Class to WFH and when the official RTO would occur.

Although Amazon characterizes Plaintiff's repeated use of the phrase, "corporate advised WFH period," as "misguided," relying on the odd testimony of one of its Rule 30(b)(6) deponents that there was no such "blanket [corporate advised WFH] policy" at Amazon (Opp. at 4), Amazon entirely ignores that it was not Plaintiff's counsel who coined this phrase. Rather, it was Amazon who, repeatedly and throughout the Class Period, in a number of Policy documents posted on its wiki page, used this phrase when communicating with Class Members, which Plaintiff's counsel is merely parroting back to Amazon now for purposes of showing that common evidence exists supporting Plaintiff's Mtn. Specifically, **Ex K** at 1 (Amazon's May 2020 COVID-19 Reimbursement Policy, available on Amazon's wiki page through August 2022—see **Ex. J**, McCray Depo. at 23:17-24:1) and **Ex. M** at 1-2 (Amazon's April 2021 COVID-19 Reimbursement Policy, available through August 2022—see **Ex. J** at 55:14-57:2) both explicitly state "[t]hese temporary internet … claims *are only applicable during the corporate advised WFH period*" and add, "*This wiki page is applicable to all Global employees* except for India." (emphasis added).[9] *See also* **Ex N** (Amazon's eCF WFH Equipment FAQ) at 1-3 (stating "[t]his wiki will … provide recommendations and resources *as we continue to work from home*" and "[t]hese temporary internet . . . claims *are only applicable during the corporate advised WFH period.*" (emphasis added).

These Amazon documents provide common and persuasive class-wide proof that: (a) Amazon's "corporate advised WFH period" existed; (b) Amazon knew that such time period existed; and (c) Amazon's employees worked from home in a "corporate advised WFH period" throughout the Class Period, since these Policies appeared on Amazon's wiki page and were in effect throughout the Class Period. The above evidence suffices to show that a class-wide factual issue exists as to whether Amazon "recommended", "advised", and/or "guided" its employees to WFH during the Class Period, but further underscoring the internal inconsistency of Amazon's substantive position is the fact that Amazon's other Rule 30(b)(6) designee repeatedly used the phrase "corporate advised WFH period," while testifying, for

---

[9] The March 2020 version of the FAQs, which is the document lacking the "incremental" language, also contains the same "only applicable during the corporate advised WFH period" phrase. See **Ex. L** at 1.

example, that as of her August 5, 2022 deposition date, Amazon's corporate advised WFH period was over. See Mtn. at 8, n.4 (citing her deposition testimony that, "California is no longer under a corporate work-from-home-advised period"). In short, there is sufficient evidence for a fact finder to conclude, on a class basis, that Amazon recommended, advised and guided the Class to WFH throughout the Class Period.

While Amazon asserts Plaintiff offers no evidence to show it had knowledge the Class was incurring monthly home internet expenses (Opp. at 2-3, 18-19), Plaintiff has presented ample class-wide evidence that Amazon had constructive knowledge that its employees working from home incurred work-related internet expenses throughout the Class Period through: Amazon's COVID-19 Blog entries (providing WFH recommendations to the Class); Amazon's use of the phrase "corporate advised WFH period" in its online Policies and FAQs posted throughout the Class Period; one of its Rule 30(b)(6) deponent's admissions regarding guidance to WFH; its written instructions advising the Class that they would need a USB security key and Midway Pin "to connect to the Amazon network *from home*. . . ." (**Ex. I** at 2) (emphasis added);[10] its actual reimbursement of 619 Class Members' home internet expenses; and its badge swipe records showing that Class Members accessed its offices on less than 10% of all employee workdays in the Class Period, including less than 4.4% of such days in 2020 and less than 7.2% of such days in 2021. Ward Depo. at 49:2-50:21, 51:17-52:15, 61:17-62:4.

Whether Amazon had knowledge Class Members were using home internet to perform their jobs, based on the above class-wide proof, is an issue of fact that is common to the Class and can generate common answers to drive the resolution of this action. *See Stuart*, 2009 U.S. Dist. LEXIS 12337 at *53 ("Most of the relevant facts (the terms of the reimbursement policy, its general interpretation by management, whether it was publicized companywide, etc.) are common" and "the common questions are likely to predominate.").[11] Further, whether Amazon's practice of *not* automatically reimbursing Class

---

[10] Amazon thinks the fact that Class Members needed a USB key and Midway PIN *both* in its offices *and* at home to access its network somehow assists it. Opp. at 18-19. But Amazon misses the point: its assignment of those tools to *all* Class Members shows it *knew* that they needed to access its network as part of their job duties, which could only be done, when working remotely, via the internet. When combined with the badge swipe data showing swipes on less than 4.4%, 7.2% and 11.2% of the Class's workdays in 2020, 2021, and 2022, respectively (see p. 14), it is clear, as in *Stuart* with the database there, that Amazon had constructive knowledge that the Class Members were using their USB keys and Midway Pins while working remotely to access Amazon's network via their home internet over 90% of the time.

[11] The survey respondent Class Members who were deposed by Amazon testified they needed to use home internet to perform their Amazon job duties. Opp.: Ex. X at 34:8-36:3, 38:5-9; Ex. Y at 33:2-15; Ex. W at 20:20-23; Ex. S at 19:3-12, 20:2-15; Ex. Q at 43:23-44:7; Ex. U at 43:18-44:7, 71:10-14; Ex. T at 32:4-6.

Members' monthly home internet costs based on such knowledge is an issue of law that is common to the Class. Finally, Amazon's attempt to distinguish *Stuart* by citing to *Wilson v. Kiewit Pac.* is unpersuasive. In *Wilson*, the court recognized that Radioshack's database of inter-store transfers in *Stuart* provided common proof that Radioshack had constructive notice of its employees' mileage expenses, whereas there was no evidence Kiewit knew when business mileage expenses were incurred. 2010 U.S. Dist. LEXIS 133304, at *13 (N.D. Cal. Dec. 6, 2010). The *Wilson* court further found the plaintiff did not seek "to certify a class to challenge a common policy," whereas *Stuart* "dealt with an explicit written policy that applied classwide[.]" *Id.* at *14. Accordingly, the instant case is analogous to *Stuart*, not *Wilson*, because Plaintiff (a) has challenged Amazon's written Policy specifying that only "incremental internet … costs" are reimbursable; and (b) has provided class-wide proof that Amazon had knowledge the Class was incurring monthly work-related home internet expenses. Where, as here, there is a uniform policy as to what is not reimbursed, any potential individual questions regarding damages "do not justify denying class certification and courts have rejected this argument with regard to Section 2802 reimbursement claims." *Fleming v. Matco Tools Corp.*, 2021 U.S. Dist. LEXIS 33513, at *41-42 (N.D. Cal. Feb. 21, 2021).

Amazon is also wrong that individualized issues regarding which Class Members worked in California during the Class Period precludes certification (Opp. at 13-14), since its § 2802 *liability* can be established through common proof.[12] Individual damage determinations and issues related thereto—such as

---

[12] Amazon's 21 submitted declarations (Dkt. No. 41-30) do not provide a basis for the Court to reject certification because: (1) they represent only .003% of the Class, which is statistically insignificant; (2) 5 of the declarations are from individuals who always worked in Amazon's offices, because they worked in lab engineering, hardware, R&D, or other jobs that required them to be onsite a lot of the time, and thus they are not Class Members since the Class definition requires that employees exclusively worked from home for at least one pay period during the Class Period (*see, e.g.*, Bach Decl., ¶¶1-3; Ezzat Decl., ¶¶1-4; Jalava Decl., ¶¶1-3; Pham Decl., ¶¶1-4; Shahidi Decl., ¶¶1-5); and (3) 11 of the declarations are clearly supportive of or consistent with Plaintiff's allegations and claims. *See, e.g.*, McCabe Decl., ¶¶1-7 (did not go into the office after March 2020 "due to the COVID-19 pandemic", and did not submit for reimbursement because he already had home internet); Pedersen Decl., ¶¶1-7 (worked from home since March 2020, never went back to the office because she took COVID very seriously, and did not submit for reimbursement because she already had home internet); Ngo Decl., ¶¶1-5 (worked at home since January 2022, did not submit for internet reimbursements); Fujinami Decl., ¶¶1-9 (only went into the office once since March 2022, was not aware of his ability to seek home internet reimbursement). *See also* Kadar Decl., ¶¶1-9 (always worked from home, but sought and received $50 per month for home internet, so he is one of 619 Class Members who may not have damages); Li Decl., ¶¶1-6 (same); Melcher Decl., ¶¶1-9 (worked at home from March 2020 until RTO in 2022, but was reimbursed $100 per month for home internet); Morganti Decl., ¶¶1-7 (worked at home but sought and received full home internet reimbursements); Taylor Decl., ¶¶1-5 (same); Yiang Decl., ¶¶1-7 (same); Zwingman Decl., ¶¶1-7 (same). Patricia Heintzman worked remotely since March 2020, upgraded her home internet at a cost of $26 extra

here, the exclusion of months when Class Members did not work in California—are "present in almost every § 2802 action and have been found to not defeat class certification." *Richie v. Blue Shield*, 2014 U.S. Dist. LEXIS 170446, at *69 (N.D. Cal. Dec. 9, 2014). If any individual did not work in California for any entire pay-period during the Class Period, he or she is not a Class Member. Notably, none of Amazon's 21 declarants stated they worked outside of California, or even outside of their California homes, during the pandemic. Similarly, all nine of the survey respondent Class Members that Amazon deposed testified they worked from home in California for lengthy periods of time during the Class Period,[13] and their testimony shows that Amazon's concerns regarding Class Members working outside of California on a regular basis is overblown; all that Amazon established was occasional, short vacations outside of California. See Opp.: Ex. W at 11:11-13; Ex. U at 18:3-9, 18:21-19:11; Ex. R at 13:9-25, 14:9-17; Ex. Y at 13:23-14:1; Ex. S at 10:8-18; Ex T at 9:21-10:15, 26:5-22; Ex. V at 32:22-33:11; and Ex. X at 14:22, 15:18-20, 25:12-17. As to any Class Member who worked outside of California, such months could be carved out during the damages phase through the use of a final survey which increases the precision of Plaintiff's survey expert's preliminary survey, and with additional survey questions that could easily be added regarding whether Class Members worked for certain pay periods or months in coffee shops or places other than their residences, or whether they split their home internet bill with others—all of which are manageable. Mtn. at 11-12. *See also Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224, at *31-32 (N.D. Cal. Aug. 29, 2007), ("As to the individualized issue of damages, courts have developed numerous efficient means to resolve such issues, including questionnaires, surveys, representative testimony, and other aggregate analysis"); *Cochran*, 228 Cal. App. 4th at 1142-43 ("When sufficient common questions predominate, 'it may be possible to manage individual issues through the use of surveys and statistical sampling.'").

2. **Amazon's Legal Authorities Against Certification Are Unpersuasive**

   Although each side cites many decisions under § 2802, there are only a few cases that are germane to the home internet reimbursement issues in dispute here: *Aguilar*, *Richie* and *Novak*. Plaintiff relies on *Aguilar*, where a company *expected* sales employees who worked from home to call customers and place internet sales orders. The court there found that the employer was required to reimburse its employees for

---

per month, was advised in late-2021 of Amazon's Policy, and submitted for the cost of her upgrade and received monthly reimbursements only for that amount since. Heintzman Decl., ¶¶1-9.

[13] See Opp.: Ex. Y at 12:6-25, 16:7-15, 19:6-19, 22:21-24; Ex. U at 11:11-12:12, 13:15-14:13, 16:14-20, 22:1-5, 36:18-24, 38:16-39:2; Ex. Q at 18:7-19:6; Ex. S at 9:14-24, 13:6-13, 14:14-22; Ex. X at 13:17-24, 14:18-15:7, 21:11-22:3; Ex. T at 9:5-13, 30:11-21; Ex. R at 11:4-11; Ex. V at 22:25-23:7; and Ex. W at 10:20-11:7, 14:22-15:8.

personal cell phone and internet expenses because they "were a foreseeable and clearly anticipated cost of doing business[.]" *Aguilar,* 2014 U.S. Dist. LEXIS 120315 at *56. The same is true of the Class's use of home internet for work during the pandemic; Amazon expected employees to use their home internet while working from home, hence its written Policy allowing employees to seek reimbursement of "incremental" expenses "during the corporate advised WFH period." Amazon makes no effort to distinguish *Aguilar*, but merely cites to it in a footnote (Opp. at n.7) while ignoring that its own employees were also using their home internet "in direct consequence of the discharge of their duties."

Amazon cites to *Novak v. Boeing Co.*, for the proposition that if employees voluntarily choose to work from home, those expenses are not "necessary." Opp. at 10, 12. In *Novak*, after Boeing offered employees the option of voluntarily participating in a virtual worker program, one employee who opted into that program sued Boeing alleging his home office expenses were not reimbursed. On Boeing's motion for summary judgment, the court held the expenses associated with working out of a home office were not "necessary" because participation in the virtual program was entirely optional, it required employees to apply for inclusion and receive Boeing's approval, and the employer "ma[de] physical workspaces with computers … available at its offices to employees so that they [did] not have to work remotely." 2011 WL 9160940, at *3 (C.D. Cal. July 20, 2011). *Novak* is distinguishable, not only because it was a decision on the merits, and not on class certification, but also because of the totally voluntary nature of the employees' decisions to work from home. In contrast, Amazon made recommendations and offered guidance and advice to employees to WFH due to the pandemic, and its written policies and Rule 30(b)(6) deponent repeatedly reference Amazon's "corporate advised WFH period," which explains why more than 90% of its office workforce remained working from home for more than 90% of all workdays during the Class Period. *Cf. Williams v. J.B. Hunt Transp., Inc.*, 2022 U.S. Dist. LEXIS 46719, at *n.6 (C.D. Cal. Mar. 9, 2022) (distinguishing *Novak*—in a cell-phone expense reimbursement case for truckers where the employer provided an onboard computer and asserted personal cell phones were not "necessary" under § 2802 since it provided other equipment with which employees could perform their jobs—because unlike in *Novak*, the *J.B. Hunt* plaintiffs, like the Class Members here, were "told ***or encouraged*** to use their cell phones for work-related purposes. . . .") (emphasis added).

Plaintiff also relies on *Richie*, a case in which the Hon. Judge Chen certified a Rule 23 class of telecommuting claims processors with § 2802 claims for phone reimbursements, where although the telecommuting itself was optional, Blue Shield required them to have phones in order for them to be able to

make customer calls from home. Certifying the § 2802 class claim, Judge Chen wrote, "[w]hether Blue Shield's reimbursement policy complies with the 'reasonable percentage' requirement articulated in *Cochran* and whether, *e.g.*, this requirement applies to an employee who voluntarily chooses to telecommute are questions common to the class." 2014 U.S. Dist. LEXIS 170446 at *55. Citing *Novak*, Judge Chen also found that "the overarching question of whether claims processors who voluntarily chose to telecommute are even eligible for reimbursement of telecommuting-related expenses under § 2802 is a question of law applicable to the entire class equally. *Id.* at *66-67. "Accordingly, there are both questions of fact (what, precisely, Blue Shield's reimbursement policy covered or did not cover) and questions of law (whether that policy complies with California law) common to the class and subject to class-wide proof." *Id.* at *55. The same is true here, and more so, since WFH here was recommended, guided, and advised.

None of Amazon's other cited cases are remotely analogous. *Dugan v. Ashley Furniture*, for instance (Opp. at 10-11), involved cell phone claims of store employees where landlines were available for their use in the store and cell phones were clearly not needed on a class basis. Likewise, *Pyara v. Sysco* (Opp. at 11-12) involved truck drivers who were issued Nextel phones by their employer for work purposes, and who did not need to use their cell phones on a class basis to get their dispatch instructions.

3. **Plaintiff Satisfies The Typicality And Adequacy Elements of Rule 23(a)**

Amazon's assertion that Plaintiff is neither a typical nor adequate class representative (Opp. at 24-25) is meritless, and incorrectly presupposes Plaintiff's basis for certification hinges on *his* "personal circumstances" rather than class-wide questions regarding whether *Amazon's* written reimbursement Policy only allowing reimbursement of "incremental" home internet costs violated Section 2802, and whether *it* knew or should have known its employees were incurring home internet costs while working from home.

None of Plaintiff's "personal circumstances" defeat typicality since his reimbursement "claims are typical of the class[,]" "the action is based on conduct which is not unique to the named plaintiff[,]" and "other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ("Typicality refers to the nature of the claim or defense . . . and not the specific facts from which it arose or the relief sought."). Plaintiff alleges he and the Class were not reimbursed for a reasonable percentage of their home internet expenses and that they were all subject to Amazon's uniform, illegal Policy. Williams Decl., ¶ 10. Plaintiff has and will continue to look out for the best interests of the Class, and no legally cognizable conflict exists. *Id.* ¶ 11; **Ex. C** at 209:1-210:5. Accordingly, Plaintiff's claims are typical of the Class' claims, and he is an adequate Class Representative.

D. **Amazon's Expert Declaration and Report From Dr. Ward Supports, Rather Than Undermines,**

**Plaintiff's Motion for Class Certification**

Defendant's expert report from Dr. Ward provides substantial support for Plaintiff's Mtn. and supports the view that there are predominating class-wide issues of fact and law that the Court can adjudicate, and that any "individualized issues" related to months worked by Class Members in Amazon's offices or employees who received monthly home internet reimbursements can be managed through class adjudication. *Cf.* Ward Depo. at 65:7-66:19 (admitting the badge swipe data allows for the removal of months where Class Members swiped into Amazon's offices for a certain number of days with relative ease). Initially, Dr. Ward's conclusion that the vast majority of workdays in the Class Period had some employee badge swipe activity at the nine California office locations, proving that "at least some Amazon employees [were] physically present in these office locations" (Ward Decl. at 7), is obvious but irrelevant to Plaintiff's Mtn., since Plaintiff admits that Amazon's relatively few employees working in hardware, labs, and facilities management routinely worked in physical offices. Mtn. at n.3. The question is not whether *some* relatively small group of Amazon employees routinely worked in Amazon's offices (they did), but whether these individuals and their months worked in offices can manageably be carved out of the Class and/or Plaintiff's damages model for the Class here, so that common issues still predominate for Rule 23(b)(3) purposes regardless of these particular individuals' months worked in Amazon's offices.

According to Dr. Ward, the answer is yes, those individuals and months worked in Amazon's offices can be managed through carve-outs based on Amazon's badge swipe data and/or simply by excluding certain job titles from class participation. Dr. Ward confirms Amazon's lab engineers, hardware employees, or facility managers spent 55.7%, 17%, and 36.3% of their workdays during the Class Period, respectively, physically present in Amazon's California offices based on badge swipe data. Ward Decl. at 47 (Chart 3); Ward Depo. at 60:9-62:22, 64:20-65:6 (admitting these employees and their months worked in offices can be identified based on badge swipe data, and that heightened swipe activity is clustered in job categories that require in-office presence). Far from helping Amazon, this data analysis strongly supports Plaintiff by providing a clear path to managing this issue. Indeed, Dr. Ward creates a perfect test for where to draw the carve-out line—one that is perhaps better than Plaintiff's proposal[14]—when he states that only 10.1% of Amazon's employees were present in the office at least one day per week on average during the Class Period. Ward Decl. at 8. This means, of course, that 89.9% of the Class Members did *not* work in

---

[14] Plaintiff's alternate proposal of 15 days per month in the office would also work as a proxy for who was routinely present in Amazon's offices. Mot. at 5. Notably, Dr. Ward concludes that only 533 of 6,934 Class Members worked in offices for more than 15 days per month, i.e., 7.6% of the Class. Ward Decl. at 11.

- 13 -

Amazon's offices at least one day per week on average, from which it is inferable that they worked from home. Those remaining individuals and months—90% or more of the totals—are at issue in this case.

Similarly, the issue of damage offsets due to prior reimbursement requests and payouts is also manageable. Dr. Ward's analysis shows that 619 employees, i.e., only 8.9% of the Class Members, sought and received home internet expense reimbursements. *Id.* at 9; Ward Depo. at 18:1-18, 39:3-10. Since Plaintiff's Mtn. only seeks certification of Plaintiff's claim for monthly home internet expenses, statistics relating to other types of home office reimbursement are not germane to the issues at hand. Ward Decl at 1.

The most useful data from Dr. Ward's analysis is that over 95.6% of all Class Member workdays in 2020 show no badge swipe data, over 92.8% of all Class Member workdays in 2021 show no badge swipe data, and over 88.8% of all Class Member workdays for the first half of 2022 show no badge swipe data, from which it is inferable that all of these days were worked by Class Members remotely from home. Ward Decl. at 26 (Table 3); Ward Depo. at 49:2-50:21, 51:17-52:15, 53:1-16, 61:17-62:4 (overall, more than 90% of all Class Member workdays during the Class Period as a whole show no badge swipe activity). In fact, 96.5% of the Class did not have even one month within the Class Period where they swiped into an office at least 20 days. *Id.* at 63:4-23. Since the days worked in the office include those worked by lab engineers, and by employees working on hardware and in facilities management, these figures will rise once those individuals and/or their months worked in office are carved out. *Id.* at 55:14-57:3, 57:18-22 (admitting that 25.9% of the Class never swiped into an Amazon office and another 46% had less than one swipe per month, so roughly 72% of the Class worked remotely from home for the overwhelming majority of workdays).[15] In sum, Dr. Ward's analysis of the key reimbursement and badge swipe data, albeit not the parts that he focuses on to formulate his largely irrelevant conclusions, strongly supports class certification. Dr. Ward's analysis shows it is possible to identify the small minority of individuals who routinely worked in Amazon's offices, and to carve-out those associated months worked in office, as well as those months that were previously reimbursed by Amazon, all of which proves that common issues predominate and the "individualized issues" identified by Amazon can be managed through a certification order with a few minor carve-outs and/or by removing those specific months at the damages phase.

---

[15] If the Court found it appropriate, Plaintiff's "Class Member" definition could be modified to exclude individuals holding job titles where a significant portion of their job duties could only be done in Amazon's offices, i.e., lab engineers, hardware employees, and facility managers. Modification of a class definition is appropriate, even on Reply. *Garcia v. Lift*, 2021 U.S. Dist. LEXIS 68195, at *52 (E.D. Cal. Apr. 6, 2021) (Courts "may consider class definitions first raised in a plaintiff's reply brief.") (collecting cases).

### E. Amazon's Rebuttal Survey Expert Report From Dr. Backor Does Not Undermine Plaintiff's Arguments In Support Of Certification

Concerning Ms. Steiner, Plaintiff's survey expert, who opined with an 8% +/- confidence ratio that 96% of the Class used home internet to WFH; that they worked at home online 41 hours per week on average; and that their average monthly home internet cost was $69.51, all based on preliminary survey results from 157 Class Members, which could be improved to a 5% +/- confidence ratio by surveying a larger pool of 400 Class Members, Amazon's rebuttal expert criticized these conclusions on the grounds that: (a) the survey was biased because respondents were told it would be used by Plaintiff's counsel; (b) the survey questions contained some confusing and/or ambiguous language; and (c) individualized inquiry would be needed to determine monthly home internet costs, who submitted and received reimbursements, and who bundled or shared monthly home internet plans. Backor Decl. at ¶¶ 8, 14-17, 19-20, 23.

Amazon's criticisms of Ms. Steiner's report and survey (Opp. at 20-21), all go to the potential weight, not the admissibility, of the report and survey at the damages phase, and do not support denial of certification.[16] Dr. Backor's bias allegations are undermined by her admission that when she conducted her own survey for a different plaintiffs' firm in another wage-and-hour case, her own survey advised respondents of the purpose of the survey and that it was being conducted at the behest of the plaintiffs' lawyers. CJA Reply Decl., Ex. B ("Backor Depo.") at 36:24-37:21, 39:10-24, 43:9-44:18 (admitting it is sometimes "appropriate" to inform class members of a survey's sponsor…"). Finally, none of Dr. Backor's criticisms preclude the use of a more robust future survey that could be conducted by Ms. Steiner, or jointly by the parties' experts pursuant to a Court order,[17] to address the scope of damages on a class basis.

For the reasons stated above, Plaintiff's Motion to Certify the Class should be granted.

---

[16] "Survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010); *Guifi Li v. A Perfect Day Franchise, Inc.*, 2012 U.S. Dist. LEXIS 83677, at *13 (N.D. Cal. June 15, 2012) ("Plaintiffs have met their burden of establishing an approximate award based on reasonable inferences provided by a representative sample of the class [obtained via survey evidence].").

[17] If the Class is certified, Plaintiff will likely seek Court permission to conduct a new survey of 400+ random Class Members, with pre-testing, and allowance for Amazon to vet the final survey questions and to participate in the pre-test process to modify any questions that are allegedly confusing, with any unresolved disputes to be presented to the Magistrate, and the parties could then advise respondents that the survey is being conducted jointly or pursuant to court order to reduce bias or make it a "double-blind" survey. This approach would eliminate the vast majority of Dr. Backor's criticisms and provide a streamlined way to estimate and extrapolate damages. See Backor Depo. at 28:10-15, 44:14-18, 49:13-20, 50:11-13, 52:10-17, 54:22-56:1, 61:21-62:5, 65:22-67:6, 74:12-77:3 (testifying it is best practice to conduct surveys "double-blind" as to the purpose and sponsor of the survey and to utilize "pre-testing" or a soft-launch as part of the survey development process to ensure a clear and precise survey).

DATED: January 25, 2023  **ACKERMANN & TILAJEF, P.C.**

  */s/Craig J. Ackermann*
 Craig J. Ackermann, Esq.
 Joshua Klugman, Esq.
 Counsel for Plaintiff and the putative Class