UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID G WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, et al.,<br><br>Defendants. | Case No.  22-cv-01892-VC<br><br>**ORDER DENYING MOTION FOR<br>CLASS CERTIFICATION**<br><br>Re: Dkt. No. 40 |

David Williams, an Amazon employee, contends the company violated the California Labor Code by failing to reimburse him and other employees for home internet expenses incurred during the first couple years of the COVID-19 pandemic. He has moved to certify a class of nearly 7,000 Amazon employees who worked from home in California at any time from March 15, 2020 through July 1, 2022.

The motion is denied because Williams has not met his burden to show that common questions would predominate at trial. His principal theory of predominance—based on Amazon's alleged "common policy" regarding reimbursement—is not supported by the record. And while his second theory of predominance—based on Amazon's alleged knowledge that its employees were working from home and thus incurring home internet expenses—has more potential, it is inadequately expounded. Because it's plausible that Williams could certify a class based on his second theory of predominance, denial is without prejudice to Williams filing a renewed motion. This ruling assumes that the reader is familiar with the facts of the case, the arguments made by the parties, and the applicable legal standards.

1. Williams describes his primary theory of predominance as follows: "the predominant,

certifiable question under Rule 23(b)(3) is whether Amazon's written expense reimbursement policy in its FAQs[]—including the illegal provision that Amazon would only allow employees to seek reimbursement for incremental increases in home internet costs, which was in force as of May 2020—violated section 2802 of the Labor Code." Dkt. No. 40 at 19. But the evidence does not support Williams's assertion that this was a common policy.

The statement that employees could be reimbursed for "incremental" internet costs (subject to approval by their managers) was contained in an FAQ section posted on Amazon's internal wiki page and on Concur, Amazon's reimbursement software tool, to provide guidance to employees regarding reimbursements for COVID-19-related expenses. Williams argues— based on the use of the word "incremental"—that Amazon's policy was to limit reimbursements to any increase in home internet costs above what an employee would normally incur if they were not working from home. But that doesn't seem to have been Amazon's policy. Many class members received reimbursements for home internet expenses in amounts that could not possibly be characterized as "incremental." Specifically, more than 600 out of the roughly 7,000 proposed class members received reimbursement for home internet expenses during the class period, with the average reimbursement being $66.49 per month, and with many employees being reimbursed for their full home internet costs. Dkt. Nos. 40-7 at 12, 41-17 at 17–19. Not only does this seem more than "incremental," it appears to be far more than what California law requires. *See Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014) (construing section 2802 as requiring reimbursement of only a "reasonable percentage" of home costs).

It therefore seems likely that Amazon did not violate section 2802 as to a meaningful subset of the proposed class, regardless of what it may have said in its FAQs. A fight about the meaning of the words in the FAQ—and about whether that meaning is consistent with California law—does not represent a common issue that would predominate at trial because it only begs the liability question. The fact that so many of the proposed class members were apparently reimbursed in a manner contrary to Williams's interpretation of the words in the FAQs underscores that those words (whatever they were intended to mean) were not a common policy

affecting whether (and how much) Amazon reimbursed employees for home internet expenses.

2. Williams offers what he calls an "alternative certification theory." Dkt. No. 44 at 4. It involves "Amazon's failure to reimburse the Class for a reasonable portion of monthly home internet expenses, despite class-wide evidence of Amazon's actual or constructive knowledge the Class was incurring such expenses in violation of section 2802." *Id.* This theory—which does not rely on the existence of a common policy—appears to be more grounded in the reality of what was happening at Amazon in the years following the start of the pandemic. And it could potentially form a basis for class certification. The evidence presented does not suggest that class members were *required* to work from home, at least not after the shelter-in-place orders were lifted. But the evidence does suggest that class members were operating under a recommendation to work from home (and, as a practical matter, needed to use their home internet to be effective employees). Amazon's early guidance "recommended that corporate office employees who work in a role that can be done from home should do so." Dkt. No. 41-2 at 92. While that language became more passive on April 30, 2020—when it changed to "Amazon employees who work in a role that can be done effectively from home are welcome to do so"—Amazon continued to refer to a "corporate-advised work-from-home period" in its guidance and reimbursement FAQs long after that date. *See, e.g.*, Dkt. Nos. 40-17, 40-18, 41-10, 41-2 at 59. The common question, therefore, could be whether Amazon was obligated under these circumstances—*i.e.*, given its company-wide guidance—to reimburse for internet expenses incurred while working from home during this time.

However, as with his first theory of predominance, Williams fails to meaningfully grapple with the fact that Amazon appears to have reimbursed a substantial percentage of proposed class members in compliance with section 2802. Williams waves this away as a damages issue that can be dealt with at trial, but it is not a damages issue—it is a liability issue. Amazon simply did not violate section 2802 as to any employee who was reimbursed a "reasonable percentage" of home internet expenses incurred during the class period. *Cochran*, 228 Cal. App. at 1140.

At the class certification hearing, counsel for Williams suggested that perhaps the employees who received reimbursement could simply be excluded from the class definition. The Court declines this invitation to alter the class definition. Some of the employees who received reimbursement for home internet expenses may nevertheless belong in the class if, for example, they received reimbursement for only a portion of the time they were allegedly entitled to it, or if the reimbursement they received was smaller than what California law requires (assuming it required any reimbursement at all). Williams has offered no analysis of this issue.

It would not be difficult to determine which of the 619 employees who were reimbursed for home internet should be kept out of the class (because they received at least a "reasonable percentage" of all home internet expenses during the class period) and which ones should remain (because they were insufficiently reimbursed). Under these circumstances—where it is clear that a significant portion of the proposed class is in a materially different position from the remainder, and where those class members can be identified without much difficulty—it would not be appropriate to certify a class. *See Jensen v. Natrol, LLC*, No. 17-cv-3193, 2020 WL 416420, at *1 (N.D. Cal. Jan. 27, 2020).[1]

In any event, it's far from clear that class composition is the only problem with this theory of class certification. The motion focuses primarily on the "common policy" theory of predominance, while giving short shrift (in terms of both argument and evidence) to this one. The better approach, therefore, is to deny class certification without prejudice to filing a renewed motion based on a better presentation.

A further case management conference is scheduled for March 31, 2023, at 10:00 a.m. via Zoom. A case management statement is due by March 24, 2023.

---

[1] To be sure, it will never be possible to achieve perfection when shaping the contours of a proposed class like this, and there's nothing wrong with certifying a class knowing that some small, unidentifiable subset of people will not ultimately belong in it. *Jensen*, 2020 WL 416420, at *1. But that is a far cry from what Williams is proposing here, where a substantial and identifiable subset of people do not belong in the class.

**IT IS SO ORDERED.**

Dated:

_____
VINCE CHHABRIA
United States District Judge