**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann (SBN 229832)
cja@ackermanntilajef.com
Avi Kreitenberg (SBN 266571)
ak@ackermanntilajef.com
Brian Denlinger (admitted *pro hac vice*)
bd@ackermanntilajef.com
315 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Phone: (310) 277-0614
Fax: (310) 277-0635

**JOSHUA KLUGMAN, ESQ.**
Joshua Klugman (SBN 236905)
esquirejosh@yahoo.com
9538 Pico Boulevard, Suite 200
Los Angeles, California 90035
Phone: (424) 248-5148

Attorneys for Plaintiff and the Putative Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID GEORGE WILLIAMS, an individual, on behalf of the State of California, as a private attorney general, and on behalf of all Aggrieved Employees<br><br>PLAINTIFF,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company; and DOES 1 TO 50,<br><br>DEFENDANTS. | CASE NO.: 3:22-CV-01892-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: June 13, 2023<br>Hearing Time: 1:00 p.m.<br>Hearing Place: Courtroom 5<br>Judge: Honorable Vince Chhabria<br><br>Action Filed: March 18, 2021<br>FAC Filed: May 5, 2021<br>SAC Filed: March 8, 2022<br>Removal Date: March 24, 2022<br>TAC Filed: June 21, 2022 |

**NOTICE IS HEREBY GIVEN** that, on July 13, 2023, at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, located at the San Francisco Courthouse at 450 Golden Gate Avenue in San Francisco, California, before the Honorable Judge Vince Chhabria pursuant to Fed. R. Civ. P. 23(e) and (g), Plaintiff David George Williams ("Plaintiff"), individually and on behalf of all others similarly situated, will and does hereby move this Court for entry of an Order:

1.      Preliminarily certifying a proposed Settlement Class pursuant to Rule 23 for purposes of Settlement;

2.      Preliminarily appointing Plaintiff as Class Representative for purposes of settlement;

3.      Preliminarily appointing Craig J. Ackermann, Avi Kreitenberg, and Brian Denlinger of Ackermann & Tilajef, P.C. and Joshua Klugman of Josh Klugman, Esq. as Class Counsel for purposes of settlement;

4.      Preliminarily approving the proposed settlement as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Settlement Agreement and Release of Class Action ("Settlement Agreement"), including payment by Amazon.com Services LLC ("Defendant") of the non-reversionary Gross Settlement Amount ("GSA") of $950,000.00 for a class of 6,937 individuals

5.      Preliminarily approving a Service Award of $20,000 for the named Plaintiff from the GSA in recognition of his significant service to the Settlement Class and his general release, which is far broader than the Class;

6.      Preliminarily approving Plaintiff's Counsel's request for up to 30% of the GSA as attorneys' fees (i.e., up to $285,000.00), for less than their combined actual lodestar expended, plus reimbursement of actual litigation costs incurred in litigating and resolving this case up to an additional $85,000.00 from the GSA;

7.      Preliminarily approving the PAGA penalty allocation of $30,000.00 from the

GSA, of which 75%, or $22,500.00, shall be paid to the Labor and Workforce Development Agency;

9.    Appointing ILYM Group, Inc. as the third-party Settlement Administrator for mailing class notices and other aspects of the settlement administration, approving that up to $50,000 be deducted from the GSA for the costs of settlement administration; and

10.    Approving the proposed Class Notice and ordering it to be disseminated to the Class Members as provided in the Settlement Agreement.

This motion for preliminary approval of the parties' class action settlement is based upon the supporting Memorandum of Points and Authorities, the Declarations of Craig J. Ackermann, Joshua Klugman, Kimberly Sutherland, and David George Williams, the parties' class action Settlement Agreement, the proposed Class Notice, and the other papers and exhibits filed herewith.


Dated: June 8, 2023                    Respectfully submitted,

                                       ACKERMANN & TILAJEF, P.C.
                                       JOSHUA KLUGMAN, ESQ.


                          By:    _/s/ Craig J. Ackermann_____
                                 Craig J. Ackermann, Esq.
                                 Joshua Klugman, Esq.

                                 Attorneys for Plaintiff and the
                                 putative Settlement Class

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................- 1 -

II.   BACKGROUND ....................................................................................................- 2 -

    A.   The Parties and the Putative Class .................................................................- 2 -

    B.   Procedural History, Discovery, Denial of Certification and Settlement........- 2 -

III.  SUMMARY OF THE PROPOSED SETTLEMENT ..............................................- 4 -

IV.   THE COURT SHOULD APPROVE THE SETTLEMENT ...................................- 7 -

    A.   The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b) .......................- 8 -

        1.   Rule 23(a)(1) Numerosity ..................................................................- 8 -
        2.   Rule 23(a)(2) Commonality ...............................................................- 8 -
        3.   Rule 23(a)(3) Typicality ....................................................................- 8 -
        4.   Rule 23(a)(4) Adequacy.....................................................................- 8 -
        5.   Rule 23(b)(3) Predominance and Superiority ....................................- 9 -

    B.   The Settlement is Fair, Reasonable, and Adequate.....................................- 10 -

    C.   The Settlement Amount is a Fair Compromise in Light of the Litigation
        Risks and Uncertainties...............................................................................- 10 -

    D.   Summary of Plaintiff's Claims ...................................................................- 11 -

    E.   Summary of Defendant's Defenses .............................................................- 13 -

    F.   Fair Valuation of Plaintiff's Claims...........................................................- 17 -

    G.   The Parties Investigated this Matter to Allow Counsel and this Court to
        Conclude that the Settlement is Fair and Reasonable..................................- 20 -

    H.   The Settlement was the Product of Informed, Non-Collusive, and Arms'-
        Length Negotiations Between Experienced Counsel Who Jointly Support
        the Settlement..............................................................................................- 21 -

    I.   The Proposed Class Notice and Notice Plan is Adequate............................- 21 -

    J.   The Requested Service Award is Reasonable...............................................- 23 -

    K.   The Requested Attorneys' Fees and Costs Are Reasonable. .......................- 23 -

    L.   The Proposed Settlement Administrator......................................................- 24 -

V.    CONCLUSION ................................................................................................- 25 -

NOTICE OF MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

**Cases**

*Aguilar v. Zep, Inc.,* 2014 U.S. Dist. LEXIS 120315, at *55-56 (N.D. Cal. Aug. 27, 2014) .... - 12 -, - 15 -

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................- 7 -, - 9 -, - 14 -

*Arroyo v. Int'l Paper Co.*, 17-CV_6211-BLF, 2019 WL 1508457, at *4 (N.D. Cal. Ap4. 4 2019).....- 16 -

*Arroyo v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 32069, at *49-50 (N.D. Cal. Feb. 24, 2020).........- 11 -

*Bowen v. Target Corp.*, 2021 U.S. Dist. LEXIS 203240, *24-25 (C.D. Cal. June 24, 2021) ..............- 14 -

*Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1140, 1144-5 (2014)- 8 -, - 12 -, - 14 -, - 15 -

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016) .................................- 10 -

*Dugan v. Ashley Furniture Indus.*, 2016 U.S. LEXIS 1879011, *9-10 (C.D. Cal. Nov. 29, 2016) .....- 14 -

*Eddings v., DS Services of America, Inc.*, 2016 WL 3390477 (N.D. Cal. May 20, 2016) ...................- 10 -

*Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 951-52 (2008) ........................................- 11 -

*Estrada v. Royalty Carpet Mills, Inc.*, (Cal.App. 4th Dist. March 30, 2022) .......................- 13 -

*Fleming v. Covidien, Inc.* (C.D. Cal. Aug. 12, 2011) 2011 WL 7563047 ...........................- 17 -

*Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 U.S. Dist. LEXIS 193096, *7 (N.D. Cal. Aug. 21,
    2015) ......................................................................................................- 23 -

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8
    (N.D. Cal. Apr. 22, 2010) ...........................................................................- 23 -

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007)................................- 11 -

*General Tel. Co. v. Falcon,*
    457 U.S. 147, 157-8, n. 13 (1982) .................................................................- 9 -

*Gola v. University of San Francisco*, 2023 Cal. App. LEXIS 281 (April 13, 2023)................- 17 -, - 19 -

*Gonzalez v. OfficeMax N. Am.*, 2014 WL 5473764, at *3-4 (C.D. Cal. Nov. 5, 2012).......................- 15 -

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) .........................................- 7 -

*Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1078, n.10 (9th Cir. 2020)....................................- 12 -

*Hopkins v, Stryker Sales Corp.*, 11-CV-2786-LHK, 2012 WL 1715091, at *4-5, *10 (N.D. Cal. May 14,
    2012) ....................................................................................................- 16 -

*Hunt v. VEP Healthcare, Inc.*, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) ...................- 10 -

*Ikonen v. Hartz Mountain Corp.,*
    122 F.R.D. 258, 262 (S.D.Cal. 1988) .............................................................- 8 -

NOTICE OF MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*In re American Int'l Group Secs. Litig.*, 265 F.R.D. 157, 175 (S.D.N.Y. 2010), *vacated and remanded*, 689 F.3d 229, 236-7 (2d Cir. 2012) .................................................................................- 7 -

*In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 942 (9th Cir. 2011).........................................- 23 -

*In Re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 993-4 (9th Cir. 2009) ........................................- 5 -

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ..........................................................................................- 10 -

*Kileigh Carrington v.Starbucks Corporation, et al.*, San Diego Superior Court Case No. 37-2014-00018637-CU-OE-CTL (Apr. 3, 2017) ..............................................................................- 17 -

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ..................................................................................................................................- 20 -

*Marr v. Bank of Am.*, 2011 U.S. Dist. LEXIS 24868, at *3 (N.D. Cal. Mar. 8, 2011) .......................- 11 -

*Martin v. FedEx Ground Package System, Inc.*, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008)- 23 -

*Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) .........................................................- 23 -

*Moore v. Addus Healthcare, Inc.* (N.D. Cal. Mar. 17, 2021) 2021 WL 1022875, at *12 ...................- 15 -

*Moss et al. v. USF Reddaway, Inc.*, Case No. 5:15-cv-01541-JAK (FFM), Docket No. 80, at 11-12 ...- 9 -

*Nguyen v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist.LEXIS 131710 (N.D. Cal. Sept. 26, 2016) .........- 15 -

*Novak v. Boeing Co.*, 2011 U.S. Dist. LEXIS 83031 (C.D. Cal. July 20, 2011) ..................................- 15 -

*Ortiz v. CVS Caremark Corp.* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 36833 .................................- 13 -

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ......................................................................- 21 -

*Richie v. Blue Shield Of Cal.*, 2014 U.S. Dist. LEXIS 170446, *66-70 (N.D. Cal. Dec. 9, 2014)- 8 -, - 15 -

*Santillan v. Verizon Connect, Inc.* (S.D. Cal., June 13, 2022) 2022 WL 4596574, at *3-6 ................- 14 -

*Stuart v. RadioShack Corp.*, 2009 U.S. Dist LEXIS 12337, *45-54 (N.D. Cal. Feb. 5, 2009)- 8 -, - 11 -, - 15 -

*Sullivan v. DB Investments,* 667 F.3d 273, 335 (3d Cir. 2011) ...........................................................- 7 -

*Swamy v. Title Source, Inc.*, 2018 U.S. Dist. LEXIS 57048 (N.D. Cal. April 2, 2018) .............. - 8 -, - 15 -

*Walton v. AT&T Servs.*, 2018 U.S. Dist. LEXIS 245928, *8 (N.D. Cal. Feb. 14, 2018) .......... - 23 -, - 24 -

*Wesson v, Staples the Office Superstore, LLC* (2021) 68 Cal.App5th 746, 765..................................- 13 -

*Williams v. J.B. Hunt Transp.,* 2021 U.S. Dist. LEXIS 236269, *23-24 (C.D. Cal. Dec. 7, 2021) .....- 14 -

*Williams v. J.B. Hunt Transp.*, 2022 U.S. Dist. LEXIS 56719, *36-39 (C.D. Cal. March 9, 2022) ....- 15 -

*Wilson v. Kiewit Pacific Co.*, No. 09-cv-03630, ECF No. 119 (N.D. Cal. 2012)...................... - 16 -, - 24 -

NOTICE OF MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Wren v. RGIS Inventory Specialists*,
  No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................- 10 -

**Statutes**
Lab Code §§ 2699 ...............................................................................................................................- 13 -

Labor Code section 2802 ...................................................................................................................- 11 -

**Rules**
Federal Rule of Civil Procedure 23 ...................................................................................... passim

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    <u>INTRODUCTION</u>

This motion seeks preliminary approval of a non-reversionary wage-and-hour class action settlement between Plaintiff David George Williams ("Plaintiff") and Defendant Amazon.com Services LLC ("Defendant") for 6,937 current and former Amazon corporate employees in the amount of $950,000. Plaintiff seeks to represent a settlement class composed of: *Plaintiff and all other individuals who are or were employed by Defendant, based at one of Defendant's nine California office locations (SJC3, SJC15, SFO10, SFO13, MRY11, SBP10, LAX10, SJC11, and SNA3), who worked remotely for at least one pay period during the Class Period from March 15, 2020 through July 1, 2022 (the "Class Period"), and who were assigned a registered USB security key and a Midway Pin by Defendant.* (the "Class" or "Class Members").[1] In this case, Plaintiff alleged Defendant failed to reimburse Plaintiff and Class Members for a reasonable portion of their home internet expenses incurred while working from home during the COVID-19 pandemic. There are no other cases that will be affected by this settlement.

Because the settlement is fair and reasonable and was negotiated at arm's length between counsel after extensive formal discovery and motion practice (including motions to dismiss in state and federal court and a fully briefed motion for class certification), it should be preliminarily approved. The settlement, if given approval by this Court, is to be paid out to all Class Members who do not opt-out, with approximately $497,500 to be distributed to participating Class Members (after deductions for the requested attorneys' fees, litigation costs, settlement administration costs, proposed PAGA payment to the LWDA, and Plaintiff's proposed Service Award). The average individual settlement awards of $136.94 on a gross basis, and $71.71 on a net basis, represents a fair recovery in this case alleging unreimbursed home internet expenses, and it amounts to a gross recovery of $7.57 per month at issue.

Plaintiff respectfully requests that the Court enter an order: (1) conditionally certifying the Class under Fed. R. of Civ. P. 23(b)(3) for settlement purposes only and preliminarily approving the settlement; (2) approving the proposed Class Notice to be disseminated to Class Members pursuant to

---

[1] There is no difference between the Settlement Class and the class proposed in the operative Complaint.

the Settlement Agreement and the proposed notice plan;[2] (3) appointing ILYM Group, Inc. ("ILYM") as the Settlement Administrator; and (4) scheduling a hearing for final approval of the class settlement.

## II.    BACKGROUND

### A.    The Parties and the Putative Class

Defendant is a global technology company focused on e-commerce, logistics, cloud computing, digital streaming, and artificial intelligence. CJA Decl. ¶14. During the Class Period, Defendant maintained nine office locations in California, and there were approximately 6,937 individuals who were assigned to at least one of Defendant's California office locations and who were also assigned a registered USB security key and a Midway Pin. Id. Class Members collectively worked a total of approximately 136,430 months during the Class Period. Id. Plaintiff is a California resident who during the Class Period worked for Defendant as a machine learning developer. Id. ¶15

### B.    Procedural History, Discovery, Denial of Certification and Settlement

On January 11, 2021, Plaintiff provided notice to the LWDA that he intended on pursuing a PAGA representative action based on Defendant's violations of Labor Code § 2802. Id. ¶16. On March 18, 2021, Plaintiff filed his PAGA representative action complaint in Santa Cruz County Superior Court, Case No. 21CV00718, alleging a single cause of action for PAGA penalties based on Defendant's violations of Labor Code § 2802 [Dkt No. 1-2, Exhibit A]. Id. ¶17. On May 5, 2021, Plaintiff filed his first amended PAGA complaint [Dkt No. 1-2, Exhibit E]. Id.

On June 4, 2021, Defendant filed its demurrer to Plaintiff's first amended complaint (the "Demurrer") [Dkt No. 1-2, Exhibit F] and its motion to strike portions of Plaintiff's first amended complaint (the "MTS") [Dkt No. 1-2, Exhibit G]. Id. ¶18. The Demurrer contended that (1) Plaintiff failed to adequately plead that his alleged expenses were caused by Defendant; (2) Plaintiff failed to plead sufficient facts showing that Defendant knew or had reason to know that he incurred any reimburse expenses; and (3) Plaintiff failed to plead sufficient facts showing that any such expenses were "necessary" to discharge his job duties. The MTS contended that Plaintiff improperly alleged that

---

[2] The Notice of Class Action Settlement and Hearing Date for Court approval is attached to the Settlement Agreement as Exhibit 1. (*See* Declaration of Craig J. Ackermann in Support of Plaintiff's Motion for Order Granting Preliminary Approval of Class Action Settlement ("CJA Decl."), Ex. A.).

Defendant must reimburse Plaintiff's housing and electricity expenses. On August 11, 2021, the Demurrer was overruled, and the MTS was denied [Dkt No. 1-2, Exhibit Q]. Id.

After meeting and conferring with counsel for Defendant and after Plaintiff propounded its first set of formal discovery, counsel for Plaintiff discovered that Plaintiff did not sign an arbitration agreement with Defendant. Id. ¶19. Thereafter, the Parties stipulated to the filing of Plaintiff's second amended complaint adding two additional causes of action on behalf of himself and a class of similarly situated individuals for: (1) failure to reimburse business expenses in violation of Labor Code § 2802; and (2) UCL violations based on the foregoing (Cal. Bus. & Prof. Code §§ 17200-17204). Id. Plaintiff's second amended class and PAGA representative action complaint was filed on March 8, 2022 (the "SAC") [Dkt No. 1-2, Exhibit U]. Id. On March 24, 2022, Defendant removed the case to the United States District Court, Northern District of California [Dkt No. 1]. Id. ¶20.

On March 31, 2022, Defendant filed its motion to dismiss Plaintiff's SAC (the "MTD") [Dkt No. 14]. Id. ¶21. On June 1, 2022, the Court issued an Order Granting in Part and Denying in Part Motion to Dismiss (the "MTD Order") [Dkt No. 25]. Id. The MTD Order stated that Plaintiff plausibly stated a claim under Labor Code § 2802, dismissed the UCL claim with leave to amend, and allowed Plaintiff's PAGA claim to remain. Id. On June 21, 2022, Plaintiff filed the operative third amended class and PAGA representative action complaint (the "TAC"), removing Plaintiff's UCL claim and revising the Class Member and PAGA Member definitions, among other changes [Dkt. No. 35]. Id.

Thereafter, the Parties engaged in significant formal discovery. Id. ¶22. Formal discovery consisted of each side sending and responding to several sets of written discovery including requests for admissions, requests for production of documents, and special interrogatories. Id. Plaintiff also took the deposition of two of Defendant's 30(b)(6) designees and Defendant took the deposition of Plaintiff. Id. Further, Plaintiff hired an expert to disseminate a survey to putative Class Members to conduct research on Class Member work-related home internet use during the Class Period. Id. ¶23. Plaintiff's expert's findings were instructive as to the putative Class's work from home habits and any reimbursement potentially owed for home internet expenses. Id. Plaintiff's expert completed 157 interviews of putative Class Members and found, among other things (with a 95% confidence interval), that 96% of California-based respondents reported they were required to maintain and use their home internet to

access Defendant's network and/or servers and that the median monthly cost for home internet was between $61 and $70 (with an average of $69.51 per month). See Declaration of Laura R. Steiner, MBA [Dkt No. 40-4, Exhibit 1]. Defendant hired experts to testify regarding qualitative and quantitative research, including statistical and other analysis of datasets relating to reimbursement and work habits during the Class Period, including rebuttal of opinions offered by Plaintiff's expert. CJA Decl. ¶24. Plaintiff then deposed both of Defendant's experts and Defendant deposed Plaintiff's expert. Id.

On November 9, 2022, Plaintiff filed his motion for class certification (the "Class Cert. Motion") [Dkt No. 40], which included Plaintiff's arguments in support of certification and Plaintiff's expert's survey findings. Id. ¶25. Prior to the filing of Defendant's opposition to the Class Cert. Motion, Defendant deposed nine of the respondents to Plaintiff's expert's survey. Id. On March 7, 2023, the Court issued its Order Denying Motion for Class Certification (the "Class Cert. Order") [Dkt No. 54]. Id. ¶26. The Court denied certification without prejudice and invited Plaintiff's counsel to file a renewed motion for class certification. Id. Specifically, the Court noted that 619 individuals in the putative Class were reimbursed for home internet and those individuals are in a materially different position from the remainder of the putative Class. Id. In total, the Parties took and/or defended fifteen depositions in this case and exchanged thousands of pages of documents. Id.

In the weeks following the Court's Class Cert. Order, the Parties engaged in arms' length and non-collusive direct settlement negotiations via email and telephone correspondence. Id. ¶27. The negotiations resulted in a class-wide resolution of the case and the Parties memorialized the agreement into a Memorandum of Understanding ("MOU"). Id. In the weeks that followed the Parties drafted and executed the long form Settlement Agreement now before the Court for preliminary approval. Id.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

Under the terms of the Settlement Agreement ("S.A.") Defendant is discharged of all claims asserted in the lawsuit in exchange for Defendant's agreement to pay the non-reversionary Gross Settlement Amount ("GSA") of $950,000. The GSA includes deductions for (1) the Settlement Administrator fees, not to exceed $50,000; (2) Plaintiff's Service Award of up to $20,000; (3) attorneys'

fees of up to $285,000 (up to 30% of the GSA)[3]; (4) litigation costs of up to $85,000[4]; and (5) a payment to the LWDA in the amount of $22,500 as its share of the PAGA penalties. (S.A., ¶9.1). The remaining amount, an estimated $497,500 (the "NSA") will be distributed as individual settlement payments to all participating Class Members. Id. ¶9.2. The NSA will be distributed to Participating Class Members (i.e., all those who do not opt-out) pro-rata based on their months worked during the Class Period, subject to the following: (1) all Settlement Class Members will receive a minimum individual settlement payment of $10; (2) as to the 619 Settlement Class Members who already received some home internet expense reimbursements from Defendant during the Class Period, those individuals' prior reimbursement payments during the Class Period shall be treated as a credit, whereby they will only receive individual settlement payments from the NSA above the minimum settlement payment of $10 if their Individual Settlement Amount owed under the settlement exceeds the amount of home internet expense reimbursements they already received during the Class Period by more than $10; and (3) for purposes of the proposed pro rata allocations of individual settlement payments to the Settlement Class Members, the months of March and April of 2020, during which Defendant mandated that employees work from home, shall be treated as triple the value of other months in the Class. Id. No Claim Form is required. The settlement does not provide for injunctive relief. The allocation of the NSA among the Class Members is fair because Class Members will receive settlement shares based on their months worked during the Class Period and the value assigned to each month worked is weighted based on the strength of the claims during each month during the Class Period. The Parties agree that 100% of each Individual Settlement Amount and PAGA Payment shall constitute reimbursement, penalties, and/or interest (and each Class Participant will be issued an IRS Form 1099 for such payment to him or her). Id. ¶5.5.

Within 20 days after Preliminary Approval, Defendant shall provide the Settlement Administrator with the Class Member Database (the "Database"). Id. ¶8.2. Within 28 days of the receipt of the Database, the Settlement Administrator shall determine the number of Months worked by each Class

---

[3] At least 35 calendar days prior to the end of the Class Notice Period, pursuant to *In Re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 993-4 (9th Cir. 2009), Plaintiff's counsel will file a motion for attorneys' fees and costs pursuant to Rule 54(d) that will be set for the same date as the final approval hearing. *Id.* To date, Plaintiff's counsel's lodestar in this case is over $782,000. CJA Decl. ¶66.
[4] The litigation costs mostly consist of expert fees and deposition costs. CJA Decl. ¶67.

Member, populate the data for each Class Member accordingly, and send each Class Member the Class Notice via first-class, United States mail. Id. The Class Notice will inform Class Members of their estimated share of the settlement and the number of months they worked during the Class Period. Id. The Class Notice specifies the claims released and discusses how to object or opt-out.

Class Members may dispute their Individual Settlement Amount by submitting information to the Settlement Administrator no later than 45 days after being mailed the Class Notice by the Settlement Administrator, which is the defined Response Deadline. The Settlement Administrator will jointly work with Plaintiff and Defendant to resolve any disputes in good faith. If Plaintiff and Defendant cannot agree as to the proper Individual Settlement Amount, the Settlement Administrator shall make the final decision based on the information presented by the Class Member and Defendant's records. Id. ¶8.2.

Class Members who do not timely Opt-Out of the Class Settlement shall become Class Participants without having to submit a claim form or take any other action. Id. ¶8.3. To Opt-Out, a Class Member must submit a letter or postcard requesting exclusion from the settlement to the Settlement Administrator by the Response Deadline. Id. Class Members shall have no right to opt out or object to the PAGA portion of the Settlement. Id.

Any Class Member who wishes to object to the Settlement must submit a written objection to the Settlement Administrator no later than the Response Deadline. Id. ¶8.4. Only Class Participants may object. Id. The objection must state whether it applies only to the objector, to a specific subset of the Class, or the entire Class, and also state with specificity the grounds for the objection. Id. If an objector wishes to appear at the Final Approval and Fairness Hearing, in person or through an attorney, they must also file a notice of intention to appear when the objection is filed. Id. If the Court approves this Settlement, Class Members who object to the Settlement will be bound by the Settlement. Id. ¶12.1. There are no differences between the claims to be released (Labor Code section 2802, UCL based on that and PAGA claims based on section 2802) and the claims in the operative complaint. Id., ¶1.31.[5]

---

[5] "Released Claims" shall mean any and all claims, obligations, demands, rights, causes of action, and liabilities against Defendant, including PAGA claims, that were or could have reasonably been alleged based upon the facts pleaded in the Action and the PAGA claim notices that Plaintiff provided to the LWDA prior to commencing the Action. The Released Claims here are limited to the identical factual predicates set forth in Plaintiff's operative Complaint. Id. ¶1.31.

Funds associated with checks that have not been cashed within 120 days of issuance, will become void and the Individual Settlement Amounts associated with the uncashed checks will be redistributed pro-rata to Settlement Class Members who cashed their settlement check. Id. ¶9.8.

Proof of submission of the proposed settlement to the LWDA pursuant to Labor Code § 2699(l)(2) is attached as Exhibit H to the CJA Decl. Within 10 days after filing of this motion, Defendant will serve the appropriate state and federal officials with the required CAFA notice in compliance with 28 U.S.C. § 1715. S.A., ¶7.

## IV.    THE COURT SHOULD APPROVE THE SETTLEMENT

Fed. R. Civ. P. 23 requires all class action settlements satisfy two prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification in Rule 23(a) and (b); and (2) that the settlement is fair, reasonable, and adequate (Rule 23(e)(2)). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Although the Settlement Agreement before the Court for preliminary approval contemplates resolution of *all* of the claims pleaded including all those covered by Plaintiff's previously filed motion for class certification (which was denied without prejudice), courts are willing to certify settlement classes even after class certification has been denied in the litigation context. *See, e.g., In re American Int'l Group Secs. Litig.*, 265 F.R.D. 157, 175 (S.D.N.Y. 2010), *vacated and remanded*, 689 F.3d 229, 236-7 (2d Cir. 2012) ("[T]hey jointly moved for preliminary approval of the settlement, arguing that even if certification of a litigation class was inappropriate, the court could–and should–nonetheless certify a settlement class. Relying on the Supreme Court's decision in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997), the Settling Parties argued that the individual reliance issues that led the court to deny class certification would not pose a problem of trial manageability because the very existence of the settlement eliminated the need for a trial."); *see also Sullivan v. DB Investments,* 667 F.3d 273, 335 (3d Cir. 2011) (en banc) (approving settlement class after class certification motion had been denied; the concurrence notes: "some inquiries essential to litigation class certification are no longer problematic in the settlement context. A key question in a litigation class action is manageability— how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the

case will not be tried."). Here, the requirements for preliminary approval are all satisfied.

### A. The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b)

Rule 23(a) sets out four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23(b)(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

#### 1. *Rule 23(a)(1) Numerosity*

Numerosity is satisfied because there are 6,937 Settlement Class members. *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 members are enough); CJA Decl., ¶14.

#### 2. *Rule 23(a)(2) Commonality*

The settlement class satisfies commonality in that all Class Members share common legal and factual questions. *See, e.g., Richie v. Blue Shield Of Cal.*, 2014 U.S. Dist. LEXIS 170446, *66-70 (N.D. Cal. Dec. 9, 2014) (granting motion to certify claims for landline reimbursements for telecommuters); *Stuart v. RadioShack Corp.*, 2009 U.S. Dist. LEXIS 12337, *45-54 (N.D. Cal. Feb. 5, 2009) (granting motion to certify class with §2802 claims for mileage reimbursement); *Swamy v. Title Source, Inc.*, 2018 U.S. Dist. LEXIS 57048 (N.D. Cal. April 2, 2018) (granting motion to certify class of appraisers with §2802 claims for mileage, cell phone and internet reimbursements); *Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1140, 1144-5 (2014) (reversing denial of class certification).

#### 3. *Rule 23(a)(3) Typicality*

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Here, typicality is satisfied for settlement purposes because Plaintiff was subject to the same uniform policies and practices as the Class, and Plaintiff's claims are the same as claims that could be brought by the Class. Declaration of David George Williams ("DGW Decl."), ¶2.

#### 4. *Rule 23(a)(4) Adequacy*

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Courts interpret this requirement

- 8 -

to mean that (1) the proposed class representative(s) and their counsel do not have conflicts of interest with the proposed class; and (2) the plaintiff(s) and their counsel will vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, the claims of the Class and the named Plaintiff are virtually coextensive and there is no conflict between Plaintiff or any other Class Member. DGW Decl. ¶4; CJA Decl. ¶2; *General Tel. Co. v. Falcon,* 457 U.S. 147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories alleged in the Action and has been involved throughout the litigation. CJA Decl. ¶57. Likewise, Class Counsel have no conflicts of interest and have vigorously prosecuted the action on behalf of Plaintiff and the Class. Id. ¶2; Klugman Decl. ¶2. Ackermann & Tilajef, P.C. has significant experience litigating wage and hour class actions, and has been certified by numerous state and federal courts as competent and adequate class counsel. CJA Decl. ¶¶4-12.

     *5.  Rule 23(b)(3) Predominance and Superiority*

Under Rule 23(b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy." Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623 (1997). In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23. For settlement purposes, the common question of whether Defendant failed to reimburse predominate over any potential individualized issues.

Further, this class action is a superior method of adjudication compared to numerous individual suits. To determine whether the class method is superior to other means of adjudicating the claims of many people, courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). For settlement purposes, the superiority requirement is met because it is inefficient for 6,937 Class Members to file individual cases; certification provides the Class a viable method of obtaining redress

for their relatively modest individual damages; and public policy supports the use of the class action device to secure enforcement of statutes that focus on the workplace. *Hanlon,* 150 F.3d at 1023.

**B.      The Settlement is Fair, Reasonable, and Adequate.**

District courts should review class action settlements just as carefully at the initial stage as they do at the final stage. At the initial stage, the inquiry should be whether the settlement is "fair, reasonable, and adequate," based on any information the district court receives from the parties or can obtain through its own research. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016). At preliminary approval, the parties must provide enough information "to allow the district court to carefully evaluate the strength of the claims, the risks of litigating those claims all the way through, and the value of the relief each class member will receive from the settlement." *Hunt v. VEP Healthcare, Inc.*, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017). When courts decide whether to give preliminary approval to a class action settlement, "perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." *Eddings v. DS Services of America, Inc.*, 2016 WL 3390477 (N.D. Cal. May 20, 2016). Notably, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, *6 (N.D. Cal. 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying this level of scrutiny, the proposed settlement is fair, reasonable, and adequate.

**C.      The Settlement Amount is a Fair Compromise in Light of the Litigation Risks and Uncertainties.**

The Settlement represents a fair compromise given the risks and uncertainties of continued litigation, CJA Decl. ¶53, including that the Court repeatedly expressed skepticism as to Plaintiff's ability to prevail on the merits and/or on PAGA penalties. Id. ¶ ¶41-42. Defendant asserted and would have continued to assert legal and factual grounds to defend against this action both on certification and the merits. Id. ¶¶35-42. Thus, continued litigation would be costly, time consuming, and uncertain. There is always a risk of the class not being certified with prejudice or of adverse rulings on the merits. *See id*. The Settlement ensures timely relief and a substantial recovery. Id. ¶53. Further, the settlement is

fair and reasonable to the 619 Class Members that already received reimbursement from Defendant because those Class Members were reimbursed the total amounts of their home internet expenses and potentially do not have actionable claims. Accordingly, the 619 Class Members need to have some consideration for their release of claims.

### D.    Summary of Plaintiff's Claims

#### *Defendant's Alleged Failure to Reimburse Business Expenses*

Labor Code § 2802(a) provides "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Section 2802(c) defines "necessary expenditures" to include "all reasonable costs." Courts have found that expenditures are reasonable and necessary pursuant to Section 2802 even when not officially required by a company. *Arroyo v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 32069, at *49-50 (N.D. Cal. Feb. 24, 2020) ("[T]he 'argument that there is a bright-line rule that only expenses that are officially required can be considered "necessary" does not square with the case law."). Notably, Section 2802 is also subject to an anti-waiver provision. Labor Code § 2804; *Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 951-52 (2008).

The elements of Plaintiff's claim under § 2802 are: (1) that Plaintiff and the putative Class incurred home internet expenses while working from home for Defendant; (ii) that these expenditures were incurred in direct consequence of the discharge of their job duties or obedience to Defendant's directions; and (iii) the home internet expenses were reasonable and necessary. *See Marr v. Bank of Am.*, 2011 U.S. Dist. LEXIS 24868, at *3 (N.D. Cal. Mar. 8, 2011) (stating the elements of a § 2802 claim).

Moreover, Plaintiff must show that that Defendant "kn[e]w or ha[d] reason to know" that its employees working from home incurred work-related home internet expenses for purposes of § 2802, which is a fourth element. *Id.* (*citing Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009)) ("The Court concludes that a fair interpretation of §§ 2802 and 2804 which produces 'practical and workable results,' . . . consistent with the public policy underlying those sections, focuses not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense. If it does, it must exercise due diligence to ensure that each employee is reimbursed.").

Where Plaintiff alleged employees in California are expected to use their internet at home for work, courts have held that they incurred expenses in "direct consequence of the discharge of his or her duties" and were entitled to reimbursement, even if they would have incurred the same expenses without their work-related usage. *See Aguilar v. Zep, Inc.,* 2014 U.S. Dist. LEXIS 120315, at *55-56 (N.D. Cal. Aug. 27, 2014) (where outside sales representatives maintained a home office and used home internet for work—and admitted that they would have incurred the same expenses without work duties—the court held that the employer was obligated to reimburse some reasonable portion of these expenses). "Given that Zep required the Plaintiffs to use . . . internet, and the expenses were a foreseeable and clearly anticipated cost of doing business, Zep must reimburse these expenses." *Id.* at *56.

In *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014), the Court of Appeal held, "when employees must use their personal cell phones for work-related calls, Labor Code § 2802 requires the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills." In *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1078, n.10 (9th Cir. 2020), the Ninth Circuit observed that *Cochran*'s logic might also apply to monthly home internet expenses.

Plaintiff alleged that at the start of the COVID-19 pandemic, Defendant published online guidance to update employees regarding working remotely. CJA Decl. ¶30. Plaintiff alleged that this guidance included, among other things, recommendations to work from home. Id. Throughout the Class Period, Defendant's online guidance repeatedly recommended and/or allowed employees to work from home. Id. Accordingly, only about 10% of Defendant's employees were regularly working in Defendant's physical offices during the Class Period. Id.

Plaintiff alleged that Class Members were all expected to use the internet while working remotely for Defendant during the Class Period. Id. ¶31. Further, Plaintiff alleged Defendant advised Class Members that, to access the servers, they would need a USB security key and Midway Pin. Id. Plaintiff alleged that Defendant promulgated FAQs regarding employees' most common expense reimbursement questions during the Class Period. Id. ¶32. Plaintiff alleged that Defendant's FAQs only allowed reimbursement for incremental or extra costs and those incremental or extra costs were only reimbursable with prior manager approval. Id.

Based on data provided by Defendant, Defendant reimbursed 619 individuals who sought home internet reimbursement at the average rate of $66.49 per month. Id. ¶33. Alternatively, Plaintiff's expert's survey determined that the median monthly home internet costs was between $61 to $70, with an average monthly home internet cost of $69.51. Id. At oral argument on Plaintiff's Cert. Motion, Plaintiff's counsel stated that the "reasonable percentage of work-related usage" for home internet in this case was likely 22% of the monthly bill (i.e., 160 monthly work hours / 720 total hours). Id.

### *PAGA Penalties*

Plaintiff argued that he and the other Class Members were entitled to penalties under PAGA - Labor Code §§ 2699-2699.5. PAGA establishes a discretionary civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.[6] 75% of the penalties are distributed to the LWDA, and 25% is distributed to the aggrieved employees. The Court has the ability to reduce or eliminate PAGA penalties if they are "unjust" or "confiscatory." Labor Code § 2699(e)(2). There is a split of authority on whether PAGA claims are manageable. *See Wesson v, Staples the Office Superstore, LLC* (2021) 68 Cal. App. 5th 746, 765; *Ortiz v. CVS Caremark Corp.* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 36833 (dismissing PAGA claim as unmanageable); *cf. Estrada v. Royalty Carpet Mills, Inc.*, (Cal. App. 4th Mar. 30, 2022) (disagreeing with *Wesson* and creating a split among the Courts of Appeal on whether manageability is a prerequisite to bringing a PAGA claim). Plaintiff alleged that by virtue of each of Defendant's violations of Labor Code § 2802, Plaintiff and the Class Members are entitled to civil penalties under PAGA as well as attorneys' fees and costs. CJA Decl. ¶34.

### E.    Summary of Defendant's Defenses

First, Plaintiff realized the risk that the Court could deny Plaintiff's renewed motion for class certification with prejudice after the Court has already denied Plaintiff's Cert. Motion without prejudice. CJA Decl. ¶35. While potentially providing a roadmap to class certification on a renewed motion, the Class Cert. Order stated that Plaintiff's theory of predominance based on Defendant's written expense reimbursement policy in its FAQs is not supported by the evidence because 619 Class Members

---

[6] § 2699(f). Wherever the Labor Code gives the Labor and Workforce Development Agency discretion to assess a civil penalty, a court is authorized to exercise the same discretion. § 2699(e)(1).

received, on average, reimbursement for home internet expenses in the amount of $66.49 per month, an amount that could not be characterized as "incremental." Id. The Court also noted that not only is this amount more than "incremental" but appears to be more than what California law requires. Id.; *see Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014) (requiring reimbursement of only a "reasonable percentage" of home costs). Thus, the Court opined that Defendant likely did not violate § 2802 as to the 619 Class Members who received home internet reimbursement and that there may be no commonality in the context of a contested motion.[7] CJA Decl. ¶35.

Second, Defendant contended that individualized issues existed, and expenses were never "necessary" because Class Members were able to work at Defendant's offices if they chose to during the Class Period because Defendant's offices remained open and available. Id. ¶36. Further, Defendant argued that Class Member decisions about remote work were left to the discretion of each individual team director, all of whom were empowered to set guidelines and expectations regarding remote work. Accordingly, Defendant contended that working from home was not required and there was variation both across and within teams with respect to who went into the office and how often they did so. Id.

Some Courts have denied class certification where use of personal devices was optional or not "necessary" as Defendant contends here because Defendant's offices were open. *See Bowen v. Target Corp.*, 2021 U.S. Dist. LEXIS 203240, *24-25 (C.D. Cal. June 24, 2021) (denying motion for class certification of cell phone and internet expenses for employees who participated in voluntary BYOD program); *see also Dugan v. Ashley Furniture Indus.*, 2016 U.S. LEXIS 1879011, *9-10 (C.D. Cal. Nov. 29, 2016) (denying motion for class certification of cell and internet expenses for sales associates because they could use store phones for customer calls and whether there were insufficient landlines available at stores raised individualized issues); *Williams v. J.B. Hunt Transp.,* 2021 U.S. Dist. LEXIS 236269, *23-24 (C.D. Cal. Dec. 7, 2021) (denying motion for class certification because truck drivers on voluntary BYOD program could have used Peoplenet on the trucks); *Santillan v. Verizon Connect, Inc.* (S.D. Cal., June 13, 2022) 2022 WL 4596574, at *3-6 (denial of certification as to the class, even though no cell phone reimbursement was paid, because too many individual inquires existed with regard to the

---

[7] Rule 23 factors are analyzed less strenuously in the settlement context. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. at 619-20 (1997).

Case 3:22-cv-01892-VC    Document 61    Filed 06/08/23    Page 23 of 33

"necessity" of the expenses); *Moore v. Addus Healthcare, Inc.* (N.D. Cal. Mar. 17, 2021) 2021 WL 1022875, at *12 ("[t]o assess Plaintiff's reimbursement claim, the Court would need to engage in individualized inquiries regarding whether and why each employee used a personal cell phone for work, and whether that use was necessary…"); *cf, Richie v. Blue Shield Of Cal.*, 2014 U.S. Dist. LEXIS 170446, *66-70 (N.D. Cal. Dec. 9, 2014); *Stuart v. RadioShack Corp.*, 2009 U.S. Dist LEXIS 12337, *45-54 (N.D. Cal. Feb. 5, 2009); *Swamy v. Title Source, Inc.*, 2018 U.S. Dist. LEXIS 57048 (N.D. Cal. April 2, 2018); *Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1140, 1144-5 (2014).

Third, Defendant argued expenses were not "necessary." CJA Decl. ¶38. At least one Court has granted an employer's motion for summary judgment on the "necessary" prong of section 2802 claims holding that expenses are not "reasonable under the circumstances" when working from home was purely voluntary. *See Novak v. Boeing Co.*, 2011 U.S. Dist. LEXIS 83031 (C.D. Cal. July 20, 2011) ("granting defense MSJ on 2802 internet claims where work from home was completely optional and voluntary); *cf, Aguilar v. Zep, Inc.*, 2014 U.S. Dist. LEXIS 120315, *55-56 (N.D. Cal. Aug. 27, 2014) (denying defendant's MSJ and holding plaintiff should have been reimbursed under 2802 for cell phone and internet expenses because they used them "in direct consequence of the discharge of their duties"); *Williams v. J.B. Hunt Transp.*, 2022 U.S. Dist. LEXIS 56719, *36-39 (C.D. Cal. March 9, 2022) (denying defendant's MSJ on cell phone reimbursement claim for truck drivers because drivers were "encouraged" to use cell phone and "necessary" in the statute does not mean mandatory, but "reasonable under the circumstances"); *Nguyen v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 131710 (N.D. Cal. Sept. 26, 2016) (denying defendant's MSJ on 2802 claim for cost of various marketing materials used by loan officers, where such usage was purportedly "optional" but, in fact, "strongly encouraged").

Fourth, Defendant contended that individual issues would predominate for the additional reason that its employees were at liberty to determine, in conjunction with their managers, what to seek reimbursement for and in what amounts. CJA Decl. ¶39. Several Courts have denied certification based on a failure to show a uniform policy of non-reimbursement or where there are individualized issues based on variations in reimbursement practice. *See Gonzalez v. OfficeMax N. Am.*, 2014 WL 5473764, at *3-4 (C.D. Cal. Nov. 5, 2012) (denying certification because plaintiffs had not met burden of showing a uniform policy of non-reimbursement); *see also Morgan v. West Seal, Inc.*, 210 Cal. App. 4th 1341, 1358

NOTICE OF MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(2012) (denying certification where reimbursement practices varied and proving liability would require individualized inquires); *Wilson v. Kiewit Pac. Co.*, 2010 U.S. Dist. LEXIS 133304, at *15 (N.D. Cal. Dec. 6, 2010) ("evidence of one [employee] being informed that the [employer] did not reimburse [an expense] is not sufficient to demonstrate a widespread practice that supports class certification"); *Arroyo v. Int'l Paper Co.*, 17-CV_6211-BLF, 2019 WL 1508457, at *4 (N.D. Cal. Ap4. 4 2019) (no commonality as to non-reimbursement of uniforms where uniform requirement varied); *cf*, *Hopkins v, Stryker Sales Corp.*, 11-CV-2786-LHK, 2012 WL 1715091, at *4-5, *10 (N.D. Cal. May 14, 2012) (commonality satisfied where employer had uniform policy of using sales commissions to cover business expenses and class members had common duties and expenses).

Fifth, Defendant contended that Class Member remote work experience and expense reimbursement practices varied significantly. CJA Decl. ¶40. Specifically, many jobs required access to onsite equipment, while other jobs were more readily adaptable to remote work. Id. Further, many Class Members worked from home as a matter of preference, some employees worked from other places other than their homes for extended periods of time, including outside of California, and many employees shared internet connections with other household members and/or had home internet expenses that were "bundled" with other expenses. Id. Plaintiff realized the aforementioned factors as to specific Class Member remote work experiences could dramatically decrease any potential damages. Id.

Sixth, Plaintiff understood the very real risk of losing on the merits. CJA Decl. ¶41. At the hearing on Plaintiff's Class Cert. Motion, the Court made it clear that succeeding on the merits was anything but a sure thing. Id. The Court noted, "…I have to say that I'm struggling a little bit with the merits of your claim. If – if somebody worked from home using Internet that they already had at home and they didn't have to pay anything more for their Internet, they didn't have to upgrade, whatever, how is that an expense at all that needs reimbursing…And how has the employee incurred an expenditure or loss when they work from – at least the standpoint of using Internet – from their home when they're working from home?" See Transcript of Proceedings (the "Class Cert. Transcript") [Dkt No. 51], pp. 3-4, lines 23-25; 1-14. Therefore, the Court made it clear that it may not follow the reasoning in *Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137 (2014). CJA Decl. ¶41. Further, the Court questioned whether the *Cochran* decision, which specifically discussed cell phone expenses applied

equally to home internet expenses [Dkt No. 51] p. 6, line 3-5. ("I do wonder if there could maybe be a difference between cell phone use and Internet use."). CJA Decl. ¶41. Seventh, even if Plaintiff were to prevail, Defendant was only required to reimburse a "reasonable percentage of work-related usage," which is likely only $13.77 per month (i.e., 22.22% (160 / 720) * $62 per month).[8] CJA Decl. ¶41.

Lastly, Defendant contended that under Labor Code § 2699(e)(2), the Court would likely award a modest amount rather than the maximum civil penalty specified under PAGA to avoid "an award that is unjust, arbitrary and oppressive or confiscatory." Courts often exercise their discretion to reduce the amount of PAGA penalties awarded to as little as $5.00 per pay period or 18% of the available PAGA penalties.[9] CJA Decl. ¶42. Furthermore, in *Gola v. University of San Francisco*, San Francisco Superior Court Case No. CGC-18-5655018, Proposed Statement of Decision, dated July 21, 2020, Judge Curtis Karnow of San Francisco Superior Complex concluded (after a full-blown bench trial) that a penalty of 15% of the maximum PAGA penalties was appropriate. Recently *Gola* was affirmed by the Court of Appeal. *See Gola v. University of San Francisco*, 2023 Cal. App. LEXIS 281 (April 13, 2023). Here, Plaintiff believed that the Court would be unlikely to award any significant PAGA penalties due to the circumstances surrounding this action, namely, that this case has risen (as the Court noted during the initial case management conference) because of a once-in-a-hundred-year pandemic. CJA Decl. ¶42.

F.    **Fair Valuation of Plaintiff's Claims**

The settlement is the product of extensive and intensive arms' length direct settlement negotiations. CJA Decl., ¶43. Though cordial and professional, the settlement negotiations were adversarial and non-collusive in nature. Id. The settlement reached is the product of substantial effort by the parties and their counsel. Id. Although Plaintiff and his counsel believed that there was a strong possibility of certifying the claims on a renewed motion, they recognized the potential risk, expense, and complexity posed by litigation, such as further unfavorable decisions on class certification, summary judgment, at trial and/or on the damages awarded, and/or on an appeal that can take several

---

[8] Defendant's expert opined that home internet costs no more than $50 per month.
[9] *See e.g., Carrington v. Starbucks Corp., et al.*, San Diego Superior Court Case No. 37-2014-00018637-CU-OE-CTL (Apr. 3, 2017) (holding plaintiff was only entitled to collect reduced penalty amount of $5 for each pay period a meal period violation occurred or 5% of the PAGA penalties); *Fleming v. Covidien, Inc.* (C.D. Cal. Aug. 12, 2011) 2011 WL 7563047, at *4 (reducing PAGA penalties by 82%).

more years to litigate. Id. The resulting Settlement was based on calculations, risk assessment, and non-collusive negotiation; it takes the risks identified above and others into account in arriving at the settlement amount of $950,000. Id.

Plaintiff's counsel calculated Defendant's realistic, risk-adjusted exposure as follows: The class consists of 6,937 individuals who collectively worked a total of 136,430 months during the Class Period. Id. ¶45. Of the 6,937 individuals, Defendant has already reimbursed 619 employees at the rate of approximately $66.49 per month. Id. After removing all months that the 619 employees were already reimbursed, the total months at issue equals 125,388. Id. Additionally, a further reduction in months is appropriate for those individuals who routinely worked in Defendant's offices, including lab engineers, facilities management employees, and hardware employees and for those employees who worked outside of California. Id. This equated to another 10% reduction in the total months at issue leaving a final tally of approximately 112,850 total months at issue. Id.

The Parties have presented conflicting evidence on the costs of monthly home internet. Id. ¶46. Plaintiff's expert's survey reveals a number figure of approximately $69.51, Defendant's reimbursement data also reveals a figure of approximately $66.49, but Defendant has also presented expert evidence that $50.00 is the average cost of monthly home internet, which is consistent with Plaintiff's home internet plan during the Class Period. Id. The blended average between the three figures gave Plaintiff's counsel an average cost of home internet of $62.00 per month. Id.

*Cochran* provides that only a "reasonable percentage of work related usage" must be reimbursed, and this Court has already opined that Defendant over-reimbursed those individuals who submitted requests for their full home internet reimbursement under *Cochran*. Id. ¶47. Therefore, either $31.00 per month (equating to 50% of the average monthly home internet bill, i.e., half of the waking time internet usage is likely work-related); $20.66 per month (equating to one-third of the average monthly home internet bill in a 24-hour day, roughly one-third is for work); or $13.77 per month (equating to 22.22% of the average monthly home internet bill, based on 160 work hours per month / 720 hours per month), would be appropriate if Plaintiff were to prevail, excluding PAGA penalties. Id. The blended average between these three possibilities is $21.81 per month. Id. The $21.81 per month figure assumes that Plaintiff will win both on class certification and on the merits, despite this Court

expressing skepticism as to certification and the merits, particularly when Defendant's offices were open, which was for all months except the initial two months of the pandemic. Id. ¶48. Further, at the hearing on Defendant's MTD, this Court noted that it would not award significant PAGA penalties. Id.

Therefore, based on the totality of the circumstances, Plaintiff views his chances of certification as being 50/50, and his chances of succeeding on the merits for all months as also being 50/50. Id. ¶49. Accordingly, for settlement purposes, Plaintiff assumes a 50% risk on class certification (against the $21.81 per month figure), and another 50% risk for losing on the merits. Id. This takes the reasonable settlement value down to $5.45 per month. Id. Based on 136,430 months at issue, Defendant's exposure under Labor Code section 2802, based on Class Members' "reasonable percentage of work-related usage" is $743,543.50, excluding PAGA penalties. *Id.*

While the Court expressed skepticism in awarding significant PAGA penalties, Plaintiff calculated Defendant's maximum exposure for PAGA penalties at $13,643,200 (136,430 pay periods[10] * $100 penalty[11]), however, this figure is not a realistic outcome. Id. ¶50. As noted earlier, Courts routinely significantly reduce PAGA penalties as San Francisco Superior Court Judge Karnow did in *Gola*, a decision recently affirmed by the Court of Appeal. *See Gola v. University of San Francisco*, 2023 Cal. App. LEXIS 281 (April 13, 2023). Therefore, Plaintiff discounted the maximum PAGA penalties by 85% to $2,046,450. CJA Decl. ¶50. Further, given the Court's expressed skepticism about PAGA penalties given that this case arose as a result of a once-in-hundred-year pandemic, Plaintiff believes that this Court would likely award penalties (at most) in the range of approximately $5 per pay period, like *Carrington* (see footnote 9). Id. Lastly, the same 50% risk for losing on the merits on Plaintiff's § 2802 claim is applicable here on Plaintiff's derivative PAGA penalty claim which lowers Plaintiff's risk-adjusted exposure calculation for PAGA penalties to $341,075. Id. Further, since the California Court of Appeals are split on whether PAGA trials need to be manageable, there is a further 50% risk that a PAGA trial might be deemed unmanageable lower the risk-adjusted exposure for PAGA

---

[10] Plaintiff is using monthly pay periods for his PAGA penalties calculation because home internet bills are issued monthly so any violation of Labor Code § 2802 would have only occurred monthly.

[11] A Court is unlikely to award full PAGA penalties. *See, Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008); *see also, Bernstein v. Virgin America Inc.*, 2021 U.S. App. LEXIS 5197 (Feb. 23, 2021) (employer was not notified by Labor Commissioner or any court that it was subject to the Labor Code until it lost summary judgment and thus heightened penalties could not apply until then).

penalties to $170,537.50. Id. Specifically, Amazon argued that a PAGA trial would not be manageable because, other than the initial two months of the pandemic, Amazon's offices were open, and it was up to individuals to decide whether to go in or work from home, along with their managers, and this would create individualized issues as to whether home internet expenses were "necessary." Id.

The chart below summarizes the potential class recovery if Plaintiff fully prevailed on each of his claims (assuming the Court would award the full $100 PAGA penalty) as well as the risk-adjusted class recovery, taking discounts for Defendant's arguments on certification and the merits:

| Cause of Action | Potential Maximum Recovery | Realistic, Risk Adjusted Recovery |
|---|---|---|
| Unreimbursed Home Internet Expenses | $2,975,538.30 | $743,543.50 |
| PAGA Penalties | $13,643,000.00 | $170,537.50 |
| **TOTAL** | **$16,618,538.30** | **$914,081.00** |

Therefore, Defendant's realistic, risk-adjusted exposure is calculated at **$914,081.00**. Id. ¶51. Considering the listed risk factors, including the risk of the Court denying certification and the Court's skepticism as to Plaintiff's claims on the merits, the non-reversionary GSA of $950,000.00 is a fair, reasonable, and adequate compromise of the Class's claims. Id.

**G.    The Parties Investigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair and Reasonable.**

The parties engaged in a significant exchange of formal discovery and litigation relating to Class Members' claims as detailed above. Based upon the record that was developed through this investigation and discovery process Plaintiff's Counsel was able to realistically estimate class damages and assess the risks of further litigation. CJA Decl. ¶52. The settlement was reached after extensive formal written discovery, expert discovery, fifteen depositions, and an exchange of other information required to evaluate the claims at issue. Id. This litigation, therefore, has reached the stage where the parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. See *Lewis v. Starbucks Corp*., No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

//

//

**H.**    **The Settlement was the Product of Informed, Non-Collusive, and Arms'-Length Negotiations Between Experienced Counsel Who Jointly Support the Settlement.**

Courts routinely presume a settlement is fair where it is reached through arms-length bargaining, as it was here. See *Hanlon*, 150 F.3d at 1027. As the United States Supreme Court has held, "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms- length bargaining…" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

Here, the Settlement was a product of intensive, adversarial litigation between the parties. CJA Decl. ¶¶16-27. The settlement was reached after extensive formal written discovery, expert discovery, fifteen depositions, and an exchange of other information required to evaluate the claims at issue. Id. ¶52. In addition, the parties are represented by skilled and experienced counsel with extensive backgrounds in complex litigation and experience litigating and settling similar wage and hour class actions. Id. ¶¶4-12; Klugman Decl. ¶¶3-6. The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

Plaintiff's counsel believes that this settlement is fair, adequate, and reasonable, in the best interests of the Class, and should be preliminarily approved. CJA Decl., ¶13. If approved by the Court, the 6,937 Class Members will enjoy substantial monetary recovery amounting to an average recovery per class member of $136.94[12] on a gross basis and $71.71[13] on a net basis. Id. ¶55.

**I.**    **The Proposed Class Notice and Notice Plan is Adequate**

Fed. R. Civ. P. 23 (c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on

---

[12] $950,000 GSA / 6,937 Class Members = $136.94 average gross individual settlement payment.
[13] $497,500 NSA / 6,937 Class Members = $71.71 average net individual settlement payment.

class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process and Fed. R. Civ. P. 23. The Class Notice has been carefully written in plain English, is easily understandable, and includes, *inter alia*: (1) contact information for Class Counsel to answer questions; (2) the address for a website maintained by the Settlement Administrator that lists key deadlines and has links to the notice, preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in this case; (3) instructions on how to access the case docket via PACER or in person at any of the Court's locations; (4) the date and time of the final approval hearing (and clearly states that the date may change without further notice to the Class); and (5) a notice to advise Class Members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. Further, the Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement and tells them that if they do not request to be excluded, the judgment will be binding upon them. The Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. The Proposed Class Notice is adequate to put Class Members on notice of the Settlement Agreement.

The notice distribution plan complies with Fed. R. Civ. P. 23(c)(2) because the Class Notices will be sent by U.S. mail, Defendant has the last known addresses for Class Members, and the settlement administrator will run all addresses through the National Change of Address database and perform a skip-trace on all Class Notices returned as undeliverable. The Parties do not believe that use of text messages and social media or hiring a marketing specialist is necessary in this case to increase notice to Class Members. In consumer class actions, Class Members are often difficult to locate, and publication and social media are often useful tools for locating Class Members. However, in wage and hour class actions, defendants typically have access to Class Member last known addresses, which is the case here. Further, the notice envelope will be designed to enhance the chance it will be opened, and the Class Notice includes all suggested language for inclusion in class notices as recommend by the Northern District's Procedural Guidance for Class Action Settlements. Therefore, the Class Notice and notice distribution plan provide the best notice that is practicable under the circumstance.

**J.      The Requested Service Award is Reasonable.**

Plaintiff requests a Service Award in an amount of $20,000, to recognize his time and efforts on behalf of the Class, including responding to discovery, sitting for a deposition, providing detailed statistical analysis in his Class Cert. Motion declaration, time spent in meetings with Class Counsel discussing litigation and settlement strategy, and his acceptance of the financial risk in pursuing this litigation. CJA Decl. ¶¶56-59; DGW Decl. ¶5. Plaintiff is a high-income earner (over $300,000 base salary at Amazon plus stock options) and has signed a general release that is broader than the Class.[14] The requested Service Award falls within the range of incentive payments typically awarded to Class Representatives in wage and hour class actions in this Court. *See Walton v. AT&T Servs.*, 2018 U.S. Dist. LEXIS 245928, *8 (N.D. Cal. Feb. 14, 2018) ("[a]ward of $20,000 each to Mr. Walton and Mr. Mantonya for their services as Class Representatives . . . is fair and reasonable."); *Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 U.S. Dist. LEXIS 193096, *7 (N.D. Cal. Aug. 21, 2015) ("The requested class representative service payments of $27,000 to Mr. Vargas, $25,000 to Mr. Galeener, $15,000 for Mr. Hamer…for their services as Class Representatives . . . is fair and reasonable"). Further, neither the size nor any conditions placed on the service award undermines the adequacy of Plaintiff. Unused funds allocated to the service award will be distributed pro rata to participating Class Members.

**K.      The Requested Attorneys' Fees and Costs Are Reasonable.**

Plaintiff's counsel will request a Class Counsel Fees Payment of up to $285,000 (*i.e.*, up to 30% of the GSA) and litigation expenses of up to an additional $85,000.[15] S.A. ¶1.4. Where counsel to a class action seek fees from the common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). In similar class action cases, numerous California federal courts have approved fees at 1/3 of the common fund, including this Court. See *e.g., Martin v. FedEx Ground Package System, Inc.*, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (district court approved attorneys' fees of 1/3 of common fund); *Stuart v.*

---

[14] Plaintiff had a potential national origin discrimination claim that Amazon favored Indian employees in his department.

[15] These costs include over $40,000 in expert costs. See CJA Decl., Exhibit C.

*RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (approving fee award of 1/3 of the settlement noting that the fee award of 1/3 of the settlement was "well within the range of percentages which courts have upheld as reasonable in other class actions"); *Wilson v. Kiewit Pacific Co.*, No. 09-cv-03630, ECF No. 119 (N.D. Cal. 2012) (approving fee award of 1/3 of the common fund and noting that such award is fair, reasonable and appropriate); *Walton v. AT&T Servs.*, 2018 U.S. Dist. LEXIS 245928, *11 (N.D. Cal. Feb. 14, 2018) ("This fee is 35% of the total fund, which is consistent with the Ninth Circuit's 25% benchmark for megafund class action settlement of $50-200 million, recognizing that the benchmark is typically adjusted downward for larger cases and upward for smaller cases…The Court hereby gives final approval to and orders that the payment of that amount be made to Class Counsel and out of the Gross Fund Value.").

Class Counsel's total lodestar to date amounts to $782,690.60. Accordingly, Class Counsel will not be requesting a lodestar multiplier. (*See* CJA Decl. ¶63: 1,014.61 hours at $680,840.60 lodestar for Ackermann & Tilajef, P.C.; Klugman Decl. ¶8: 203.7 hours at $101,850.00 lodestar for Joshua Klugman, Esq.). The lodestar figure to date does not include the additional hours our firm anticipates spending between now and the conclusion of this matter, including preparing for, and appearing the preliminary approval hearing, corresponding with the settlement administrator and opposing counsel throughout the notice process, drafting the motion for attorneys' fees and costs, drafting the motion for final approval, corresponding with Plaintiff, and other typical and reasonably necessary tasks that arise post-final approval. CJA Decl. ¶64. Litigation costs of up to $85,000 are also reasonable. To date, Class Counsel has incurred $83,024.01 in litigation costs in connection with this case, including expert costs. CJA Decl. ¶67. All these costs were and are reasonably necessary for the successful prosecution of this action. Class counsel will submit updated lodestar and costs breakdowns with the motion for attorneys' fees and reimbursement of litigation costs to be filed before the expiration of the notice deadline. Unused funds allocated to attorneys' fees will be distributed pro rata to participating Class Members.

**L.    The Proposed Settlement Administrator**

The Parties obtained multiple bids for settlement administration and propose ILYM as the settlement administrator. The bids obtained by the Parties are summarized in CJA Decl. ¶70. ILYM is experienced in administering class action settlements, and its fees are not to exceed $40,000.00. See

CJA Decl. **Exhibit D**. The cost of settlement administration will be deducted from the GSA. If administration costs are below $50,000.00, the difference will be added to the NSA to be distributed to Class Participants. A summary of the Parties' selection of ILYM is included in CJA Decl. ¶¶69-70, but notably, ILYM's bid came in lower than competing bids and the Parties believe that ILYM has a strong reputation in the community as a reliable and competent settlement administrator. CJA Decl. ¶70.

The settlement administrator's procedures for securely handling class member data, the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, and the reasonableness of those costs in relation to the value of the settlement are included in the Declaration of Kimberly Sutherland in Support of Plaintiff's Motion for Order Granting Preliminary Approval of Class Action Settlement.

## V.    <u>CONCLUSION</u>

Plaintiff's motion for preliminary approval of the parties' class action settlement should be granted.


Dated: June 8, 2023                              ACKERMAN & TILAJEF, P.C.
                                                 JOSHUA KLUGMAN, ESQ.

                                                 _/s/ Craig J. Ackermann_____
                                                 Craig J. Ackermann, Esq.
                                                 Joshua Klugman, Esq.

                                                 Counsel for Plaintiff and
                                                 the Settlement Class