**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann (SBN 229832)
cja@ackermanntilajef.com
Avi Kreitenberg (SBN 266571)
ak@ackermanntilajef.com
Brian Denlinger (admitted *pro hac vice*)
bd@ackermanntilajef.com
315 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

**JOSHUA KLUGMAN, ESQ.**
Joshua Klugman (SBN 236905)
esquirejosh@yahoo.com
9538 Pico Boulevard, Suite 200
Los Angeles, California 90035
Phone: (424) 248-5148

Attorneys for Plaintiff and the Putative Class

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID GEORGE WILLIAMS, an individual, on behalf of the State of California, as a private attorney general, and on behalf of all Aggrieved Employees<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company; and DOES 1 TO 50,<br><br>Defendants. | CASE NO.: 3:22-CV-01892-VC<br><br>**NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Honorable Vince Chhabria<br>Dept.: Courtroom 5<br>Hearing Date: January 18, 2024<br>Time: 1:00 p.m.<br><br>Action Filed: March 18, 2021<br>FAC Filed: May 5, 2021<br>SAC Filed: March 8, 2022<br>Removal Date: March 24, 2022<br>TAC Filed: June 21, 2022 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on January 18, 2024 at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, Plaintiff DAVID GEORGE WILLIAMS ("Plaintiff") individually and on behalf of all others similarly situated, will and does hereby move this Court for entry of an order finally approving the class action settlement pursuant to Fed. R. Civ. P. 23 (e), including:

1.      Finally certifying the Class, as defined in the parties' Revised Settlement Agreement and Release of Class Action ("Settlement Agreement"), for purposes of settlement only;

2.      Finally confirming Plaintiff as the Class Representative for purposes of settlement;

3.      Finally confirming Craig J. Ackermann, Avi Kreitenberg, and Brian Denlinger of Ackermann & Tilajef, P.C., and Joshua Klugman of Joshua Klugman, Esq., as Class Counsel for purposes of settlement;

4.      Finding that notice of the settlement was properly provided to the Class in accordance with the Court's Preliminary Approval Order;

5.      Finally approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the Settlement Agreement, including each of the following allocations thereunder:

   a.   payment by Defendant of the non-reversionary Settlement Sum of $**950,000.00**;

   b.   $**30,000.00** of the settlement sum as PAGA penalties, with 75% of that amount ($**22,500.00**) payable to the Labor & Workforce Development Agency for its portion of the penalties;

   c.   $**40,000.00** of the settlement sum to ILYM Group, Inc., the Settlement Administrator, as a fee for administering the Settlement;

   d.   $**20,000** of the settlement sum to the Plaintiff as an enhancement/service award;

   e.   An award of $**285,000.00** in attorneys' fees and $**83,499.91**[1] in litigation costs from the Settlement Sum for the reasons set forth in Plaintiff's separately filed Motion for Attorneys' Fees and Costs.

---

[1]  The Settlement Agreement provides for litigation cost reimbursement of $85,000, which was preliminarily approved by this Court and noticed to the Class without objection, but Class Counsel is only

6.      Binding all participating Class Members to the terms of the Settlement Agreement, including the Release specified therein.

This motion is based upon the supporting Memorandum of Points and Authorities, the Declarations of Cassandra Polites of ILYM Group, Inc., Craig Ackermann, Joshua Klugman, and David George Williams submitted herewith and in connection with Plaintiff's Motion for Attorneys' Fees and Costs, Plaintiff's Motion For Preliminary Approval of Class Action Settlement, Plaintiff's Motion For Attorneys' Fees and Costs and supporting declarations, all other papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing on this Motion.[2]

Respectfully submitted,

ACKERMANN & TILAJEF, P.C.
JOSHUA KLUGMAN, ESQ.

Dated: December 21, 2023    By:        _/s/Craig J. Ackermann_____
                                    Craig J. Ackermann, Esq.
                                    Attorneys for Plaintiff and the Class

---

seeking litigation cost reimbursement in the amount of their actual litigation costs incurred with the balance to be added to the Net Settlement and distributed pro rata to the participating Class Members.

[2] In accordance with the Honorable Judge Chhabria's Civil Standing Order, the Parties have filed a proposed judgment separately from the proposed order granting final approval; have proposed a 10% withholding of the attorneys' fees to be granted; and the proposed order granting final approval includes language describing the Post-Distribution Accounting.

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................6

II.     RELEVANT FACTUAL BACKGROUND.................................................................8

    A.      Summary of Relevant Facts & Procedural History..........................................8

    B.      The Terms of the Preliminary Approval Order Have Been Satisfied.................9

III.    THE CLASS WAS GIVEN THE BEST POSSIBLE NOTICE OF THE SETTLEMENT..........11

IV.     THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED..........13

    A.      The Settlement Satisfies the Requirements of Fed. R. Civ. P. 23....................13

    B.      The Settlement is Fair, Reasonable and Adequate...........................................13

    C.      Strengths of Plaintiff's Case and Risks of Litigation......................................14

    D.      Amount Offered in Settlement........................................................................16

    E.      The Extent of Discovery Completed and the Stage of Proceedings .................17

    F.      Experience and Views of Counsel ..................................................................17

    G.      Class Members Unanimously Endorse the Settlement .....................................18

V.      PLAINTIFF'S REQUESTED INCENTIVE AWARD IS REASONABLE .................18

VI.     THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE .......20

VII.    CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Zep, Inc.*, 2014 U.S. Dist. LEXIS 120315, *55-56 (N.D. Cal. Aug. 27, 2014) ........................15

*Bowen v. Target Corp.*, 2021 U.S. Dist. LEXIS 203240, *24-25 (C.D. Cal. June 24, 2021) ...................14

*Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380, 1381 (Cal.App. June 28, 2010)....................19

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268, 1291 (9th Cir. 1992) ......................................................................................................18

*Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014) ............................11, 14

*Dugan v. Ashley Furniture Indus.*, 2016 U.S. LEXIS 1879011, *9-10 (C.D. Cal. Nov. 29, 2016) ..........15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) ................................................................12

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981)
    ................................................................................................................................................................17

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8
    (N.D. Cal. Apr. 22, 2010) ......................................................................................................................20

*Gonzalez v. OfficeMax N. Am.*, 2014 WL 5473764, at *3-4 (C.D. Cal. Nov. 5, 2012)............................15

*In re Heritage Bond Litig.,*
    Case No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................................13

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18
    (S.D. Cal. Oct. 6, 2008) .........................................................................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)..................................................12

*Patel v. Axesstel Inc.,*
    No. 3:14-cv-1037-CAB-BGS, 2015 U.S. Dist. LEXIS 146949 (S.D. Cal. Oct 23, 2015) ....................18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)................................................................12

*Rannis v. Recchia*, 380 Fed.Appx. 646, 650 (9th Cir. 2010) ....................................................................12

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ..................................................................................................................13

*Silber v.Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)................................................................................12

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ..................................................................................................................13

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) .........................................................................18

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)....................................................19

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010).........................................20

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## Statutes

Federal Rules of Civil Procedure, Rule 23 ...........................................................................6, 11, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff DAVID GEORGE WILLIAMS ("Plaintiff") seeks an order finally approving a wage-and-hour class action Settlement between Plaintiff and AMAZON.COM SERVICES LLC ("Defendant"), brought on behalf of a "Class" defined as: *Plaintiff and all other California residents who are or were employed by Defendant, based at one of Amazon's nine California office locations (SJC3, SJC15, SFO10, SFO13, MRY11, SBP10, LAX10, SJC11, and SNA3), who worked remotely for at least one pay period during the Class Period, and who were assigned a registered USB security key and a Midway Pin by Defendant, and who neither received some amount of home Internet expense reimbursement for each month of their employment during the Class Period nor testified that they had been reimbursed at least a reasonable portion of their home internet expenses during the Class Period.* The Class Period is defined as the period from March 15, 2020 through July 1, 2022. In this case, Plaintiff alleged Defendant failed to reimburse Plaintiff and Class Members for a reasonable portion of their home internet expenses incurred while working from home during the COVID-19 pandemic.

The Settlement Agreement [Dkt. 68-1], which was granted preliminary approval by the Court in its July 28, 2023 Second Revised Order Granting Preliminary Approval of Class Action Settlement [Dkt. 69] (the "PA Order"), contemplates a non-reversionary gross settlement sum of **$950,000.00** for a Class of **6,873**[3] individuals. Since there were ***only 19 opt-outs*** and ***no objections*** to the Settlement, following distribution of the Class Notice to the Class, if the Court grants final approval, each participating Class member will receive a pro-rata share of the Net Settlement Amount, which is calculated as follows:[4]

*[table on following page]*

---

[3] The 6,873 figure is the total number of Class Members after deducting the nineteen individuals who requested exclusion and one duplicate Class Member.
[4] *See* Declaration of Cassandra Polites of ILYM Group, Inc. in Support of Motion for Final Approval of Class Action Settlement ("Polites Decl."), ¶ 15.

| | Amount |
|---|---|
| **Gross Settlement Amount ("GSA")** | **$950,000.00** |
| Attorney's Fees (30% of the GSA) | $(285,000.00) |
| Litigation Costs | $(83,499.91[5]) |
| Plaintiff's Incentive Award | $(20,000.00) |
| PAGA Payment (75% to the LWDA) | $(22,500.00) |
| Settlement Administration Costs | $(40,000.00) |
| **Net Settlement Amount** | **$499,000.09** |

This is a good Settlement, particularly given the substantial litigation risks entailed here as detailed in Plaintiff's motion for preliminary approval and Plaintiff's motion for attorneys' fees and costs, and where as here, the Court denied Plaintiff's motion for class certificatoin without prejudice [Dkt. 54] and expressed doubts as to Plaintiff's case on the merits and on the likely award of significant PAGA penalties, and the various challenges and costs to both sides were the case to proceed to trial. The Settlement provides an average net payment of **$78.03** per participating Class Member and a maximum net payment of **$117.80**. (Polites Decl., ¶ 16). Further, as detailed in Plaintiff's motion for preliminary approval, the settlement is equivalent to the value of Defendant's approximate realistic, risk-adjusted exposure. (CJA PAM Decl., ¶ 51).

Following a comprehensive notice process, the response of the Class has also been overwhelmingly positive with ***only 19 Class Members opting out of the Settlement and not a single Class Member objecting to the Settlement***, which further confirms the Court's finding that the Settlement appears to be fair, adequate and reasonable to the Class. (Polities Decl. at ¶¶ 11, 13). As a result, if the Court now grants final approval, 99.72% of the Class will participate in the Settlement. The Settlement is the product of arm's-length and good faith negotiations by experienced counsel. As there were no objections, and because the Settlement is fair, reasonable, and in the best interests of the Class, there is truly no reason it should not be finally approved.

//

//

---

[5] Plaintiff's Counsel is only requesting reimbursement of actual litigation costs incurred in the amount of $83,499.91, less than the amount contemplated by the Settlement Agreement, preliminarily approved by this Court. and noticed to the Class without objection.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Summary of Relevant Facts & Procedural History

Plaintiff set forth a detailed account of all relevant facts, claims, and defenses in his Motion for Preliminary Approval of Class Action Settlement [Dkt. 61] ("PAM") up to the time of its filing. Plaintiff incorporates those facts herein by reference. (*See* PAM § II and referenced declarations).

On March 18, 2021, Plaintiff filed his PAGA representative action complaint in Santa Cruz County Superior Court, Case No. 21CV00718, alleging a single cause of action for PAGA penalties based on Defendant's violations of Labor Code section 2802. Ackermann PAM Decl. [Doc. 61-1] ¶ 17. On May 5, 2021, Plaintiff filed his first amended PAGA complaint. *Id.* On June 4, 2021, Defendant filed its demurrer to Plaintiff's first amended PAGA complaint (the "Demurrer") [Dkt No. 1-2, Exhibit F] and its motion to strike portions of Plaintiff's first amended complaint (the "MTS") [Dkt No. 1-2, Exhibit G]. *Id.* ¶ 18. On August 11, 2021, Defendant's Demurrer was overruled, and Defendant's MTS was denied [Dkt No. 1-2, Exhibit Q]. *Id.* Thereafter, the Parties stipulated to the filing of Plaintiff's second amended complaint adding two additional causes of action on behalf of himself and a class of similarly situated individuals for: (1) failure to reimburse business expenses in violation of Labor Code section 2802; and (2) UCL violations based on the foregoing pursuant to Cal. Bus. & Prof. Code sections 17200-17204. Plaintiff's second amended class and PAGA representative action complaint was filed on March 8, 2022 (the "SAC") [Dkt No. 1-2, Exhibit U]. *Id.* ¶ 19.

On March 24, 2022, Defendant removed the case to the United States District Court, Northern District of California [Dkt No. 1]. *Id.* ¶ 20. On March 31, 2022, Defendant filed its motion to dismiss Plaintiff's second amended class and PAGA representative action complaint (the "MTD") [Dkt No. 14]. *Id.* ¶ 21. On June 1, 2022, the Court issued an Order Granting in Part and Denying in Part Motion to Dismiss (the "MTD Order") [Dkt No. 25]. *Id.* Thereafter, on June 21, 2022, Plaintiff filed the operative third amended class and PAGA representative action complaint (the "TAC"), removing Plaintiff's UCL claim and revising the Class Member and PAGA Member definitions, among other changes [Dkt. No. 35]. *Id.* Thereafter, the Parties engaged in significant formal discovery leading up to the filing of Plaintiff's

motion for class certification. *Id.* ¶ 22.[6] On November 9, 2022, Plaintiff filed his motion for class certification (the "Class Cert. Motion") [Dkt No. 40], which included Plaintiff's arguments in support of certification and Plaintiff's expert's survey findings. *Id.* ¶ 25. On March 7, 2023, the Court issued its Order Denying Motion for Class Certification (the "Class Cert. Order") [Dkt No. 54]. *Id.* ¶ 26. The Court denied certification without prejudice and invited Plaintiff's counsel to file a renewed motion for class certification. *Id.* In the weeks following the Court's Class Cert. Order, the Parties engaged in arms' length and non-collusive direct settlement negotiations via email and telephone correspondence. The direct settlement negotiations resulted in the resolution of the case on a class-wide basis and the Parties memorialized the agreement into a Memorandum of Understanding ("MOU"). In the weeks that followed, the Parties drafted and executed the long form Settlement Agreement. *Id.* ¶ 27.

Plaintiff subsequently moved for preliminary approval of the Settlement. After several rounds of supplemental briefing by Class Counsel on June 28, 2023 [Dkt. 63], July 20, 2023 [Dkt. 66], and July 26, 2023 [Dkt. 68], including the submission of a revised Settlement Agreement [Dkt. 68-1], on July 28, 2023, the Court entered the PA Order [Doc. 69], finding, among other things, that "the settlement set forth in the Settlement Agreement and Supplemental Brief appears to be fair, reasonable, and adequate to the Class" and "the settlement falls within the range of reasonableness and appears to be presumptive valid, subject only to any objections that may be raised at the final fairness hearing and final approval by this Court." PA Order, ¶¶ 2-3.

B.    **The Terms of the Preliminary Approval Order Have Been Satisfied**

The Court approved and appointed ILYM Group, Inc. ("ILYM") to serve as the Settlement Administrator for this case. (PA Order, ¶ 9). ILYM has been and will be responsible for, among other things: (a) printing and mailing the Class Notice; (b) receiving and processing requests for exclusion; (c)

---

[6] The formal discovery consisted of each side sending and responding to several sets of written discovery including requests for admissions, requests for production of documents, and special interrogatories. Plaintiff also took the deposition of two of Defendant's 30(b)(6) designees and Defendant took the deposition of Plaintiff. Further, Plaintiff hired an expert to disseminate a survey to putative Class Members to conduct research on Class Member work-related home internet use during the Class Period. Defendant hired experts to testify regarding qualitative and quantitative research, including statistical and other analysis of datasets relating to reimbursement and work habits during the Class Period, including but not limited to rebuttal of any opinions offered by Plaintiff's expert. Plaintiff then deposed both of Defendant's experts and Defendant deposed Plaintiff's expert. Ackermann PAM Decl., ¶¶ 22-24.

resolving Settlement Class Members' disputes over the number of months Defendant has records of them working during the Class Period, which was pre-printed on their individualized Class Notice; (d) calculating individual settlement award amounts; (e) processing and mailing settlement award checks; (f) handling tax withholdings as required by the Settlement and the law; (g) preparing, issuing and filing tax returns and other applicable tax forms; (h) handling the distribution of any unclaimed funds pursuant to the terms of the Settlement; and (i) performing other tasks as the Parties mutually agree to and/or the Court orders ILYM Group to perform. (Polites Decl, ¶ 3).

On August 17, 2023, ILYM received a data file from Counsel containing the Class List information for the purpose of mailing the Class Notice to Class Members. The initial mailing list contained 6,892 Class Members. (*Id.*, ¶ 5). ILYM caused a National Change of Address (NCOA) database search to be performed in an attempt to update the addresses on the class list and ensure it was as accurate as possible. A search of this database provides updated addresses for any individual who had moved in the previous four years and notified the U.S. Postal Service of their change of address. (*Id.*, ¶ 6).

On September 14, 2023, the Notice Packet was mailed via U.S. first class mail to all 6,892 Class Members. (*Id.*, ¶ 7). 150 Notice Packets were returned to ILYM by the U.S. Postal Service, 8 of which were provided a new address by the Post Office and promptly re-mailed to the forwarding addresses provided.  For the remaining 142 Notice Packets, ILYM performed a computerized skip trace to locate a better address.  As a result, 71 updated addresses were obtained and the Class Notices were promptly re-mailed to those Settlement Class Members via U.S. First Class Mail. Ultimately, 71 Class Member's Notices were undeliverable because ILYM was unable to locate a current address. (*Id.*, ¶ 10).

The "Response Deadline" for Class Members to submit any responses to the Settlement, including objections, requests for exclusion, or disputes, expired on October 30, 2023. The response from the Class after distribution of the Notice is overwhelmingly positive:

> ➢ Following the expiration of the time to opt out or object, ***not a single Class Member objected to the Settlement or the fees allocation***. (*Id.*, ¶ 13).

> ➢ Following the expiration of the time to opt out or object, ***only 19 Class Members opted out of the Settlement***, resulting in an astounding 99.72% Class participation rate. (*Id.*, ¶ 11).

> ➢ If the Court grants final approval, all **6,873** participating Class Members who did not submit a

timely and valid Request for Exclusion will thus be mailed their pro-rata share of the Net Settlement Amount. (*Id.*, ¶ 15).

➢ If the Court grants final approval, the *average* net settlement share to be paid to the participating Class Members is estimated to be **$78.03**, while the *maximum* net settlement share to be paid to the participating Class Members is estimated to be **$117.80**. (*Id.*, ¶ 16).[7]

Plaintiff, through the Settlement Administrator, has thus duly provided notice of the Settlement to the Class in full compliance with the Court's PA Order and the Settlement. The positive response of the Class to the Notice not only confirms the Court's findings of fairness in the PA Order, but also amply supports the Court proceeding to grant final approval of the Settlement. The fact that no Class Member objected to the Settlement underscores the fairness and reasonableness of its terms. (*Id.*, ¶ 13). That only nineteen Class Members opted out of the Settlement is also a strong indication that the Class strongly agrees with the Court that the Settlement is favorable to the Class. (*Id.*, ¶ 11).

## III.   THE CLASS WAS GIVEN THE BEST POSSIBLE NOTICE OF THE SETTLEMENT

In approving a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. Rule Civ. Proc. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

---

[7] To put things in perspective, the average home internet plan of the class members based on a blend of Plaintiff's and Defendant's data is $62 per month. Under California law, employers must reimburse a reasonable percentage of employees' work-related monthly home internet expenses. *See Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014) (construing section 2802 as requiring reimbursement of only a "reasonable percentage" of fixed monthly cell phone expenses); *see also* Order Denying Motion for Class Certification, Dkt. 54, at pp. 2-3 (applying Cochran to work-from-home monthly home internet reimbursement claims). There is no specific authority on how to calculate this "reasonable percentage". However, one reasonable possibility would be the hours spent on work (40 per week or 160 per month) versus the total hours in a month for which home internet is purchased and available (720 hours per month, i.e., 24 hours per day * 30 days). This would equate to 22.22% (i.e., 160 hours / 720 hours). Multiplying this percentage by $62 per month results in $13.77 per month. Thus, since the average class member in this case worked roughly 21.8 months during the Class Period, they allegedly would be owed a maximum of $300.18 in unreimbursed home internet expenses, without interest or penalties. This calculation shows that the Settlement amount obtained here is fair and reasonable with an average net recovery of $78.03 and a maximum net recovery of $117.80 for those class members who worked throughout the entirety of the Class Period at issue particularly, whereas here, the Court has already denied Plaintiff's motion for class certification without prejudice [Dkt. 54) and expressed doubts as to Plaintiff's case on the merits, and indicated that significant PAGA penalties were unlikely to be awarded by the Court.

174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The notice is sufficient for purposes of due process if it contains a description of the litigation to terms of the settlement, and explanation of the right to opt-out of or object to the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The notice procedure approved by the Court was and is the best notice practicable. As discussed above, the settlement administrator duly mailed the Notice Packets to all Class members, conducted due diligence to locate the Class Members whose Notices were returned, and ultimately successfully delivered all but 71 of the Notice Packets (a 99.0% successful delivery rate).[8] (Polites Decl. ¶ 10). The Court-approved Class Notice provided Class Members with all relevant information needed to make an informed decision as to whether to opt-out, participate or object to the Settlement. (*See Id.*, **Exhibit A**). It provided an explanation of the litigation and proposed settlement terms, and procedures on how to opt out, object and/or appear at the final fairness hearing. (*Id.*). The documentation provided a brief explanation of the case, the exclusion date and procedure for exclusion, the proposed attorneys' fees, litigation costs, administration costs, service award and LWDA payment to be requested, and the individual members' estimated recovery, which were all included in the Class Notice. It also stated that those who do not timely opt out will be bound by the Settlement and Class release. (*Id.*). Moreover, the Court approved the Class Notice as to form and content in its PA Order, and the parties included all modifications instructed by the Court before disseminating the Class Notice. Notably, the PA Order approved "as to form and content, the Class Notice" and found that the notice plan "meet[s] the requirements of due process and provide[s] the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto." (PA Order, ¶¶5-6) [Dkt. 69]. Therefore, the Court may proceed to determine the final

---

[8] Under the rules and law governing class actions, reasonable efforts must be made to reach all class members through the notice plan for distribution of the Class Notice, but each individual in the Class need not actually receive the Class Notice (which is often impossible and/or impracticable). *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *Rannis v. Recchia*, 380 Fed.Appx. 646, 650 (9th Cir. 2010).

fairness and adequacy of the settlement and order its approval, secure in the knowledge that Class Members have been given the opportunity to participate fully in the notice process and have been fully apprised of their rights and options, including their rights to object or request exclusion.

## IV.    THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

### A.    The Settlement Satisfies the Requirements of Fed. R. Civ. P. 23

The requirements of Fed. R. Civ. P. 23 certification, and the reasons for which plaintiff satisfies those requirements, were set forth in detail in Plaintiff's MPA. (Dkt. No. 61, § IV(A)). The Court in its PA Order ultimately concluded that "certification is appropriate under each of the elements of Rule 23(a) and Rule 23(b)(3) for settlement purposes, and that Plaintiff has established the elements necessary to certify a settlement class, and that common issues predominate for settlement purposes." (PA Order, ¶ 2). Thus, Plaintiff will not repeat all of the factors that led the Court to its determination to provisionally certify the Class.

### B.    The Settlement is Fair, Reasonable and Adequate

Pursuant to Fed. R. Civ. P. 23, "[t]he claims . . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval and notice of the proposed dismissal, settlement or compromise shall be given as the Court directs." Fed. R. Civ. P. 23(e)(1). The court may then finally approve a settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).

Courts in the Ninth Circuit consider a number of factors to assess whether final approval of a settlement is warranted including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Importantly, a "presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.,* Case No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (internal quotation and citations omitted); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("The [Ninth

Circuit] put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Here, Plaintiff presented detailed facts concerning the foregoing factors at preliminary approval and the Court stated in its PA Order that the settlement set forth in the Settlement Agreement appears to be fair, reasonable and adequate. (PA Order [Dkt. 69]).

**C.**    **Strengths of Plaintiff's Case and Risks of Litigation**

Both Plaintiff's PAM and the PA Order set forth detailed facts and findings regarding the results achieved, the risks of litigation, and the contingent nature of the case. However, it bears repeating that this action was contentious, and Defendant vigorously opposed Plaintiff's claims and denied the legal and factual allegations, and Defendant would have continued to do so had this matter not settled. Plaintiff faced serious litigation risks that could have precluded the Class from obtaining any recovery. Broadly, these included the risk of losing on class certification and on the merits.

First, on the risks related to class certification, the Class Cert. Order, which denied class certification without prejudice, stated that Plaintiff's theory of predominance based on Defendant's written expense reimbursement policy in its FAQs is not supported by the evidence because 619 Class Members received, on average, reimbursement for home internet expenses in the amount of $66.49 per month, an amount that could not be characterized as "incremental." The Court also noted that not only is this amount more than "incremental," but appears to be more than what California law requires. *See Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014) (construing section 2802 as requiring reimbursement of only a "reasonable percentage" of home costs). Further, there was the risk that individualized issues potentially existed because, according to Defendant, Class Members were arguably able to work at Defendant's offices if they chose to during the Class Period (at least after May 2020) because Defendant's offices remained open and available. Some Courts have denied class certification where use of personal devices was optional or not "necessary" as Defendant contends here because Defendant's offices were open. *See Bowen v. Target Corp.*, 2021 U.S. Dist. LEXIS 203240, *24-25 (C.D. Cal. June 24, 2021) ("denying motion for class certification of cell reimbursement and internet expenses for target store employees who participated in voluntary BYOD program, because every shift would differ on reasonableness of usage of phones versus iPads provided by Target); *see also Dugan v. Ashley Furniture*

*Indus.*, 2016 U.S. LEXIS 1879011, *9-10 (C.D. Cal. Nov. 29, 2016) (denying motion for class certification of cell reimbursement and internet expenses for sales associates because they could use store phones for customer calls and whether there were insufficient number of landlines available at the 29 stores raised individualized issues for each store and each shift). Further, a risk existed that a court would find that individual issues would predominate for the additional reason that Defendant's employees were at liberty to determine, in conjunction with their managers, what to seek reimbursement for and in what amounts. Several Courts have denied certification based on a failure to show a uniform policy of non-reimbursement or where there are individualized issues based on variations in reimbursement practices. *See Gonzalez v. OfficeMax N. Am.*, 2014 WL 5473764, at *3-4 (C.D. Cal. Nov. 5, 2012) (denying certification because plaintiffs had not met burden of showing a uniform policy of non-reimbursement). Lastly, there was a risk that Class Member remote work experience and expense reimbursement practices varied significantly from one employee to another.

Second, Plaintiff faced the risk that home office and home internet expenses would be deemed not "necessary," since at least one Court has granted an employer's motion for summary judgment on the "necessary" prong of section 2802 claims holding that expenses are not "reasonable under the circumstances" when working from home was purely voluntary. *See Novak v. Boeing Co.*, 2011 U.S. Dist. LEXIS 83031 (C.D. Cal. July 20, 2011) (granting defense MSJ on 2802 internet claims where work from home was completely optional and voluntary); *cf*, *Aguilar v. Zep, Inc.*, 2014 U.S. Dist. LEXIS 120315, *55-56 (N.D. Cal. Aug. 27, 2014) (denying defendant's MSJ and holding plaintiff should have been reimbursed under 2802 for cell phone and internet expenses because they used them "in direct consequence of the discharge of their duties").

Third, there was a real risk of losing on the merits. At the hearing on Plaintiff's Class Cert. Motion, the Court made it clear that succeeding on the merits was anything but a sure thing. Further, even if Plaintiff were to prevail, Defendant may only be required to reimburse a "reasonable percentage of work-related usage," which is likely only $13.77 per month (i.e., 22.22% (160 / 720) * $62 per month) (see footnote 5).

Despite the foregoing risks, both as to certification and the merits, Plaintiff and Class Counsel recovered a significant settlement fund on behalf of the Class, an amount that the Class members would not have recovered independently of this action. Given the uncertainty associated with trial, and the

significant risk of Plaintiff losing on either class certification or the merits, which would preclude any recovery of any of the claims here, Plaintiff obtained a good settlement for the Class.

**D.      Amount Offered in Settlement**

The PA Order provides that "the settlement set forth in the Settlement Agreement and Supplemental Brief appears to be fair, reasonable, and adequate to the Class" and "the settlement falls within the range of reasonableness and appears to be presumptive valid, subject only to any objections that may be raised at the final fairness hearing and final approval by this Court." PA Order, ¶¶ 2-3..

Plaintiff refers the Court to Section IV(F) of the PAM for its extensive damages analysis briefing. In summary, Defendant's realistic exposure, taking into account all of its defenses to the claims asserted, amounted to **$914,081.00** (Ackermann PAM Decl., ¶ 51). The global settlement amount obtained here for the Class of **$950,000.00** is equivalent to the approximate risk-adjusted settlement value of the claims, in the view of Class Counsel. Plaintiff therefore concurs with the Court that the gross Settlement amount is fair and reasonable. (*Id.*).

Additionally, the average individual net settlement share per participating Class Member of $78.03 compares favorably to other class action settlements for home internet reimbursements already given final approval, including the following cases:

- *Klar v. KPMG LLP*, Contra Costa County Superior Court, Case No. MSC21-00303, final approval granted on April 28, 2022, by the Honorable Edward G. Weil where the average net settlement payment to each participating Class Member for their identical class and PAGA work from home claims was $98.52;

- *Senser v. Progressive Casualty Insurance Company*, Santa Clara County Superior Court, Case No. 21CV390195, final approval granted on November 23, 2022, by the Honorable Patricia M. Lucas where the average net settlement payment to each participating Class Member was $119.52; and

- *Jernigan, et al. v. Pro Unlimited, Inc., et al.*, Los Angeles County Superior Court, Case No. 21STCV10027, final approval granted on January 25, 2023, by the Honorable Bruce G. Iwasaki where the average net settlement payment to each participating Class Member was $38.72.

### E.     The Extent of Discovery Completed and the Stage of Proceedings

The settlement was reached in the weeks following the Court's Class Cert Order, with the Parties engaged in arms' length and non-collusive direct settlement negotiations via email and telephone correspondence after extensive formal discovery and depositions. (Ackermann PAM Decl., ¶¶ 22-27). The Parties engaged in significant formal discovery leading up to the filing of Plaintiff's motion for class certification. (*Id.*). The formal discovery consisted of each side sending and responding to several sets of written discovery including requests for admissions, requests for production of documents, and special interrogatories. *(Id.)* Plaintiff also took the deposition of two of Defendant's 30(b)(6) designees and Defendant took the deposition of Plaintiff. *(Id.)* Further, Plaintiff hired an expert to disseminate a survey to putative Class Members to conduct research on Class Member work-related home internet use during the Class Period. *(Id.)* Plaintiff's expert's findings were instructive as to the putative Class' work from home habits and any reimbursement potentially owed for home internet expenses. *(Id.)* Plaintiff's expert completed 157 interviews of putative Class Members. *(Id.)*

Defendant hired experts to testify regarding qualitative and quantitative research, including statistical and other analysis of datasets relating to reimbursement and work habits during the Class Period, including but not limited to rebuttal of any opinions offered by Plaintiff's expert. *(Id.)* Plaintiff then deposed both of Defendant's experts and Defendant deposed Plaintiff's expert. *(Id.)* Prior to the filing of Defendant's opposition to the Class Cert. Motion, Defendant deposed nine of the respondents to Plaintiff's expert's survey. *(Id.)* In total, the Parties took and/or defended fifteen depositions in this case and exchanged thousands of pages of documents. *(Id.)*. The Court can be confident that the instant Settlement was reached after the Parties' were fully informed of all claims and defenses.

### F.     Experience and Views of Counsel

Plaintiff's counsel has collectively represented hundreds of thousands of employees in similar wage and hour cases and has extensive employment law experience. (Ackermann PAM Decl., ¶¶4-12; Klugman PAM Decl., ¶¶3-6). The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 128 (2008) (court must take into account "the experience and view of counsel") (internal quotation

and citation omitted). As stated above, the monetary benefit the Settlement provides to Class Members is meaningful and significant, especially considering the risks facing Plaintiff in further litigation, including the uncertainties common to class action litigation such as the risk of non-certification and losing on the merits in trial. Thus, Plaintiff's counsel shares the view that Settlement is fair, reasonable and adequate and in the Class's best interest. (Ackermann PAM Decl., ¶¶ 51, 53; Klugman PAM Decl., ¶9).

G.    **Class Members Unanimously Endorse the Settlement**

The Court may appropriately infer that the class action settlement is fair, adequate and reasonable when, among other reasons, few class members object to it. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Here, the reaction of the Settlement Class Members has been one of overwhelming approval – only 19 Class Members requested to be excluded from the Settlement, and not a single Class Member objected. (Polites Decl. ¶¶ 11, 13). The 99.7% Class Member participation rate weighs heavily in favor of granting of final approval. The "absence of a single objection to the settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate." *Patel v. Axesstel Inc.*, No. 3:14-cv-1037-CAB-BGS, 2015 WL 6458073, at *6 (S.D. Cal. Oct 23, 2015); *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). The reaction of the Class provides a compelling basis for the Court to grant final approval of the Settlement.

V.    **PLAINTIFF'S REQUESTED INCENTIVE AWARD IS REASONABLE**

Named plaintiffs "are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the

litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977. Courts may also consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff requests an incentive award of $20,000, to recognize his significant contributions to the Class, the reputational risks he undertook, the time and efforts expended on behalf of the Class, his broader waiver of claims outside of the scope of the Class claims released by the Class in the Settlement, his acceptance of the financial risk in pursuing this litigation, his potential diminished job prospects, and the significant accomplishments of this case. (Williams FAM Decl., ¶¶ 7-9).

Specifically, he provided factual background for the mediation brief and Class Complaint; helped to review the LWDA Notice and Complaints for accuracy; participated in phone calls to discuss litigation and settlement strategy; provided relevant documents; had his deposition taken and responded to Defendant's written discovery requests; reviewed the settlement and preliminary approval motion documents; and provided a declaration to the Court in which he provided a detailed analysis of badge swipe data produced by Defendant in support of Plaintiff's motion for class certification. (*Id.* ¶¶ 9-15). In total, Plaintiff spent approximately 100 hours working on this case. *Id.*

Given Plaintiff's strong commitment to the Class, the $20,000 requested Incentive Award falls well within the range of reasonable incentive payments awarded to Class Representatives in similar class actions. See *e.g. Cellphone Termination Fee Cases*, 186 Cal.App.4th at 1381 (Cal.App. June 28, 2010) (affirming $10,000 incentive awards to each plaintiff in class action where average recovery per class member was only $81); *Nakagaki v. Proven Staffing Consultants LLC*, San Diego County Superior Court, Case No. 37-2022-00026848-CU-OE-CTL (April 21, 2023) (approving $6,500 service award on $81,000 settlement where Court was persuaded of the need to properly incentivize class representatives in cases with small individual stakes); *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008) (approving "$25,000 incentive award for each Class Representative" in wage an hour settlement); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482,

493 (E.D. Cal. 2010) (approving service awards in the amount of $12,000 each from a $300,000 settlement fund in a wage/hour class action); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class").

## VI.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

Plaintiff has filed a separate Motion for Attorneys' Fees and Costs setting forth in detail the reasons for which the award of fees and costs contemplated by the Settlement are fair and reasonable and should be approved. [Dkt. 70]. Class counsel has submitted substantial evidence in the form of summary charts and detailed billing summaries to support the attorney's fees provision of the Settlement Agreement. In summary, Class Counsel seeks fees amounting to 30% of the Settlement Sum which is patently reasonable because it is consistent with the Ninth Circuit's usual range of percentages of common funds approved in settlements of other similar class action cases. The fees are further justified here by the excellent result obtained for the Class in light of the many risk factors faced as highlighted in this motion and motion for attorneys' fees and costs. Given the significant work involved in litigating this case and the lack of any objectors to the fee request, there is no compelling reason for the Court to deny the requested fee award. For the reasons set forth in Plaintiff's Motion for Attorneys' Fees, the requested attorneys' fees and costs preliminarily approved by the Court should be finally approved.

## VII.    CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court enter the proposed Order submitted herewith finally approving the Settlement, including the allocations for attorneys' fees, costs, settlement administrator expenses, the proposed service award to Plaintiff, the PAGA allocation, and the pro rata settlement amounts to the Class Members.

Respectfully submitted,

ACKERMANN & TILAJEF, P.C.
JOSHUA KLUGMAN, ESQ.

Dated: December 21, 2023        By:        */s/ Craig J. Ackermann*
Craig J. Ackermann, Esq.
Attorneys for Plaintiff and the Class